UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ICONIX BRAND GROUP, INC.; STUDIO IP HOLDINGS, LLC, and ICON DE HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>ROC NATION APPAREL GROUP, LLC; ROC APPAREL GROUP LLC; ROC NATION, LLC; SHAWN C. CARTER a/k/a JAY-Z; NEW ERA CAP COMPANY, INC. d/b/a NEW ERA; MAJOR LEAGUE BASEBALL PROPERTIES, INC.; HAT WORLD, INC. d/b/a LIDS SPORTS GROUPS; SAN FRANCISCO BASEBALL ASSOCIATES LLC d/b/a SAN FRANCISCO GIANTS; CIRCLE OF SUCCESS LLC; MADEWORN HOLDINGS LLC; EMERY JONES; KAREEM BURKE; PAPER PLANES IP HOLDINGS, LLC, and JOHN DOES 1-5,<br><br>Defendants. | **SECOND AMENDED COMPLAINT**<br><br>**17 Civ. 3096 (AJN)**<br><br>**Jury Trial Demanded** |

Plaintiffs Iconix Brand Group, Inc. ("Iconix"), Studio IP Holdings, LLC ("Studio IP"), and

Icon DE Holdings, LLC ("Icon DE") (collectively, Iconix, Studio IP, and Icon DE are referred to

herein as "Plaintiffs") by their counsel, Blank Rome LLP, bring this action against Roc Nation

Apparel Group, LLC ("RNAG"); Roc Apparel Group LLC ("RAG"); Roc Nation, LLC ("RNLLC");

New Era Cap Company, Inc. d/b/a New Era ("New Era"); Shawn C. Carter a/k/a Jay-Z ("Carter" or

"Jay-Z"); Major League Baseball Properties, Inc. ("MLB"); Hat World, Inc. d/b/a Lids Sports Group

("Lids"); San Francisco Baseball Associates LLC d/b/a the San Francisco Giants ("SF Giants");

Circle of Success LLC ("COS"); MadeWorn Holdings LLC ("MadeWorn"); Emery "Vegas" Jones

("Jones"), an individual; Kareem Burke a/k/a "Biggs" ("Burke" or "Biggs"), an individual; Paper

Planes IP Holdings, LLC ("Paper Plane Holdings"); and John Does 1-5, alleging the following:

521949.00667/106552055v.1

## PRELIMINARY STATEMENT

This action arises out of Defendants' unauthorized and infringing manufacturing, distribution, sale, advertising, and promotion of clothing and other consumer products and related services that tramples on Plaintiffs' well-known and established portfolio of intellectual property rights in the "ROC" family of trademarks, as well as statutory, common law, and contractual rights prohibiting such activities.

Plaintiffs' rights in and to the trademarks and intellectual property identified in this Second Amended Complaint arise from contract, statutory, and common law protection, and derive from trademarks acquired by Plaintiffs through contracts, including specific marks and, collectively, a family of marks acquired by Plaintiffs through such acquisitions.  The history and evolution of the family of marks with the "ROC" surname and its sale, including all derivatives therefrom, to Plaintiffs and later treatment by the Defendants' continued use of the marks and intellectual property as if the transactions never occurred, is a story of commercial success giving way to corporate greed.

After selling ROCAWEAR and the ROC Family of trademarks (in the apparel, and other classifications) for hundreds of millions of dollars to Plaintiffs, Defendant Shawn C. Carter, known worldwide as "Jay-Z," through numerous companies owned, operated, and/or controlled by Carter and/or his colleagues at Carter's direction, have continued to commercially use and exploit the very property (trademarks) sold to Plaintiffs, through a series of companies and other commercial activities, as if the acquisition never occurred and as if Jay-Z did not relinquish control of the Roc Family of trademarks or any 'Roc' trademark.  This scheme is ongoing, and even within days after this lawsuit was filed, RNAG and/or another entity controlling a website in which ROC NATION goods were sold, immediately formed a new shell company, Paper Plane Holdings, re-routed (in whole or in part) infringing and offending products sold on the former website to a new website (owned or controlled, in whole or in part, by the newly-formed entity, Paper Planes Holdings) and

521949.00667/106552055v.1

withdrew certain infringing products in reaction to this lawsuit.  But unmoved by the lawsuit, Jay-Z continues to direct and authorize companies and entities he owns or controls to continue commercial and retail sales of products bearing the marks he sold to Plaintiffs, even introducing new products bearing the infringing marks.

Plaintiffs assert claims for counterfeiting under 15 U.S.C. § 1114(a); false designation of origin, passing-off, and unfair competition pursuant to 15 U.S.C. § 1125(a) and New York law; trademark dilution pursuant to 15 U.S.C. § 1125(c) and New York law; contributory infringement, unfair competition under New York law; unjust enrichment; tortious interference with contract; tortious interference with prospective business relations; breach of contract; and for related statutory and common law claims as herein pled.  Plaintiffs seek injunctive relief, compensatory and statutory damages, restitution, and trebling of the damages, attorneys' fees and costs.

Unless Defendants who were involved in such infringement and the transactions contemplated herein are permanently enjoined from (i) manufacturing, promoting, distributing, and/or selling an infringing collection of apparel and related accessories (including various shirts, pants, jackets, toiletry bags, socks, key-chains, sweatshirts, and a specialty MLB baseball cap line) using the ROC, ROC NATION, Roc96, ROCAFELLA, ROC-A-FELLA, ROCAWEAR,  or other marks confusingly similar to marks owned or controlled by Studio IP in International Classes 18, 25 and 35, which goods compete or will compete against products of Iconix and diminishes the name, standing, reputation, and goodwill of Studio IP's ROC NATION trademarks and the portfolio of trademarks in the "Roc" family in Classes 18, 25, and 35, creating confusion regarding the source and origin of goods and services promoted in connection with such marks; (ii) offering for sale, selling, or marketing and promoting Classes 18, 25, and 35 products and services that include or display the ROC, ROC NATION, Roc96, Rocafella, Rocawear, or other marks bearing "Roc" or "ROC" or marks or logos

521949.00667/106552055v.1

confusingly similar to the "Roc" marks owned or controlled by Studio IP; and/or (iii) misrepresenting that ROC NATION or other products or services bearing any form of "ROC" or "ROC" goods and services are owned, licensed, or controlled by them for Classes 18, 25, and 35 goods and products, Plaintiffs will continue to suffer irreparable harm and significant damages, including, without limitation, loss of control of their valuable mark, ROC NATION in Class 25, and loss of the family of "Roc" and "ROC" marks that Plaintiffs own and control.  Plaintiffs have incurred substantial harm to their brands, marks, and intellectual property to date, and substantial damages to revenue, reputation, standing, sales, and reputation. Defendants have been unjustly enriched at Plaintiffs' expense from their wrongful acts.

## JURISDICTION & VENUE

1.     The Court has subject matter jurisdiction pursuant to § 39 of the Lanham Act, 15 U.S.C. § 1121, and pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b) because this lawsuit arises from claims for counterfeiting, dilution, passing-off, and false designation of origin and unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and (c) and for other claims arising under the Lanham Act.

2.     The Court has supplemental jurisdiction over the non-federal claims pursuant to 28 U.S.C. §§ 1367(a) and 1338(a)-(b).

3.     This Court has personal jurisdiction over all of the Defendants under Sections 301 and/or 302 of the New York Civil Practice Law and Rules because Defendants have shipped and sold the infringing goods and products in and to this District; Defendants continuously and systematically conduct, transact, and solicit business in this District through their respective websites and directly through the sale of the subject products and goods in and to this District.

4.     Defendants market, sell, and promote the subject goods and products outside this District causing harm to Plaintiffs who reside in this District, and Defendants expect or should

521949.00667/106552055v.1

expect that their sale of the infringing and offending goods and products outside this District to have consequences, including injuring Plaintiffs in this District.  Defendants further expect to derive revenue from interstate commerce.

5.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because Defendants are located in or conduct significant business in the District comprising the Southern District of New York, and a substantial part of the events or omissions underlying the asserted claims arose in or from the Southern District of New York or affect commerce in this District, and Plaintiffs are suffering harm in this District.  There is no other venue among the federal courts that has a stronger relationship with the facts and circumstances of this matter.

6.    While not all of the claims asserted in this pleading arise under the Lanham Act or federal statutes, no other court or jurisdiction has a greater interest in the facts and circumstances of this matter.

7.    The Court has general and/or specific jurisdiction over each of the Defendants, all of whom reside in and/or regularly conduct business in New York or are regularly present in New York.

8.    This Court has personal jurisdiction over the RNAG, RAG, New Era, MLB and Lids as New York domestic and foreign corporations.  RNLLC also resides in New York and has a principal place of business in New York.

9.    Jones and Biggs are domiciled and reside in New York and otherwise have a principal place of business in New York.

10.    RNLLC, COS, MadeWorn, SF Giants, Jones, Paper Planes Holdings, and Biggs have transacted business in New York and/or contracted business outside the state to supply goods or

521949.00667/106552055v.1

services within New York.  RNLLC, COS, MadeWorn, SF Giants, Jones, Paper Planes Holdings, and Biggs are regularly present in New York.

11.    All of the torts alleged herein were committed wholly or partially within the State of New York and/or were committed outside of New York but caused injuries to persons or property within the State of New York by entities or individuals who either regularly do or solicit business in New York.  All of the torts committed by the Defendants were committed by entities or individuals who reasonably expected (or should have expected) that such torts would have consequences in New York.

12.    The claims against all Defendants arise from activities in New York or substantially affecting commerce and parties in New York, specifically the Southern District of New York, and/or the torts complained of occurred in New York or affect Plaintiffs in New York as the harm from such torts was intended to damage Plaintiffs in New York.

## THE PARTIES

13.    Iconix is a Delaware company with its principal place of business located at 1450 Broadway, New York, New York.  Iconix is a brand-management company which owns and licenses a portfolio of consumer brands, and, through its wholly-owned subsidiaries Studio IP and Icon DE, owns and licenses the ROC NATION trademark in Class 25, among other Classes, as part of its business.  Iconix is a publicly-traded corporation listed on the NASDAQ Global Select Market.

14.    Studio IP is a Delaware Limited Liability Company located at 1450 Broadway, New York, New York, and is a wholly-owned subsidiary of Iconix.  Studio IP is the owner and licensor of various ROC NATION and related marks, including the mark "ROC NATION" in various International Classes (known as Nice Classes), including Classes 18, 25, and 35 comprising

clothing, footwear, headgear, leather and imitations of leather goods, and other apparel products and services.

15.   Icon DE is a Delaware Limited Liability Company located at 1450 Broadway, New York, New York, and is a wholly-owned subsidiary of Iconix.  Icon DE is the owner and licensor of various trademarks and intellectual property of Iconix.

16.   Roc Nation Apparel Group, LLC is a New York Limited Liability Company located at 1411 Broadway, New York, New York 10018.

17.   Roc Apparel Group, LLC is a New York Limited Liability Company located at 1411 Broadway, New York, New York 10018.  RAG previously operated under the name Rocawear Design Holdings, LLC between January 29, 2001 and June 18, 2004 and Rocawear Design Holdings LLC prior to January 29, 2001.

18.   Roc Nation, LLC is a Delaware Limited Liability Company located at 1411 Broadway, New York, New York 10018.

19.   New Era Cap Company, Inc. is a New York corporation with its principal place of business located at 160 Delaware Avenue, Buffalo, New York 14202.  New Era conducts business around the world as New Era and also conducts business in apparel other than hats, including sports apparel, directly through stores, online, distributors and licenses, wholesale and retail, and other modes of sales.  Through a contract with MLB, it is the official hat of Major League Baseball.

20.   Shawn C. Carter a/k/a Jay-Z is an individual residing in New York, New York and controls and operates directly or indirectly RNLLC and/or RNAG and/or RAG and/or COS and/or Paper Planes Holdings and/or certain of the John Doe entities or other persons that will be identified

521949.00667/106552055v.1

through discovery and played a role in the activities complained of in this pleading.  Carter is the founder of RNLLC and COS.[1]

21.    Major League Baseball Properties, Inc. is a New York company located at 245 Park Avenue, New York, New York 10022.  MLB is the official licensing arm of Major League Baseball, acting as an agent and representative of the teams of Major League Baseball with regard to its trademark and other intellectual property, paying royalties to such teams pursuant to contracts MLB enters with third parties to exploit, among other assets, the trademarks of teams including their team logo and name.

22.    Hat World, Inc. d/b/a Lids Sports Group d/b/a Lids is a Minnesota corporation with its principal place of business located at 1415 Murfreesboro Pike, Suite 240, Nashville, Tennessee 37217.  Lids is registered as a foreign business corporation licensed to conduct business in New York.

23.    San Francisco Baseball Associates LLC d/b/a the San Francisco Giants is a California Limited Liability Company located at AT&T Park, 24 Willie Mays Plaza, San Francisco, California 94107.  SF Giants, by its primary asset, the San Francisco Giants baseball team, regularly appears in and conducts business in New York.

24.    Circle of Success LLC is a New Jersey Limited Liability Company with a principal place of business at 2125 Center Ave., Ste. 514, Fort Lee, New Jersey 07024.  COS regularly conducts business in New York.

---

[1] RNAG, RAG, RNLLC, Paper Plane Holdings, Carter, and John Doe Defendants owned, controlled, operated (directly or indirectly) or created by these Defendants are referred to herein as the "Roc Defendants," which include each of them individually, collectively, or some of them, as the case may be.

521949.00667/106552055v.1

25.     Emery "Vegas" Jones is an individual whose personal residence is not known but is believed to be New York, New York.  Mr. Jones's place of business is located at 1411 Broadway, New York, New York 10018 and/or 2125 Center Ave, Fort Lee, New Jersey 07024.

26.     Kareem Burke is an individual whose personal address is unknown, but, upon information and belief, is located in New York, New York.  Mr. Burke's place of business is located at 2125 Center Ave, Fort Lee, New Jersey 07024.

27.     MadeWorn Holdings LLC is a Delaware Limited Liability Company registered to do business in California, located at 8596 Higuera Street, Culver City, California 90232.

28.     Paper Planes IP Holdings, LLC is a Delaware company formed on April 28, 2017 with a registered agent located at 251 Little Falls Drive, Wilmington, Delaware 19808.

29.     The John Doe Defendants are entities or persons not presently known to Plaintiffs but who contracted with, for, or on behalf of RNLLC and/or RNAG and/or RAG and/or Paper Planes Holdings and/or Carter, or with Carter's permission and direction, New Era and/or MLB.  The John Doe entities also may include persons unknown to Plaintiffs but whom under the direction or control of RNLLC, RAG, RNAG, or Carter participated in or directed the activities of RNLLC, RAG, or RNAG or the other John Does to whom activities in this pleading are attributed.  Some of the commercial activities identified in this pleading may have been performed or conducted by John Doe entities or persons unknown to Plaintiffs but were committed by or at the direction, or with the permission, but certainly with the knowledge, of the Roc Defendants.

30.     Personal jurisdiction exists over each Defendant because each is located in and/or conducts substantial business or is substantially present in New York, and each avails itself of the privileges and protections of the laws of the State of New York, such that the Court's jurisdiction over each Defendant does not offend traditional notions of fair play and due process.

## FACTS COMMON TO ALL ALLEGATIONS

**A.** **Iconix Business**

31.   Iconix is the owner and manager of various consumer brands, including MOSSIMO, ROYAL VELVET, RAMPAGE, JOE BOXER, DANSKIN, ED HARDY, BONGO, ZOO YORK, CHARISMA, CANDIES, STARTER, OP (OCEAN PACIFIC), FIELDCREST, ROCAWEAR, ROC NATION, LONDON FOG, PONY, WAVERLY, CANNON, MODERN AMUSEMENT, LEE COOPER, MARC ECKO, UMBRO, ARTFUL DODGER, and others.

32.   Iconix's brands are recognized by consumers and the fashion and entertainment industries, among others, as being well-known consumer brands with a worldwide scope and appeal, sold through various stores, online, distribution channels, and in various consumer and retail markets.

33.   Iconix's brands are leaders in their various retail and consumer platforms.  Iconix has one of the largest collection of consumer brands under one common owner anywhere in the world.

34.   The intellectual property (including trademarks) owned or controlled by Iconix subsidiaries and affiliates, and the brands' names and logos are well-known to consumers and important and protectable core assets of Iconix's portfolio of brands.

35.   Iconix's brands and the marks of its subsidiaries, Studio IP and Icon DE, are identified and recognized (and enjoy fame and distinction) among consumers as reputable brands that are sold in independent, chain, department stores, boutiques, and shops located throughout the world, including online and through various e-commerce outlets and vendors.

36.   The various Iconix brands are recognizable by, among other things, their brand name, trademark, trade name and/or logos.

521949.00667/106552055v.1

37.   Iconix brands have and have acquired customer standing and reputation in the industry and among consumers and retailers around the world, including through market presence and advertising, marketing, and promotion.

38.   The various Iconix brands are marketed and promoted by Iconix and its business partners and licensees around the world, with such marketing and promotional expenses totaling in the hundreds of millions of dollars over many years.

B.      **History and Formation of the 'Roc' Family of Marks**

39.   In 1996, Defendant Shawn "Jay-Z" Carter, along with friends Damon Dash ("Dash") and Defendant Kareem "Biggs" Burke, formed Roc-A-Fella Records, a record label featuring Jay-Z as a solo artist.  Later that year, Roc-A-Fella records launched Jay-Z's debut and seminal album, *Reasonable Doubt*.

40.   Upon information and belief, and based upon numerous public reporting and comments by Jay-Z and others, the name 'Roc-A-Fella' emanates from the name of famed oil tycoon John D. Rockefeller, in combination with a locally known, former Brooklyn-based person who was known on the street as "Rocafella."  Thus, the multi-platform brand "Rocafella" has its roots in both aspirational wealth connected with the industrialist dream (embodied by the patriarch of the Rockefeller family) and the authenticity and intrigue of New York City street life; a soon-to-be valuable brand combination which formed the very basis of what became the "Roc" or "ROC" lifestyle brand, and in many ways a precursor roadmap for the broader hip-hop movement which Jay-Z played an important role in launching.

41.   After Jay-Z's on-stage appearances wearing "Iceberg" brand jeans on tour in the mid-1990s lead to a surge in Iceberg brand clothing sales, Jay-Z, Dash, and Biggs, recognizing the commercial appeal Jay-Z brought to apparel he presented on stage and in the media, launched their

521949.00667/106552055v.1

own clothing line to capture the rising consumer demand created by the music released by the Roc-A-Fella label.

42.   In 1999, the trio founded ROCAWEAR (sometimes depicted as "ROC-A-WEAR"), a fashion brand initially geared toward the audience comprising the fan base for Jay-Z's music and lifestyle, which had general appeal to an aspirational audience desirous of the image associated with Jay-Z and the New York 'street' and hip-hop style widely promoted by Jay-Z.  The clothing line allowed a rising and increasing generation of Jay-Z, hip-hop, and 'street style' fans, and aspirational consumers, to engage with the "Roc" lifestyle brand in a 360-degree way by listening to the music and wearing the clothing to experience that lifestyle firsthand.

43.   Jay-Z was therefore not only a music pioneer in the hip-hop, street, and rap genre, but a pioneer in creating vast appeal to apparel worn by such luminous artists like Jay-Z, connecting and effectively merging music and apparel lifestyle, launching a new brand that would reach great popularity – an *empire* according to Jay-Z and others speaking about Jay-Z.

44.   Learning from the Iceberg apparel phenomenon, Jay-Z regularly wore ROCAWEAR clothing at concerts and in videos promoting the albums released by Roc-A-Fella Records.

45.   Roc-A-Fella used as a platform for ROCAWEAR promotion is demonstrated in promotional advertisements from the 1990s, including:



521949.00667/106552055v.1

46.     Just as Roc-A-Fella utilized Jay-Z as the public face of the label, ROCAWEAR used Jay-Z as the public face of the clothing brand, unifying the public's identification with the various goods and services connected with the family of a brand emanating from a single source.

47.     Jay-Z, Biggs, and Dash expanded the lifestyle brand in clothing and apparel around a unified consumer focus, repeatedly using "ROC" as the surname for a burgeoning brand and lifestyle reflecting the "Roc" lifestyle.

48.     Indeed, through expansion of the family of brands, services, and products bearing "Roc" in name and reputation, today, "Roc" appears in numerous forms connected to and developing business including apparel, accessories, music, artist and athlete representation, sports, and various other business, media, and cultural areas.

49.     From numerous media reports, interviews, and statements by Jay-Z, Biggs, Vegas, and others, the plan all along was to create, build, and develop the "Roc" brand in numerous areas, creating a media, sports, and business empire worth billions centered around the "Roc" style, approach, theme, and surname.

50.     By 2007, ROCAWEAR's intellectual property holding company, Rocawear Licensing LLC, developed a worldwide portfolio of over two-hundred and fifty (250) registered and common trademarks in Classes, 3, 9, 14, 18, and 25 (apparel) for word and design marks of various derivations, including, without limitation: ROCAWEAR, ROC, ROCA, ROC BOYS, TEAM ROC, BELLA ROC, ROCA SPORT, ROCABEAR.

51.     A wide range of individual stock keeping units ("SKU") for the apparel sold under the ROCAWEAR brand have utilized various derivations of word and design marks with the common "ROC" element including, for example, "ROC 99," "NEW ROC CITY 99," and "ROC BOYS" in various design combinations, including many other derivatives utilizing the "ROC" surname.   A

521949.00667/106552055v.1

non-exhaustive list of registered marks utilizing the "ROC" element is attached as Ex. A.  (All registered marks identified in Ex. A, together with all common law and other trademarks owned, used, derived from, or controlled by one or more of the Plaintiffs bearing "ROC" or "Roc" as part of the name or mark are referred to collectively herein as the "ROC Family of Marks.")

52.   Throughout 1999 and the early 2000s, Jay-Z and Roc-A-Fella records utilized songs in an innovative way as 'rap-advertisements' for goods and services bearing the ROC Family of Marks, including for ROCAWEAR clothing/apparel goods and services as the following example (but not complete) timeline of lyrics on Jay-Z albums and songs help demonstrate:

- "Celebration (from Streets is Watching Soundtrack)" (May 5, 1998)

  ◦ "Team Roc sweater and ice water"

- Vol. 3 Life and Times of S. Carter (Rel. Dec. 28, 1999)

  ◦ **"Snoopy Track"**:  "Who's closest to La Costra Nostra?  It's The Roc'" and "I cop them Roc-A-Wear, my mamis dedicated"

  ◦ **"S Carter"**: "On a regular day we just gleam up your space/Rock our own line, got our whole team laced/ RW with the torch on my jeans by the waist"

  ◦ **"Pop 4 Roc"**: "Get this clear the general of the Roc in here/You know how I play low layer Roc-A-Wear... Yeah R-O-C for the 2 triple O . . . Diana Ross of the ROC"

  ◦ "**Jigga my *****"**:  "Back on the block Jay-Z . . . from the, the, the ROC"

- The Dynasty: Roc La Familia (Rel.  Oct. 31, 2000)

  ◦ **"Get Your Mind Right Mani"**:  "You now rolling with them thugs from the R-O-C . . . Cross over to the ROC make yourself hot"

  ◦ **"R.O.C."**:  "We be the R.O.C. . . .  We runs the R.O.C . . . It's the R.O.C. Stop . . . Unstoppable Roc . . ."

  ◦ **"Change the Game"**: . . . let your conscience be free/ you're rolling with them thugs from the R-O-C . . . Roc ears, Roc-wears. Bandanas and white tees"

521949.00667/106552055v.1

- *Blueprint* (Rel. Sept. 11, 2001)

  ○ **"Jigga That *****"**: "It's The Roc! . . . Its HOV! ROC . . . Jay-Z"

  ○ **"Never Change"**: "I am a Roc representor . . . ROC Family first, we never change mayn"

  ○ **"All I Need"**: "It's the Roc! Woo!/ My gear is right (check)/ My bucket is low (check)/ My Rocawear is fitting incredible . . . it's the ROC . . . All I need/Rocawear . . ."

- The Best of Both Worlds (Rel. March 26, 2002)

  ○ **"Take You Home With Me"**: I think I might wife her/ Y'know, powder blue Roc-a-Wear suit, white Nike her/add mami to the cyper/R.O.C. for life cuz"

- *Blueprint 2* (Rel. Nov. 12, 2002)

  ○ **"Poppin' Tags"**: "I got a console full of ammunition and funds mink Roc-a-Wear and some guns"

  ○ **"U Don't Know"**: "Turn my music high, high, high, high-er/ Mo' fire, mo' problems, more Roc-a-wear attire/ . . . Mo' murder for the ROC empire"

  ○ **"N**** Please"**: "Y'all don't run up in record labels demanding respect like we / Y'all don't rock your Roc-A-Wear Nike checks like we/ Y'all coach class, y'all never private jet like we"

  ○ **"Guns & Roses"**: "Roc-a-wear I'm the young black Ralph Lauren/ Every time I get out they put me right back in . . . It's the ROC**"

  ○ **"Some How Some Way"**: "cop their quarties/enough to get the latest ROC, newest glock and old jordies"

- *The Black Album* (Rel. November 14, 2003)

  ○ **"Public Service Announcement"**: "I used to move snowflakes by the O-Z I guess even back then you can call me CEO of the R-O-C"

- *American Gangster* (Rel. Nov. 6, 2007)

  ○ **"Roc Boys (and the Winner Is . . .)"**: "*Roc Boys in the building tonight*"

- *The Blueprint 3* (Rel. Sept. 8, 2009)

521949.00667/106552055v.1

      °    **"Run this Town"**: "We are/ This is roc nation/pledge your allegiance/Get ya'll black tees on . . . all black everything . . . You can call me Cesar/in a dark czar/please follow the leader"

      °    **"We Made It"**: "Roc nation, celebration/Motivation, elevation"

•   *4:44* (2017)

      °    "Smile" "flying paper planes through the projects"

      °    "I fathered your style/Birth of a Nation/Nat Turner Style"

53. As the lyrics from these 'Rapper-tisements' demonstrate, Jay-Z (along with Dash and Biggs) intended to construct and build a lifestyle brand around a unified "ROC" empire, generally using "ROC" to refer to himself and his friends, the clothing line, their records, and the other lifestyle and business assets in the "ROC" empire.

54. Indeed, "ROC" or "Roc" was intended to be the surname designating all things "ROC," records, music, clothing, accessories, publishing, fashion, entertainment, sports, artist and sports representation, and everything else in the lifestyle category surrounding, connected to, concerning, or built around Jay-Z or the lifestyle and business promoted and developed by Jay-Z, who promoted all things "ROC" through lyrics, music, fashion, appearances, media, and in other ways.

55. To reinforce this message, Jay-Z and fellow artists and friends started displaying a diamond-like symbol formed with two hands up in the air (fingers and thumbs meeting in a diamond-type formation), while in public (and depicted on record covers and in various photos) which has been referred to as "the Roc" or "*throwing up the Roc*."

56. This symbolism and cultural identification with the brand was reinforced by musical promotion like the 2006 album *Kingdom Come*, where Jay-Z raps, "*Ladies saying where you been Superman?/ When ***** spending ten million in media on my hands/ The Bruce Wayne of the game*

521949.00667/106552055v.1

*have no fear / When you need me just throw your ROC signs in the air, yeah!*" and in the song, "Diamonds is Forever," Jay-Z directs "*R.O.C . . . throw them diamonds up yeah.*"

57.   The entire "ROC" portfolio was designed to have a unified source, namely Jay-Z himself, who was the self-described "ROC representor" of the entire "ROC Family," enticing fans to engage in the lifestyle brand of "Team ROC" by sporting the clothing of the movement.

58.   But as Jay-Z crafted the "ROC" lifestyle and business portfolio, including increasing consumer and business assets associated with the developing ROC brand, ROC branding was being expanded beyond music, apparel, and consumer products, to sports and artist representation and other businesses, including derivative apparel and lifestyle products bearing the ROC surname and built upon the burgeoning ROC name.

59.   With respect to clothing and apparel, Jay-Z has declared himself the "young black Ralph Lauren" (a description and goal repeated over the years in song and interviews) and referred to himself as the "CEO of the ROC."

60.   Jay-Z is a public-facing executive, and thus the recognized source of the "ROC" empire, building up ROCAWEAR as the household label for an entire lifestyle and starting a family of products and services bearing the ROC name.

61.   As Carter explained in a November 30, 2009 interview with WWD Milestones, "Rocawear has always been part of the whole overall culture.  It's connected to everything that I do . . ."

62.   Jay-Z has sold over 100 million records and has earned over 21 Grammy Awards and a spot on 2017 Time Magazine's 100 most influential people.  He also has the most No. 1 albums by a solo artist, second only to the Beatles in No. 1 albums by artists in the history of recorded music.  Through his records, music, fashion, thousands of live appearances and shows and at red

521949.00667/106552055v.1

carpet events, thousands of interviews and decades of media coverage, Jay-Z and his team and companies have elevated the ROC Family of Marks to worldwide recognition and popularity.

63.   Through this multi-platform branding of all things "ROC," including the ROC Family of Marks used on clothing, apparel and other goods in Classes 18, 25, and 35, sold broadly under (or in connection with) the ROCAWEAR brand, the ROC Family of Marks became identified by the consuming public as associated with a common source or origin of goods and services within the ROC Empire.

64.   The "ROC" surname by itself is recognized by consumers as identifying a common source or origin.  The common element of the ROC Family of Marks is arbitrary and distinctive.

65.   Goods and services bearing the various trademarks in the ROC Family of Marks in Classes 9, 14, 18, 25, and 35 that bear the common "ROC" component have been jointly advertised and marketed to consumers, resulting in a perception among the purchasing public and recognition of such goods and services bearing the ROC Family of Marks as emanating from a common source or origin.

66.   The ROC Family of Marks has been the subject of aggressive policing efforts against third parties, alleged trademark infringement by third parties of individual marks within the ROC Family of Marks.  These cases include:  *Bestford USA Inc. and Studio IP Holdings LLC v. Chung*, 2:08-cv-06111-AHM-VBK  (C.D. Cal.)  (infringement  action  under  "Rocawear  Family  of Trademarks, Logos, and Designs"); *Christian Casey LLC and Studio IP Holdings LLC v. A&E Stores, Inc.*, 1:08-cv-00870-JCF (S.D.N.Y.) (same); *Studio IP Holdings v. Dale of South Florida, Inc.*, 1:08-cv-10815-JSR JCF (S.D. Fla.) (same); *Studio IP Holdings LLC v. Times Watch (USA) Inc.*, 1:11-cv-08319-GBD-JCF (S.D.N.Y.).  Many of these infringement cases were filed by one or more of the Defendants in this case including:  *Roc Apparel Group LLC et al. v. Conway Stores,*

*Inc.*, 1:04-cv-03645-MBM GBD (S.D.N.Y.) (infringement case alleging, among other claims trademark dilution of marks within ROC Family of Marks under 15 U.S.C. 1125(c)); *ROC Apparel Group, LLC v. New Classic, Inc.*, 1:04-cv-09464-GBD (S.D.N.Y.) (same); *Roc Apparel Group, L.L.C. v. Classic Marketing NY Ltd.*, 1:05-cv-00022-LLS (S.D.N.Y.) (same); *Roc Apparel Group LLC v. M. Rafi Sons Garment, Inc.*, 1:06-cv-00150-DAB U.S. (S.D.N.Y.) (same); *Roc Apparel Group LLC v. Bare Feet Enterprises, Inc.*, 1:06-cv-00647-WDQ Dkt. #1 (D. Md.) (same); *Roc Apparel Group v. Island Wholesaler*, 1:06-cv-21497-WMH (S.D. Fla.) (same); *Roc Apparel Group LLC v. Top Brand Wholesalers*, 1:11-cv-21182-JAL (S.D. Fla.) (same); and *Roc Apparel Group LLC v. Wholesaler Clothing Market*, 1:11-cv-21274-MGC (S.D. Fla.) ("The ROCAWEAR Trademarks are distinctive, unique, valuable, well-known, and famous").

67.     The ROC Family of Marks has its origin in Jay-Z and his pursuit of a lifestyle brand to accompany his music and other business ventures, but was retailed and promoted by Jay-Z and companies formed by or at the direction of Jay-Z, including RNAG, RAG, RNLLC, and others.

68.     Carter is either a member of these LLCs or a member or officer of members of these LLCs, and at all times relevant herein, directed and participated in, and approved the activities of RNAG, RAG, and RNLLC with regard to the business activities complained of in this pleading.

69.     Even if Carter did not actually direct the activities, including infringement, complained of herein, he directed and participated in directing and approving that these LLCs engage in the business depicted in this pleading involving the ROC Family of Marks, even after this lawsuit was filed, ignoring the claims herein and continuing to sell, advertise, promote, and develop products that offend and infringe the marks acquired by the Iconix companies.

70.     Upon information and belief, Carter directed and participated in the management or oversight of RNAG, RAG, and RNLLC engaging in the infringement and other activities in this

521949.00667/106552055v.1

pleading or, when presented with such manufacturing, advertising, marketing, and promotion activities, including retail activities bearing intellectual property of Plaintiffs, approved such activities and distribution, including of products and services bearing the ROC NATION Name and including the ROC Family of marks and other intellectual property of Plaintiffs.

71.    While Carter and his legal and business team may have protected Carter from authoring or executing agreements or papers causing such commercial activities, Carter was aware of the business complained of in this pleading and approved and participated in through direct instructions or through inaction when made aware of the challenged business activities, even after this lawsuit was filed complaining of such commerce.

72.    Carter, having previously boasted of being the "ROC representor" of the entire "ROC Family," by his words, actions, participation, and/or conduct, and at times by way of his inaction when becoming aware of such commercial activity, directed, approved, and instructed the conduct attributed in this lawsuit to RNAG, RAG, and RNLLC, in addition, possibly to the conduct of Paper Planes Holdings and COS.

73.    Even if Carter did not personally approve all such activities, such business and activities were performed with Carter's knowledge and approval, direct or tacit, as the direction of the companies and their products and services, including marketing and promotion, were directed and informed by Carter, who participated in guiding the formation and development of businesses bearing the ROC surname.

74.    That is, the products bearing the ROC Family of Marks were approved by Carter or the categories of products, branding, and marketing approach were approved by Carter directly or indirectly by Carter approving the branding bearing the ROC Family of marks and individual marks of Plaintiffs.

521949.00667/106552055v.1

75.     Carter approved and directed the branding on the infringing products complained of in this pleading, and approved, participated in, and informed the ROC Family of Marks on the products identified herein that form the basis of the claims in this pleading.  If Carter did not approve the design, manufacture, license, distribution, marketing, or sale of each individual retail apparel product, he approved the branding approach, including branding, marketing, promotion and identity of the apparel products, and that the products would be included in the ROC family.

76.     By his direction, control, guidance, participation, leadership, inspiration, command, and/or supervision, and often times by his inaction when presented with such matters, Carter personally directed, inspired, and informed the branding, style, and trademarks of the apparel products bearing the ROC name or bearing a mark within the ROC Family of Marks on such products, requiring that all products of RNAG, RAG, Paper Planes, COS, and/or RNLLC bear and include a ROC mark, ROC name, or ROC branding such that the product is identifiable as part of the ROC suite of products and associated with Jay-Z.

77.     The ROC Family of Marks is inspired and/or directed by Carter, and is included on all of the infringing products identified herein including those products known or not known to Plaintiffs and that will be identified in this lawsuit through discovery as bearing the ROC name or a ROC stylized mark or bearing or including the ROC Family of Marks.

78.     Carter is the driving and moving force, and the inspiration behind the creation, promotion, marketing, and direction of the apparel products, lines of products, and services bearing the ROC name, and has always been the moving force behind all products and services bearing the ROC name; indeed, the ROC name is synonymous with Jay-Z's name, style, image, reputation, and persona, part of the Jay-Z marketing strategy behind all things ROC.

521949.00667/106552055v.1

C.     **Iconix Acquires the ROC Family of Marks**

79.     As of March 6, 2007, Iconix entered into an Asset Purchase Agreement (the "APA")

with Rocawear Licensing LLC and others in which Iconix acquired, among other assets and things,

all of Rocawear Licensing LLC's (defined under the APA as the "Seller") Intellectual Property

(defined at APA Art. 1.19) including "rights analogous to those set forth in this definition and any

and all other proprietary rights relating to Intangibles" (defined at APA Art. 1.18).

80.     Specifically, APA Art. 2.1(1) conveyed all common law and registered trademarks

including, without limitation, the registered marks identified in APA Schedule 4.17 (attached as

Ex. B), and all goodwill, Marks, Intellectual Property Rights, and Intangibles (defined at APA Art.

1.19, 1.25, and 4.17) associated therewith, to Iconix in connection with the contractually defined

"Business."

81.     The APA trademark assignment broadly encompasses under Art. 1.19 (and Exs. A and

H) *"any and all proprietary rights (throughout the universe, in all media, now existing or created*

*in the future, and for the entire duration of such rights) arising under statutory or common law,*

*Contract, or otherwise"* including, *"Assignor's right title and interest in and to the Marks, together*

*with the goodwill of the business symbolized by such Marks.*"

82.     The APA parties expressly recognized the existence of the ROC Family of Marks and

expressly conveyed that family of trademarks bearing the "Roc" surname to Iconix.  Indeed, APA

Art. 1.2 describes the Seller's business as licensing and brand management of the *"ROCAWEAR*

*family of Marks . . . and associated names for use in connection with a wide variety of goods and*

*services everywhere in the world,"* and the assets of such business are conveyed under APA Art.

21.

83.   Consistent with the rights associated with the transfer of any family of marks, APA Art. 1.19 expressly includes the transfer of "rights associated with . . . continuations, continuations-in-part, substitutes, renewals, reissues and extensions of [the conveyed trademarks] now existing, *hereafter filed, issued, or acquired*" (emphasis supplied).

84.   To protect the Iconix purchase of the ROC Family of Marks, under APA Art. 6.10, Seller was required to remove any reference to the ROC surname from Seller's business name and "any entity controlled by or under common control with Seller, directly or indirectly," and certify the same within thirty (30) days of closing.

85.   Iconix paid in excess of $204,000,000 under the APA for the assets (and liabilities), ████████████████████████████████████████████ in addition to other consideration exchanged between the parties.  Part of the primary consideration for such a substantial purchase price included the ROC Family of Marks and the broad rights associated with the ROC Family of Marks in the forms identified in the APA and all extensions and derivatives thereof, at the time of the APA and in the future, as specifically contemplated by the APA.

86.   After Iconix acquired the ROC Family of Marks in 2007, Iconix and its subsidiaries and licensees have continued to market and advertise the various marks together.  For example, the "ROC" mark can be found on SKUs marketed and sold under the ROCAWEAR label, and in advertising copy on the ROCAWEAR website, as follows:





521949.00667/106552055v.1



87.    Since the acquisition of the ROC Family of Marks, Iconix and its licensees have continued to invest in the ROC Family of Marks and utilized other trademarks (registered and non-registered) with the "ROC" or "Roc" surname for product SKUs in Classes 9, 14, 18, 25, and 35 including (as to Class 25): "ROC 99" and "New Roc City," adding well over 100 additional registered and common law marks utilizing the "Roc" surname.   Indeed, Iconix has further developed the ROC Family of Marks acquired through the APA with additional "Roc" and "ROC" named and inspired brands and collections derived from the intellectual property acquired through the APA.

88.    Iconix and its subsidiaries continued (and continue) to cross-promote the ROC Family of Marks in Classes 9, 14, 18, 25, and 35 in harmony with the 'Roc' brand for different goods and services bearing the same or similar brands.   For example, artist DJ Khaled is managed by the ROC Nation talent management division and also serves as the face of the ROCAWEAR brand, clearly owned and licensed by Iconix.

89.    Plaintiffs' brands and trademarks are strong commercial successes.   In particular, goods offered for sale in connection with the ROC Family of Marks have generated sales of over $1 billion since the 2007 acquisition.

90.    Plaintiffs' brands are immensely popular with the general consuming public as evidenced by, *inter alia*, their worldwide sales, followers on Twitter, Instagram, and other social

521949.00667/106552055v.1

media, millions of "likes" for their respective Facebook pages and other media platforms in which the consuming public has embraced the various brands of Iconix.

91.   Iconix has invested significantly in creating, maintaining and promoting the goodwill associated with its brands, names, logos, images, likenesses, and trademarks, including the ROC Family of Marks.

92.   Iconix and its media, licensees, distribution, retail, e-commerce, marketing, and fashion partners have spent millions of dollars advertising and promoting goods offered in connection with the fashion products, brand names, images, likenesses, and intellectual property (including their trademarks) of Iconix's brands throughout the world.

93.   In addition to traditional advertising, Iconix and its business partners market and promote Iconix's brands through social media platforms such as Facebook, Instagram, Twitter and YouTube.

94.   As a result of Plaintiffs and their business and commercial partners' extensive sales, advertising, and promotional efforts, including in connection with the sale of clothing and other products, and their consistent production of high quality goods, Plaintiffs' ROC Family of Marks – including ROC NATION – are widely recognized by the general consuming public of the United States and are famous and have garnered goodwill of incalculable value.

**D.**   **Studio IP Rights in the ROC NATION Mark**

95.   Less than a year after Iconix entered into the APA and purchased, among other things, the ROC Family of Marks, Jay-Z entered an agreement with non-party Live Nation on April 3, 2008 to form a new entertainment venture, record label, production and touring company, and publishing house, under the name "ROC NATION," operated through RNLLC and drawing upon the "ROC" surname distinctive of the entire "ROC Empire" of goods and services, in combination with the name Live Nation.

521949.00667/106552055v.1

96.    Eventually, Jay-Z, drawing upon the incredible success of the multi-platform marketing strategy between Roc-A-Fella and Rocawear, followed the same playbook by expanding into Class 25 clothing, apparel, and hats marketed under the "ROC NATION" brand to promote the entertainment and management business under the same name, which in turn promoted the apparel line.

97.    Six years after the APA, a dispute arose between Iconix and RNLLC about the use of the name and logo ROC NATION, which name and logo constitute part of the ROC Family of Marks, and clearly utilized the valuable ROC surname in Class 25, and all of the goodwill associated therewith, that was previously transferred to Iconix under the APA.

98.    Studio IP and RNLLC agreed in a July 1, 2013 Consent and Co-Existence Agreement (the "Consent Agreement," attached as Ex. C) to allocate rights to the ROC NATION trademark under certain International Classes as between Studio IP and RNLLC, with RNLLC expressly agreeing that Studio IP, a wholly-owned Iconix subsidiary which holds certain intellectual property of Iconix, shall own and control ROC NATION in, among other Classes, Classes 25 and 35, including for use on certain products, including apparel and headwear.

99.    The Consent Agreement recognized, among other things, that (i) Studio IP is the "Owner" of marks bearing ROC; (ii) Studio IP intended to register ROC NATION around the world; and (iii) RNLLC would not contest such registration of "Owner's ROC NATION Mark."

100.   Studio IP is further identified by RNAG as the owner of ROC NATION in Classes 3, 9 (for eyewear only), 14, 18, 25 and 35, among other Classes, in the July 1, 2013 License Agreement between Studio IP and RNAG (the "License Agreement") (Ex. D).

101.   The ROC NATION trademark was previously conveyed under the APA to Studio IP for Classes 25 and 35 as part of the broad ROC Family of Marks and cannot be opposed or

521949.00667/106552055v.1

challenged by RNLLC under Section 2(a) of the Consent Agreement.  Collectively, the ROC

NATION mark whether at common law and/or by way of registration and in Classes 25 and 35 and

in all Classes[2] to which Plaintiffs acquired the trademarks, are referred to herein as the "ROC

NATION Mark."

102.  The Consent Agreement, among other things, essentially acts as a non-opposition

agreement in which RNLLC agreed to not oppose or contest Studio IP's existing ownership and

control of the ROC NATION Mark in Class 25.

103.  RNLLC, RAG, and/or RNAG have no basis under the Consent Agreement or under

any agreement or law to challenge or oppose Studio IP's ownership of ROC NATION in Classes

25 or 35.

104.  RNLLC is required under Consent Agreement Section 2(c) to provide Studio IP, at

Studio IP's request, written consent to the registration of ROC NATION for Class 25.

105.  RNLLC is required under Section 9(d) of the Consent Agreement to not undertake,

nor allow others under its control to undertake, any activity or thing which will "adversely affect

any rights of [Studio IP] in and to Owner ROC NATION Mark in Class 25," including ROC

NATION in Class 25, which "will reduce the value of the Owner Trademarks [the ROC NATION

mark as per second Whereas clause] to Owner or detract from its or Owner's reputation."

106.  RNLLC violated Section 9(d) of the Consent Agreement by, among other acts,

allowing RNAG, Paper Planes Holdings, RAG, Jay-Z, and/or other Defendants to convert the

intellectual property, goodwill associated therewith, including the goodwill associated with the

ROC Family of Marks and the ROC NATION mark to Paper Planes Holdings and the Paper Plane

---

[2] Any specification of classes as to any trademarks referenced in this pleading is inclusive and not
exclusive, and such allegation should be construed to refer to all applicable classes to the extent
owned or controlled by one or more of the Plaintiffs.

mark and logo used by the Roc Defendants for the benefit of Paper Planes Holdings and the Defendants owned or controlled by Carter.

107. ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████

108. Under the Consent Agreement's second Whereas clause, RNLLC also confirmed Studio IP's ownership of the ROC Family of Marks, agreeing that "*[Studio IP] and its affiliates own and are currently using the mark ROCAWEAR and related marks incorporating the term "ROC" in connection with goods and services in International Classes 3, 9, 25, and 35, among others, Owner [Studio IP] views the ROC NATION Mark to be a natural extension of those existing marks . . .*"

109. ROC NATION is a well-known mark which has achieved considerable consumer recognition and success, displaying a 'block' style, all-capitalized presentation as follows:

ROC NATION

110. The ROC NATION trademark has been for years, and remains, well-known and famous to the consuming public, which identifies the consuming public with a single source of goods and services.

111. "Roc Nation" is a registered mark in Class 25 (Reg. No. 5195896) for clothing (including shirts, t-shirts, tops, sweatpants, jackets, coats, pants, shorts, jerseys, socks and headwear), and Class 35 (Reg. No. 5195897) for online retail store services featuring clothing

521949.00667/106552055v.1

headwear and accessories (Classes 25 and 35 trademarks collectively the "ROC NATION Mark"), which registrations are owned by Studio IP.

112.  Studio IP's ROC NATION Mark in Classes 3, 9, 14 18, 25 and 35 is valid, subsisting, uncancelled, alive, and unrevoked.

113.  Since acquiring the ROC NATION Mark in Classes 25 and 35, Iconix, directly or through Studio IP's licensees (including RNAG), has used the mark continuously and as a distinctive element of its ROC NATION business, as part of the broader investment in, and marketing and promotion of, the ROC Family of Marks worldwide since the 2007 acquisition of such marks.  Therefore, any unauthorized use or damage to the ROC NATION Mark affects not only the Plaintiffs' interests in the ROC NATION Mark but also in its portfolio of trademarks and business interests, including the ROC Family of Marks.

114.  The ROC NATION Mark in Classes 9, 14, 18, 25 and 35, acquired by Iconix and Studio IP through the APA and validated and confirmed by the Consent Agreement and later confirmed by the License Agreement, is used throughout various apparel products, designs, and collections.

115.  As of the date of the Complaint in this lawsuit, Iconix has been and is actively engaged in negotiating for the expanded use of the ROC NATION Mark and its signature look and feature throughout the United States and has negotiated for the use of the ROC NATION Mark in Class 25 throughout the world.

116.  Plaintiffs continue to market, promote, attempt to license, and engage in commerce with the ROC Family of Marks, but have found it increasingly difficult to license the ROC NATION Mark due to the infringement and other activities described in this pleading by Defendants, who have seized and transferred from Plaintiffs to the Roc Defendants the name recognition, goodwill,

521949.00667/106552055v.1

reputation, and standing of the ROC NATION Mark at the contractual, statutory, and business expense of Plaintiffs.

117. Indeed, after this lawsuit was filed, RNLLC, RNAG or a related entity which controlled the www.shop.rocnation.com website (the "Roc Nation Website") which was selling the infringing and offending ROC NATION goods bearing the ROC NATION Mark, transferred many of such goods depicted for sale to the www.paperplane.shop website (the "Paper Plane Website"), and today, automatically re-routes all such ROC NATION online shoppers at the rocnation.com website to www.paperplane.shop.

118. RNLLC, Paper Plane Holdings RNAG, RAG, and/or other John Doe entities that are engaged in the sale of apparel and goods bearing the ROC NATION Mark, also commingle a mark or series of marks using the words PAPER PLANE or PAPER PLANES and the following flag themed paper plane logo (the "Paper Plane Logo," together with the "PAPER PLANE" word marks, collectively the "Paper Plane Mark"):



119. The Paper Plane Mark is often commingled with the ROC NATION Mark.

120. RNAG, RAG, RNLLC, and/or Jay-Z often commingle and infringe Plaintiffs' ROC Nation Mark with a new and infringing variation of ROC NATION:

**ROCNATION**

121. RNAG, RAG, RNLLC, and/or other John Doe entities owned or controlled by the Roc Defendants took steps before and after the commencement of this lawsuit to commingle the ROC

NATION Mark with the Paper Plane Mark, name, and logo, in order to transfer and convey the goodwill, name recognition, standing among consumers, and identity of the ROC NATION Mark and the ROC Family of Marks to RNAG, RNLLC, RAG and/or Paper Planes Holdings and/or another entity owned or controlled by the Roc Defendants for the purpose of extracting the ROC NATION Mark and the ROC Family of Marks from Plaintiffs and in order to avoid any possible contractual obligations to refrain from using or seizing the ROC NATION Mark or the ROC Family of Marks as set forth in the APA and the Consent Agreement.

122.   The Roc Defendants have, individually or collectively, intentionally taken steps and activities and erected plans to seize, grab, misappropriate, transfer, convey, reallocate, and confiscate the ROC NATION Mark, ROC Family of Marks, and the goodwill, name recognition, and standing associated with the ROC NATION Mark and ROC Family of Marks for themselves, extracting such intellectual property and the good will attended thereto from the grasp and control of Plaintiffs, and seizing the utility of such intellectual property for their selfish gain.   These activities have been directed by Carter either through direct participation or by general business directions given or approved by Carter to further the business interests of RNAG, RNLLC, and/or RAG through such activities to which decisions Carter has participated in and benefitted from, to the detriment of Plaintiffs.

123.   In order to avoid their contractual obligations under the APA, License Agreement, and Consent Agreement, and to avoid liability under the Lanham Act and New York common law, the Roc Defendants used the Paper Plane Mark, name, and logo as an alternative or substitute identity to reallocate, transfer, misappropriate, and convey the goodwill, name association, standing, and identity of (and associated with) ROC NATION and the ROC NATION Mark by, among other things, manufacturing, selling, marketing, promoting, commingling, and identifying the Paper

521949.00667/106552055v.1

Plane Mark, name, and logo, and the 'story' associated therewith, with the ROC NATION Mark and ROC Family of Marks and as an alternative means to peddle and sell ROC NATION Apparel (defined below) and goods bearing the ROC NATION Mark and the ROC Family of Marks.

124.   The Roc Defendants schemed, planned, and plotted to transfer and convey the ROC NATION name, mark, and identity, including goodwill, to the Paper Plane Mark, name, and logo, intending to transfer, reallocate, permanently assign, and convey all goodwill, name recognition, the identity, uniqueness, distinctiveness, personality, and character of the ROC NATION Mark and the ROC Family of Marks to the Roc Defendants through transference of such attributes to the Paper Plane Mark, name, and logo, hoping and planning that the public would associate Paper Plane and its name, mark, logo, and story with ROC NATION such that they are to be considered the same and/or interchangeable, affiliated or emanating from a common source.  Carter directed and participated in this plan and inspired the plan to avoid culpability to Plaintiffs under contracts between Plaintiffs and entities which Carter owns or controls or which benefitted (or benefit) Carter.

125.   Iconix sells, distributes, markets, and promotes its brands and has and will do the same with regard to the ROC NATION Mark in Class 25, worldwide through licensees and/or other contracts, distributors, wholesale accounts and dealers, or other sellers who are charged with developing and building the brand and the brand's image and reputation.  Each of Studio IP's representatives, agents, distributors, and licensees is an ambassador to the company name and brand, and charged with building customer loyalty.

126. Iconix (and its former licensing partner) has and continues to distinguish its ROC NATION brand and the ROC Family of Marks and their concomitant Class 25 products from other products and items offered by other companies that engage in the sale and design of apparel by, without limitation, prominently displaying its ROC NATION Mark in Classes 18, 25, and 35, and

521949.00667/106552055v.1

intellectual property on or in connection with its brand and products or as part of advertising, marketing, or promotional materials distributed throughout the world.

127. Plaintiffs' ROC NATION Mark in Class 25 has been prominently displayed on products and in print, static, moving, and other advertising, promotional materials, and media displayed and distributed throughout the world, and has appeared in print, moving, social media, and other advertisements for many years.

128. Studio IP's ROC NATION Mark has achieved considerable independent consumer recognition through the efforts, promotion, marketing, and advertising by Iconix (through its wholly-owned subsidiaries, affiliates, or licensees) and Iconix's contract, business, and license partners, including RNAG, and through considerable expense and effort incurred by Iconix and/or Studio IP.

129. The ROC NATION name and mark are well-known in apparel and other products and services, well-received by customers and the trade, and the mark and name have received considerable notoriety, publicity, and exposure as a consumer brand.

130. The Roc Defendants have assisted the ROC NATION Mark in becoming famous both directly and with secondary meaning through marketing and publicity efforts not just in Classes 25 and 35 (RNAG) but in other International Classes and other businesses bearing the ROC NATION name as part of its presentation.  ROC NATION is used by these Defendants in entertainment, sports, apparel, and other areas as the name and brand in which such other business is conducted.

131. Defendants each are sophisticated entities represented by numerous professionals, advisors, and counsel.  Defendants are seasoned business entities or persons, and are well-educated and experienced in domestic and international business and commercial sales of products, particularly in the licensing of trademarks.

521949.00667/106552055v.1

**E.**     **Studio IP Licenses Roc Nation to RNAG**

132.   After conveyance of ROC NATION in Class 25 under the APA, and as confirmed in the Consent Agreement, Studio IP licensed (pursuant to the License Agreement) ROC NATION to RNAG for Class 25 use.  RNAG agreed under the License Agreement that Studio IP "is the owner and/or has the right to use the mark ROC NATION for certain products in the United States."

133.   The License Agreement required under Art. 13(a) that "all designs created by Licensee [RNAG] or Licensor [Studio IP] for use in connection with this Agreement . . . shall become the property of Licensor [Studio IP]," among various other restrictive covenants, and quality and brand control mechanisms that RNAG agreed to comply with as a condition of the ROC NATION license.

134.   The License Agreement expired on June 30, 2016 and has not been renewed nor extended.

135.   The License Agreement is an integrated contract that, pursuant to Art. 28(a), cannot be amended, changed, or modified except if such amendment, change, or modification is signed by the party against whom such modification or amendment is sought to be enforced.

136.   The License Agreement was not extended by performance of the parties or agreed by the parties in a writing signed by any Plaintiff to be continued or extended in force, effect, or application.

137.   Pursuant to Art. 23(a) of the License Agreement, upon its expiration, all rights under the License Agreement revert to Studio IP.

138.   Under Art. 23(a) of the License Agreement, RNAG cannot "reproduce or adapt . . . other design materials bearing the Trademark [ROC NATION] for use on merchandise subsequent to [its] termination."

139.   To enforce its rights, Studio IP is authorized under the License Agreement (Art. 21(d)) to seek equitable and legal remedies against RNAG for continued use of the ROC NATION Mark

521949.00667/106552055v.1

in Classes 25 and 35 after expiration of the License Agreement, which remedies survive expiration of the License Agreement.

**F.    The Master Settlement Agreement**

140.  Disputes arose between Iconix and Carter and his companies over a series of transactions, leading RNAG and Iconix, along with Icon DE, the successor to Studio IP, to enter into a July 6, 2015 Master Settlement Agreement ("MSA") with RNAG, S. Carter Enterprises, and Carter.  The MSA was intended to resolve several disputes among the parties.

141.  The MSA settled certain disputes concerning RNAG's performance of royalty payment obligations under the License Agreement, but did not settle all disputes between the parties and did not affect ownership or control of the ROC NATION Mark as previously conveyed to Studio IP.

142.  The MSA also conveyed certain interests held by Iconix in RNAG and RAG.

143.  Art. 8.1 of the MSA disclaims as an act of disparagement the parties' right to enforce the terms of the MSA or the "Transaction Documents," and authorizes the parties thereto to enforce the terms of the MSA or the "Transaction Documents," defined at Art. 1.1 of the MSA as "other documents and instruments contemplated hereby."

144.  Art. 9.1(iii)-(iv) of the MSA requires the parties thereto to keep confidential the MSA and the Transaction Documents unless "in connection with any litigation and then only with reasonable advance notice to the other party and, if possible, under a suitable protective order" or as "may be necessary to establish such party's rights under this Agreement and/or the Other Transaction Documents."

145.  Art. 9.1 excludes from the confidentiality requirements of the MSA the "Existing Agreements," defined under Art. 1.1 as the Consent Agreement and the License Agreement, among other contracts.

521949.00667/106552055v.1

146.  Art. 9.8 of the MSA provides for arbitration of disputes between the parties arising out of the MSA or "exploitation of the Rocawear brand (and related intellectual property) . . . or exploitation of the Roc Nation brand (and related intellectual property) . . ."

147.  This lawsuit is necessary to protect Plaintiffs' rights to the ROC Family of Marks as a whole (and the individual registered and common law marks included in and comprising such family) transferred to Studio IP under the APA and confirmed and validated by the Consent Agreement and License Agreement and, to the extent implicated, the MSA.

148.  Indeed, MSA Art. 9.8(a) provides that the duty to arbitrate covers disputes arising from the MSA "or any of the transactions contemplated herein," which excludes the conveyance of the ROC NATION Mark in Class 25 to Studio IP, which is not a party to the MSA, pursuant to the APA and validated by the Consent Agreement and License Agreement.

149.  The arbitration clause excludes the "Existing Agreements" defined in MSA Art. 1.1., including the Consent Agreement and License Agreement.

150. MSA Art. 9.7 makes clear that the MSA "shall not affect any of the Existing Agreements."  All disputes for equitable relief are similarly excluded from the MSA arbitration provision.

G.    **RNAG Uses and Infringes ROC NATION in Class 25: The New Era Caps**

151.  Prior to March 2017, RNAG[3] and New Era entered into an agreement in which New Era agreed to manufacture, produce, market, distribute, and sell baseball hats bearing the ROC

---

[3] Plaintiffs do not know whether RNLLC, RAG, RNAG, or a new or different 'Roc Nation' entity existing or created by RNLLC, RAG, RNAG, Carter, or John Does for purposes of the partnership with New Era/MLB actually contracted with New Era and/or MLB with regard to the New Era Caps, defined herein.  For purposes of this pleading, any reference to RNAG as the contracting 'Roc Nation' entity or Defendant with New Era and/or MLB with regard to the New Era Caps means and includes RNLLC and/or RAG and/or RNAG and/or Carter and/or John Doe entities.  The actual contracting 'Roc Nation' or Roc Defendant-related entity with regard to the New Era Caps and the entity which

521949.00667/106552055v.1

NATION Mark and logo on the interior of the cap, and bearing on the cap's exterior the Paper Plane Mark and logo, recognized by the consuming public as being affiliated with Roc Nation as further described herein.  The special edition hats also bear the New Era logo and MLB logo, along with an actual Major League Baseball team logo or name, commingling the ROC NATION Mark with other distinguished and distinctive marks.

152.  Collectively, the special edition New Era baseball caps and any other apparel or Class 25 goods as part of the announced partnership among MLB, RNAG, and New Era, and each of them, and each of their hat and apparel collections with 16 or more Major League Baseball teams, bearing the ROC NATION name, image, and mark inside the cap or elsewhere are referred to herein as the "New Era Caps."  Ex. E includes sample images of New Era Caps from the websites of Lids and New Era.

153.  Starting in March 2017, New Era (as a brand) became the official baseball cap of Major League Baseball, with the New Era logo adorning MLB baseball caps since 2016.  New Era (the company), contracting with MLB, began selling the specially-designed New Era Caps for 16 or more Major League Baseball teams, including the SF Giants.  The interiors of the New Era Caps for the teams bear the ROC NATION name, image, and logo and many bear the Paper Plane trademark and logo.

154.  In brazen disregard of the Iconix and Studio IP brand, reputation, and image, and in brazen disregard of the Consent Agreement, upon information and belief (because Plaintiffs do not know which entity contracted with New Era and/or MLB for the New Era Caps business), RNAG and/or RAG and/or RNLLC (or John Does at their direction or the direction of Carter or his subordinates) before March 2017, without informing Plaintiffs and without securing or even

---

purported to convey or license the ROC NATION Mark for the New Era Caps will be disclosed during discovery, and, if appropriate, this pleading amended.

521949.00667/106552055v.1

seeking Plaintiffs' authorization, contracted to license, convey, or authorize the use of the ROC

NATION Mark in Class 25 on (and in connection with) the New Era Caps despite the fact that

Iconix/Studio IP ███████████████████████████████████████████████████

████████████████████████████████████. Carter approved or participated in these

negotiations for the special edition New Era Caps and was aware of such agreement with New Era

and approved and authorized the agreement.

155.  The New Era Caps are being presented and marketed as "New Era X Roc Nation" or

"New X Roc Nation" special edition hats.  Published reports indicate that RNAG and/or RAG

and/or New Era and/or MLB will launch New Era Caps with additional Major League Baseball

teams starting on or about mid-season of the 2017 MLB baseball campaign.  Carter was aware of

and/or approved all of the negotiations with New Era and has worn such offending New Era Caps

in public to promote their sale and to promote Jay-Z and his various business ventures, and to

promote Carter personally.

156.  New Era is selling and marketing the New Era Caps as "MLB New Era X Roc Nation

59Fifty Cap," an example of which is shown in the following images:

 

157.  Lids is selling and marketing the New Era Caps as "New Era MLB New Era X Roc

Nation 59Fifty Cap."  Carter was aware of and authorized and approved of Lids selling such New

Era Caps.

521949.00667/106552055v.1

158.  Lids sells the New Era Caps to the public and also includes as part of its packaging a special bag which prominently displays the name and marks of Lids, New Era, and ROC NATION, commingling such marks to the detriment of Plaintiffs:



159.  The collateral products such as the pennant bearing the ROC NATION Mark are intended to promote New Era, Lids, Carter, and RNLLC/RNAG/RAG or the John Does under their control.  Carter himself benefits financially and by image and reputation enhancement from such New Era Caps bearing the ROC NATION name and logo and the Paper Plane Mark.  Carter authorized and approved the agreements to place the ROC NATION Mark and Paper Plane Mark on the New Era Caps.

160.  RNAG promoted (and continues to promote) the New Era Caps under the Twitter handle #ROCwithLIDS and RNAG employees, including Defendant Jones, are promoting the hats as ROC NATION products in the press.  Carter has personally promoted these special New Era Caps publicly and through his wearing of the New Era Caps at public events and concerts and in media presentations.

161.  The exclusive, limited-edition collection of New Era Caps consist of a range of New Era's traditional "59FIFTY" fitted caps, featuring the following baseball franchises: New York Yankees, New York Mets, Los Angeles Dodgers, Chicago Cubs, Chicago White Sox, Boston Red Sox, San Francisco Giants, Atlanta Braves, Detroit Tigers, Washington Nationals, Baltimore Orioles, Texas Rangers, Houston Astros, Seattle Mariners, Miami Marlins, and Toronto Blue Jays.

521949.00667/106552055v.1

162.   Defendant Emory "Vegas" Jones of RNLLC and/or RAG and/or RNAG and/or a 'Roc Nation' John Doe has provided at least one interview to *Vibe Magazine* about the New Era Caps, boasting that New Era opened the discussions with RNLLC, RAG, or RNAG about the New Era Caps, and maintaining that the opportunity to team with New Era for the New Era Caps was "*bigger than selling a hat*," suggesting a further branding position and use of the ROC NATION Mark by RNLLC, RAG, or RNAG in Class 25 to the exclusion of Plaintiffs.  Mr. Jones also boasted in the article of other products bearing the ROC NATION Mark and other "drops" of new hats or products. (http://www.vibe.com/2017/04/emory-vegas-jones-roc-nation-new-era-mlb-cap-collection/)

163.   Mr. Jones, who refers to himself as a 'Roc Nation Lifestyle Specialist,' also observed in "The Source" magazine (published March 31, 2017: http://thesource.com/2017/03/31/ rocnation-lifestyle-specialist-vegas-jones-talks-partnership-with-new-era-x-mlb) that "*We all done made paper planes because that paper plane solidifies where you want to go . . .,*" suggesting that the New Era Caps indicate a new line of important products to RNAG and/or RNLLC, especially given that this new line represents an opportunity to expand the ROC NATION Mark in connection with the New Era Caps.

164. Given the sophistication of the Roc Defendants, who are not only seasoned and experienced in selling goods directly and as licensors and/or licensees, but also seasoned in the licensing of trademarks given the importance and value of trademarks to their business, Defendants should have obtained clearance from Plaintiffs before executing a contract or license and before using the ROC NATION Mark which Defendants could easily have confirmed was owned by Studio IP in Class 25 through a U.S.P.T.O. search.

165.   The Roc Defendants failed to engage in any steps to confirm ownership of the ROC NATION Mark prior to entering into the New Era Caps business or business concerning apparel

521949.00667/106552055v.1

bearing the ROC NATION mark, a careless and/or intentional act or practice which led to the infringement, passing-off, misappropriation, and other harm alleged herein.

166.   SF Giants approved and authorized its "SF" logo and trademark to be used on the New Era Caps, knowing and approving such use of its mark along with the name and logos of New Era, MLB, and ROC NATION.

167.   SF Giants intended to commingle its name, trademark, and logo with the ROC NATION Mark in order to seize upon the popularity and strength of the ROC NATION Mark and the ROC Family of Marks to increase sales of the New Era Caps in order to enjoy more royalty payments from MLB and to secure additional profits.

168.   Often, collateral products and other materials are included as part of such marketing, promotion, and sales in order to further deceive the public by marketing and positioning the ROC NATION Mark as appearing to be owned or controlled by RNAG, Carter, RNLLC, RAG, Paper Planes Holdings, and/or John Does.   Such collateral products take different forms, including a pennant included with the sale of New Era Caps at Lids:



169.   Such collateral products and things help drive sales to New Era and Lids because the ROC NATION Mark is commingled with their marks and names, which Studio IP mark is diluted to the prejudice of Plaintiffs.   Collateral products are also intended to promote the Roc Defendants as the owners of the ROC NATION Mark in Class 25.

170.   SF Giants owns its "SF" trademark used on the New Era Caps.   MLB is an exclusive licensing agent for SF Giants, but SF Giants engages in quality control over its name and mark through approval of the use of its name and mark on products licensed by MLB.

521949.00667/106552055v.1

171.  SF Giants knew of and approved the use of its name or logo and trademark on the New Era Caps.

172.  SF Giants did not contest the use of its name or logo or mark on the New Era Caps.

173.  Neither RNLLC, RAG, RNAG, Paper Planes Holdings, MLB, Carter, New Era, SF Giants, John Does, nor any individual or entity affiliated with Defendants warned, consulted, asked, inquired, or contacted Plaintiffs about the New Era Caps bearing Studio IP's ROC NATION Mark.

174.  The Roc Defendants, New Era, MLB, Paper Planes Holdings, and SF Giants know, and at all relevant times knew, that consumers are likely to believe that the New Era Caps and, with regard to RNLLC, RAG, RNAG, Carter, MLB, Paper Planes Holdings, and/or John Does, apparel bearing and displaying the ROC NATION name or mark, including images, likenesses, and intellectual property, are authorized, sanctioned, or licensed by Plaintiffs, even though they are not.

175.  The Roc Defendants, SF Giants, MLB, Paper Planes Holdings, and New Era undertook the actions described herein with the deliberate intent to create a false impression as to the source, sponsorship, and quality of the New Era Caps and, with regard to RNLLC, RAG, Carter, RNAG, MLB, Paper Planes Holdings, and/or John Does, apparel bearing or displaying the ROC NATION Name or marks, and to dilute the distinctiveness of Studio IP's trademark.

176.  MLB acts as an agent for SF Giants in licensing the mark of the SF Giants to third parties and paying royalties to SF Giants.

177.  Upon information and belief, the New Era Caps are the product of a license by RNAG or RNLLC or RAG and/or John Doe entities under the direction of such Defendants with New Era, which itself has a license and/or business partnership with MLB for the manufacture, marketing, promotion, and sale of baseball hats, among other products.

521949.00667/106552055v.1

178.  Neither Iconix, Icon DE, nor Studio IP consented to or authorized ROC NATION being used as a mark on the New Era Caps.

179.  The New Era Caps are authorized to be sold by at least 16 Major League Baseball teams announced by New Era and RNAG as participating in the special edition New Era Caps, including SF Giants, and are authorized to be sold by, and are being sold and marketed by, Lids stores and its website (www.lids.com), New Era stores and its website (www.shopneweracap.com), and other retail outlets and venues.

**H.  Roc Defendants Infringe ROC NATION: Unauthorized Apparel**

180.  While RNAG was previously a licensee of the ROC NATION Mark in Class 25 under the License Agreement, that agreement expired on July 1, 2016, but RNAG has simply continued to use (or caused and/or allowed and/or encouraged its affiliates, including Paper Plane Holdings, to use) the ROC NATION Mark without authorization as a rogue holdover licensee.  As a result, Carter and his various companies, including RNLLC, RNAG, Paper Plane Holdings, RAG (and others), have deliberately undermined a series of agreements, after receiving hundreds of millions of dollars in substantial compensation from Plaintiffs, by continuing to use and exploit in business the very property already conveyed to Iconix and Studio IP by contract.

181.  The common and/or overlapping ownership and/or control between RNAG, Paper Plane Holdings, RAG, RNLLC – all at the direction or approval or under the control or authority of Carter – and the ownership, use, and marketing of ROC NATION in other classes (such as music, entertainment, and sports) also increases the likelihood of confusion as to the source, origin, or quality of the ROC NATION goods and the ROC Family of Marks in Classes 18, 25, and 35.

182. Without authorization, RNLLC and/or RAG and/or RNAG and/or Paper Plane Holdings LLC and/or John Does have designed, manufactured, marketed, licensed, advertised, sold, and/or distributed ROC NATION branded apparel and clothes (shirts, hats, sweatshirts, pants,

521949.00667/106552055v.1

outwear, socks, and other apparel) at the Roc Nation Website and the Paper Plane Website, and at other online retailers, direct to consumers and at brick-and-mortar stores, boutiques, and through retailers, vendors, and sellers around the world.  Carter not only was aware of these activities and remains aware of such commerce, but approved and authorized these commercial activities and marketing.

183.  The Roc Nation Website and the Paper Plane Website are operated by RNAG, RNLLC, Paper Plane Holdings, RAG, and/or John Does and their affiliates and subsidiaries.

184.  It is not known which entity owns the website www.jay-z.fanfire.com, which also sells infringing goods and items.

185.  The subject apparel bears the ROC NATION name, logo, and brand on the labels, hanging tags, eyelets, and other parts of the apparel and clothes, including hats, hoodies, sweat pants, shirts, bottoms, outerwear, and other clothes and accessories.  Such branding and use of the ROC NATION Mark includes counter and store displays, and store advertising and promotional materials along with materials and things accompanying the sale of such goods. Collectively, all such apparel, clothing, things, materials, products, and goods, and the selling, sales, distribution, marketing, promotion, and advertising thereof, excluding the New Era Caps, and Paper Plane Caps (defined below) are referred to herein as the "ROC NATION Apparel."

186.  The unapproved and infringing ROC NATION Apparel has been sold (and continues to be sold) on the Roc Nation Website and/or the Paper Plane Website.

187.  The ROC NATION Apparel prominently bears the ROC NATION Mark, owned by Studio IP, on (or in connection with) the products themselves which are advertised, described, and promoted on the Roc Nation Website using and bearing the ROC NATION Mark on and as part of

521949.00667/106552055v.1

advertising and promotional copy as demonstrated in recent images from the Roc Nation Website depicted in Ex. F and below:

 

188.  The ROC NATION Mark has been (and continues to be) commingled on ROC NATION Apparel with the Paper Plane Mark (i.e., the symbol of a flag-themed paper plane as depicted in the image below), available for purchase on the Roc Nation Website:

 

189. The Paper Plane Website depicts hats, sweatshirts, bottoms, outerwear, and accessories bearing the Paper Plane Mark, and also commingling and bearing the ROC NATION stylized name on certain articles of clothing, samples of which are depicted in the following images:



521949.00667/106552055v.1



190.  Certain of the Roc Defendants have engaged in commercial mischief since the initial

filing of this lawsuit, by, for example, removing the above socks from the Roc Nation Website, but

then immediately launching the Paper Plane Website through, in whole or in part, the newly-formed

Paper Plane Holdings and/or RNAG, depicting new examples of infringing ROC NATION

Apparel, such as the following shirts currently and formerly available for sale on the Paper Plane

Website:

 

191.  According to the former Roc Nation Website, the offending ROC NATION Apparel

has been or is available in at least fifty-six (56) brick-and-mortar retail outlets throughout the United

States, including at least seventeen stores in New York, among twenty (20) states with retail outlets

offering the offending products.[4]  The Paper Plane Website includes similar and additional retailers

around the country.

---

[4] Alabama, California, Connecticut, Florida, Georgia, Indiana, Kentucky, Louisiana, Massachusetts, Missouri, North Carolina, New Jersey, New York, Nevada, Ohio, Pennsylvania, Rhode Island, Tennessee, Texas, and Virginia.

521949.00667/106552055v.1

192. There are numerous third-party retailers offering the offending ROC NATION Apparel online and around the world.

193. Just as the unauthorized and infringing use of the ROC NATION Mark by Defendants harms the ROC Family of Marks and all of the brands owned by Plaintiffs bearing the ROC Family of Marks, RNAG, RAG, RNLLC, Paper Plane Holdings, Carter, and John Does 1-5 unjustly benefitted in other business lines from such infringing use.

194. The ROC NATION brand is a multidisciplinary household name, utilized in a variety of non-Class 18/25/35 contexts by Carter and entities owned or controlled by Carter spanning entertainment, sports management, artist and talent management, publishing, documentary and music production, brand development, boxing promotion, and other businesses.

195. These different commercial lines, products, and services are promoted and marketed (and, therefore identified) together as a unified ROC NATION brand, including through the Roc Nation Website; Paper Plane Website; other websites affiliated with the Roc Defendants or approved by them, and official social media sites and handles of the Roc Defendants.

196. The websites for the Roc Nation entertainment, production and sports management businesses link to a website (including Paper Plane Website and previously the Roc Nation Website) selling ROC NATION Apparel and other offending and infringing goods.

197. Similarly, targeted banner advertisements and embedded online advertising is coded to advertise ROC NATION Apparel when web browsers search terms like 'Jay Z,' or 'Roc Nation sports,' and similar searches.

198. Thus, other ROC NATION products and services offered by Carter and various entities under his guidance, ownership, and/or control, including, without limitation, RNAG, RAG, Paper Plane Holdings, RNLLC, and John Does 1-5, are being unjustly enriched through

521949.00667/106552055v.1

"caravanning" sales from the unauthorized ROC NATION Apparel promoted alongside these businesses, driving increased visibility of the brand overall and increased revenue for these non-Class 25/35 goods and services.

199.   Carter exercises direct dominion and control over RNAG, RAG, and RNLLC, including John Doe Defendants not presently known to Plaintiffs, directing the infringing and other activities complained of in this pleading.  Carter has knowledge of and approved all of the infringing activities, or has approved all such activities by his actions, participation, or inactions and silence while such activities are undertaken and promoted with Carter's knowledge.

200.   Since the filing of this lawsuit, Carter has undertaken no steps to prevent such further infringement or the activities comprising the causes of action herein.

201.   Paper Plane Holdings and the Roc Defendants have unlawfully, unfairly, and extra-contractually benefitted from caravanning sales of ROC NATION Apparel and other goods associated with the Paper Plane Mark and sales on the Paper Plane Website and elsewhere where 'Paper Plane' goods are displayed and sold.

202.   Carter has personally benefitted from caravanning sales not just through his ownership stake in RNAG, RNLLC, and RAG (and other entities not known to Plaintiffs involved in selling and distributing apparel bearing the 'ROC' surname) and the profits thereto, but through increased exposure and publicity to Carter as Jay-Z, the worldwide celebrity and brand ambassador, resulting in increased concert events and resulting ticket sales, increased concert dates and sales of products at concerts and sales of Jay-Z related merchandise (www.jay-z.fanfire.com), including increased recognition and attention to Carter (as Jay-Z) personally, increasing and expanding the Jay-Z brand, reputation, and image, and therefore related sales of merchandise, and increasing Jay-Z's persona and all financial and other benefits that flow therefrom.

521949.00667/106552055v.1

203.   Carter has caused these caravanning sales and other commercial activity identified herein benefitting the ROC marks, which benefits Carter (as Jay-Z nee Carter) personally given the increased publicity and exposure to Jay-Z as the internationally-known performer, entertainer, and entrepreneur, especially with his expanding business empire.

204.   Jay-Z sells merchandise and apparel bearing his name and bearing the ROC NATION name and logo, which benefits Carter personally, all of which sales and increased exposure are caused by caravanning sales due to infringement of the ROC NATION Mark and ROC Family of Marks owned by Plaintiffs.

205.   Indeed, since the filing of the lawsuit, Carter's Roc Nation Sports has signed numerous celebrity athletes and artists, all of whom are drawn to Roc Nation Sports not because of its nascent reputation or skills in sports and entertainment management, but because of Jay-Z himself, and the concomitant exposure Jay-Z brings to such athletes and artists not just in their respective fields, but in other media and commercial areas, allowing the stars to cross-sell and to be cross-sold in different media and public ways, increasing their exposure and streams of revenue, all made possible from the increased persona, reputation, and standing of Carter as Jay-Z through ROC products and name recognition, all at the commercial expense of Plaintiffs.

206.   These activities are outside the scope of Carter's corporate responsibilities to RNAG, RNLLC, and RAG, but benefit Carter personally.  In fact, RNAG, RNLLC, RAG, and John Doe entities were special purpose vehicles and/or corporate entities established to trade in the ROC NATION name and the Jay-Z image and reputation and to build the Jay-Z name.  Their activities inure to the direct benefit of Jay-Z (nee Carter), the self-described "general of the Roc in here" (Pop 4 Rock; Vol 3 . . . Life and Times of S. Carter, Verse 3).

521949.00667/106552055v.1

207.  In fact, Carter has boasted that Roc Nation is the *"integration of all my interests . . . in hip-hop, it's always been about the culture.  It's not just music, it's fashion, it's business, it's lifestyle.  I'm an entrepreneur. . ."* (*"Jay-Z" Mark Beaumont quoting the Observer)

208.  Carter benefits from the integration of his fashion businesses building and creating the important ROC NATION name, logo, and brand (via RNAG, RNLLC, RAG using the ROC NATION Mark) that carries to his music, sports, publishing, media, and other pursuits, which continue to expand and create value for Carter personally.

209.  Carter's other collateral businesses trade on the ROC NATION name, brand, logo, and reputation that was built and is being increasingly exposed based upon the fashion and Class 25 sales of ROC Nation Apparel and products by RNAG, RAG, Paper Plane Holdings, and RNLLC in violation of Plaintiffs' intellectual property rights.

210.  Carter and RNAG, RNLLC, and RAG cannot extricate Jay-Z from these businesses – Carter is the business, his name, persona, personality, image, and reputation – that is what attracts, in part, to ROC NATION and the Roc Family of Marks, and that is what Jay-Z seizes upon when he combines his multiple businesses to benefit himself.

211.  The increase in name recognition, reputation, standing, style and credibility ('street-cred'), and status of the ROC NATION Mark, name, brand, and logo, buttressed by the ROC NATION Apparel, inures to Carter's personal benefit by increasing the reputation, standing, credibility, and status (again, 'street-cred') of Carter to sell and pursue his other businesses.  Such transference results in caravan sales and business to Carter personally and independently vis-à-vis his other businesses and his music, concerts, and other personal pursuits.

521949.00667/106552055v.1

212.  Plaintiffs have never approved the manufacturing, sale, distribution, marketing, and promotion of goods and apparel bearing the ROC NATION Mark by RNAG, RAG, RNLLC, Paper Plane Holdings, Carter, or others controlled by Carter after expiration of the License Agreement.

213.  RNAG and/or Paper Plane Holdings have enjoyed substantial sales and profits of ROC NATION Apparel bearing the ROC NATION Mark of Studio IP and the sale of Paper Plane goods with and without the ROC NATION Mark, all of which goods usurped the goodwill associated with the ROC NATION Mark and the ROC Family of Marks without Plaintiffs' permission or authorization.

## I.    RNAG, Paper Plane Holdings, and New Era Infringe Roc Nation: Paper Plane Caps and additional ROC NATION Apparel

214.  After this case was commenced naming the Roc Defendants and New Era and identifying the New Era Caps as infringing products, RNAG, Paper Plane Holdings, and New Era manufactured, advertised, marketed and distributed yet another line of infringing hats which commingled the ROC NATION Mark, Paper Plane Logo, and New Era logo as depicted below:



215.  The new line of hats bearing the ROC NATION Mark, Paper Plane Logo, and New Era logo (the "Paper Plane Caps") are virtually identical in style and design to the New Era Caps, substituting only the logo of the individual MLB logo for the Paper Plane Logo as demonstrated in the side-by-side below:

521949.00667/106552055v.1



216. While RNAG was previously selling infringing hats bearing the Paper Plane Logo and the ROC NATION mark along with other ROC NATION Apparel, the new line of Paper Plane Caps, like the New Era Caps are the product of a collaboration with New Era.

217. New Era, RNAG, Paper Plane Holdings and/or John Does are engaging in a broad, multi-phase marketing campaign to utilize the ROC NATION Mark, first with the New Era Caps and later with the Paper Plane Caps, in an effort to usurp the fame of the ROC NATION Mark and convert the same for use by RNAG, Paper Plane Holdings, and New Era.

218. Studio IP did not authorize RNAG, Paper Plane Holdings, New Era or any another entity to utilize the ROC NATION Mark on the Paper Plane Caps that are currently for sale on the Paper Plane Website.

**J.   The Infringing Roc96 Brand**

219. In yet another attempt to usurp the ROC Family of Marks sold to Iconix for hundreds of millions of dollars, Jay-Z or companies owned and/or controlled by Jay-Z launched a new clothing and apparel company in 2016 operating under the trade name and brand, "Roc96."

220. Since its inception, COS, MadeWorn, and/or one or more John Does has/have operated under the trade name Roc96, manufacturing (via third parties), distributing, marketing, promoting, and generally selling Roc96 in Class 25 and other Classes.

521949.00667/106552055v.1

221. COS is owned and/or controlled by Burke (the former Roc-A-Fella records owner), and Jones (Jay-Z's childhood friend and Roc Nation employee, who helped spearhead the infringing activities related to ROC NATION Apparel and New Era Caps).

222. On August 24, 2016, COS filed a U.S.P.T.O. application (Serial No. 87149587) to register a design and word mark combination for Roc96, which is registered under 5229571.

223. COS or companies owned and/or controlled by Carter or other Defendants (collectively, "COS") designs, manufactures, markets, sells and distributes apparel under the Roc96 brand including, for example, t-shirts, outerwear, sweatshirts, jackets, hats, and sneakers (collectively, the "Roc96 Apparel").

224. COS partnered with California-based designer and manufacturer, Defendant MadeWorn, to develop a series of thematic "capsules."  MadeWorn helps develop the concepts, theme, and design of Roc96, which is marketed as a collaboration using the MadeWorn name.  For example, the luxury retailer, Barneys New York ("Barneys"), advertises Roc96 on the official Barneys website as "MadeWorn x Roc96."

225. Upon information and belief, MadeWorn has a joint venture, partnership, license, or other financial and/or legal relationship with COS which allows MadeWorn to participate directly or indirectly in profits from the sales of Roc96 Apparel.

226. The Roc96 Apparel is marketed and sold online directly through the website www.roc96.com (the "Roc96 Website"), and also is distributed through Barneys brick-and-mortar and on-line retail outlets.  In addition, COS is in the process of rolling out "pop-up stores" in at least four locations to feature Roc96 Apparel.  Revolve social club in California is hosting such a pop-up store, and also offers Roc96 for sale on its website www.revolve.com.

521949.00667/106552055v.1

227.  The word and mark "Roc96" is nothing more than the "ROC" mark (utilized by Plaintiffs for years in Classes 25 and 35, and owned and controlled by Plaintiffs as part of the ROC Family of Marks) with the additional descriptive component "96" added to the protected mark, referring to the date Roc-A-Fella Records released the album *Reasonable Doubt*.

228.  Roc96 is a thematic clothing line focused exclusively on Jay-Z, Roc-A-Fella Records, and the album *Reasonable Doubt*.  Images of Jay-Z, Dash, and Biggs appear on the clothing itself and in advertising and promotional materials.

229.  These themes and marketing efforts create an inherent likelihood of consumer confusion with ROCAWEAR clothing and all Class 25 goods bearing the ROC Family of Marks, as ROCAWEAR was formed and promoted by the same individuals as an effective (although legally separate) clothing division of Roc-A-Fella Records.

230.  Roc-A-Fella Records, directly and through music released under the Rocafella label, promoted ROCAWEAR using Jay-Z's image and the lifestyle he denoted as a "Roc representor" and the "CEO of the R-O-C."

231.  Individual SKUs of Roc96 Apparel under the Roc96 brand are advertised using the "Roc" surname from the ROC Family of Marks, such as "Roc Boys," "ROC Family tree,"  "Roc plug," "Roc Navy snapback," and "Rocafella" as depicted in Ex. G and as follows:



232. In addition, individual SKUs of Roc96 Apparel are confusingly similar to goods previously and currently sold under the ROCAWEAR label. For instance, the following images display Roc96 Apparel bearing historical ROC Family of Marks images acquired and owned by Iconix:

**ROCAWEAR**                    **ROC96**







521949.00667/106552055v.1

233.  Roc 96 is confusingly similar to "Roc 99" products widely sold by Rocawear for over a decade and promoted by Jay-Z and bearing Jay-Z's image and name.  Similarly, "ROC Boys" to describe Roc96 shirts is identical to the same phrase used on ROCAWEAR goods.

234.  The name ROC-A-FELLA (also depicted as ROCAFELLA) itself is part of the ROC Family of Marks, owned and controlled by the Plaintiffs.  Indeed, ROCAWEAR was launched as the apparel line of Rock-a-Fella Records.  While ROCAFELLA was (and is) a mark used in a different class of goods and services in connection with the record label, which mark(s) is/are not owned nor controlled by Plaintiffs, the ROCAFELLA name was never used on Classes 25 and 35 goods, except in conjunction with Plaintiffs' ROCAWEAR brand and the ROC Family of Marks.

235.  Indeed, ROCAWEAR, not ROCAFELLA, functioned as the exclusive clothing and apparel division of Roc-A-Fella Records.  Any rights to the use of ROCAFELLA in clothing and apparel was sold to Plaintiffs in 2007 pursuant to the APA, along with the ROC Family of Marks.

236.  The promotion surrounding the launch of the Roc96 brand only exacerbates the inevitable consumer confusion as to the source of the Roc96 brand.  For example, Defendant Biggs offered a May 4, 2017 interview to Billboard Magazine identifying the "*aspiration feel that we brought to all the Roc brands and everything that was built over 20 years*," intentionally implying a relationship between Plaintiffs' ROC Family of Marks in Classes 25 and 35 (including the ROCAWEAR brand) and the infringing Roc96 Apparel.  Biggs explains in the interview that the intended aesthetic is "'Roc' n Roll," referencing the ROC Family of Marks and the ROC Class 25 mark, commenting that the Roc96 brand is ". . . *about recreating what we had before but learning from all of our failures and doing things right*."  Certain advertising materials for Roc96 utilize the phrase "PAST PRESENT FUTURE."

521949.00667/106552055v.1

237.  Similarly, in a 2016 press release about Roc96, Defendant Jones touted, "[t]hrough the synergy between our numerous brands, we are able to effectively market to consumers an entire lifestyle."   Jones's reference to "numerous brands" clearly refers to the ROCAWEAR, ROC NATION, and other apparel brands under the ROC Family of Marks, which Jones employed (and continues to employ) in connection with the newly-launched Roc96 brand as the latest in the "ROC" family of brands, therefore usurping the goodwill associated with ROC Family of Marks in Classes 25 and 35.

238.  By identifying "*we*" (i.e., Jay-Z and Biggs) as the source of the prior "ROC" brands, and marketing Roc96 as connected to the "ROC" brands of the past, COS, MadeWorn, Jones, Carter, and Burke are reinforcing the consumer perception that all of the "ROC" brands emanate from a unified source.

239.  Biggs was quoted in a May 4, 2017 Los Angeles Times article commenting that Roc96 was derived "*from studying Jay, the music, the lifestyle and the movement we created.*"  Biggs's reference to "*lifestyle*" and "*movement*" is a thinly-veiled reference to the "Roc" lifestyle brand captured by the ROC Family of Marks, and specifically ROCAWEAR clothing, a line formerly owned and controlled by Biggs himself, which was sold to Plaintiffs for Classes 25 and 35.

240.  Other marketing materials connected with Roc96 are misleading, such as the Barneys' website which boasts how "Jay Z and his partners Biggs and Emory Jones launched a lifestyle platform called Roc96 the same year that *Reasonable Doubt* came out."  No brand "Roc96" was ever used in connection with any Classes 25 or 35 goods prior to the launch of Roc96 last year. The only "lifestyle platform" connected with the "Roc Empire" and referenced repeatedly in Jay-Z's songs was exclusively ROCAWEAR and the related ROC Family of Marks in apparel.  The ROC Family of Marks was sold to Plaintiffs in 2007, along with all of the goodwill related thereto.

521949.00667/106552055v.1

**K.**     **Defendants' Conduct Threatens Plaintiffs and their Valuable Marks**

241.  Defendants' conduct, collectively and individually, as described herein has greatly injured Plaintiffs, and if not enjoined, will continue to greatly injure Plaintiffs and their intellectual property.

242.  Plaintiffs make no claim to classes of goods outside apparel in Class 35 and do not contest Class 35 use that is not apparel.

243.  Plaintiffs will suffer irreparable harm to their business reputations, the ROC Family of Marks, including the ROC NATION Mark, and the goodwill associated with such marks and Iconix's respective brands because they have no control over Defendants' products and no control over the presentation of the marks and products.

244.  Defendants are luring consumers to purchase their products through their use of marks that are identical and/or confusingly similar to Plaintiffs' ROC Family of Marks and the ROC NATION Mark, and which commingle marks controlled by Defendants with the ROC Family of Marks.

245.  Plaintiffs also will suffer irreparable harm because use of the ROC NATION, Roc96, and other marks bearing the ROC surname and/or marks confusingly similar thereto dilutes the distinctiveness of Plaintiffs' famous trademarks.

246.  Defendants' deceptive conduct is harming the public in addition to harming Plaintiffs and their brands.

247.  If Defendants do not cease infringing, using, displaying, and marketing the ROC NATION brand and mark in connection with the New Era Caps and ROC NATION Apparel, or the Roc96 Apparel and other ROC marks in the connection with Roc96 Apparel, Plaintiffs will lose custody and control over the quality and use of the mark, and the ROC Family of Marks to their detriment.  Plaintiffs will not be able to bridge the gap in terms of redirecting consumers and the

521949.00667/106552055v.1

trade's understanding that the infringing products and Plaintiffs' authorized products do not emanate from the same source.

248.   The effect of Defendants' conduct is to degrade and dilute the ROC Family of Marks, cause confusion among consumers, and to damage Plaintiffs' reputation for providing licenses and products free from infringement and association of other third-party goods, and to prevent customers and licensees from having access to genuine, authorized ROC NATION Apparel and other legitimate goods and products of Plaintiffs.

249.   Defendants' unauthorized actions have caused and are likely to further cause confusion, mistake, and deception of Plaintiffs' licensees and customers and potential customers into mistakenly believing that ROC NATION Apparel, New Era Caps, Paper Plane Caps, and Roc96 Apparel are genuine authorized goods bearing the ROC NATION Mark and other ROC Family of Marks.

250.   Defendants' conduct and activities mutilates and impairs the ROC Family of Marks and creates the misimpression that Plaintiffs and one or more of the Defendants are joint venturers or partners or that the infringing goods emanate from the same source as other genuine goods of the Plaintiffs.

251.   Defendants' actions are knowingly and willfully in violation of Plaintiffs' rights and constitute a deliberate intent to ride on the fame and goodwill of the ROC Family of Marks acquired by Iconix.

252.   Defendants' unauthorized acts described herein have caused and will continue to cause irreparable harm to Plaintiffs' business and goodwill and will harm and continue to harm the public unless permanently restrained by the Court.  With regard to the activities to which an injunction is sought, Plaintiffs have no adequate remedy at law.

521949.00667/106552055v.1

253.  Defendants' unauthorized acts described herein have caused and will continue to cause irreparable harm to the value and intrinsic worth to Plaintiffs of the ROC NATION mark and the ROC Family of Marks and their individual and collective goodwill, and will harm and continue to harm the public unless permanently restrained by the Court.  With regard to these activities to which an injunction is sought, Plaintiffs have no adequate remedy at law.

## FIRST CAUSE OF ACTION
### (Infringement of Registered Trademarks: ROC NATION Apparel Against RNAG, RAG, RNLLC, Paper Plane Holdings, Carter, and John Does Under Lanham Act § 32, 15 U.S.C. § 1114)

254.  Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the proceeding and subsequent paragraphs as if set forth in full.

255.  The ROC NATION Mark is registered in Class 25 (Reg. No. 5195896), for clothing (including shirts, t-shirts, tops, sweatpants, jackets, coats, pants, shorts, jerseys, socks and headwear), and  Class  35 (Reg. No. 5195897) for online retail store services featuring clothing headwear, and accessories, which marks are owned by Studio IP.

256.  The ROC NATION Mark has been registered since May 2, 2017, and is a valid and protective mark.

257.  RNAG, Paper Plane Holdings, RAG, Carter, RNLLC (and/or John Does 1-5) had actual knowledge of Studio IP's ownership of the ROC NATION Mark prior to the adoption of the identical mark on the ROC NATION Apparel.

258.  RNLLC was a party to the Consent Agreement and RNAG was a party to the License Agreement, both of which expressly identify and confirm Studio IP's rights in the ROC NATION Mark.  RAG, Paper Plane Holdings, and John Does have overlapping and common control with RNLLC and RNAG, and Carter controls directly or indirectly, whether actively exercised or not exercised, these entities and benefits personally from their business as described above.

521949.00667/106552055v.1

259.  Plaintiffs did not authorize RNAG, Paper Plane Holdings, RAG, RNLLC, Carter, or John Does to use the ROC NATION Mark before nor since it has been registered, including with respect to ROC NATION Apparel.

260.  Carter uses the ROC NATION mark and Roc Family of marks for business and enterprises beyond apparel, using the marks personally and selfishly for his concerts (and apparel and other sales connected therewith), public appearances, commercials, endorsements, advertisements, and to solicit customers and clients to his sports, publishing, music, and media businesses, among other personal uses.

261.  RNAG, Paper Plane Holdings, RAG, RNLLC, Carter, and/or John Does, individually and/or collectively, intentionally and knowingly, infringed on Studio IP's ROC NATION Mark by, among other acts since May 2, 2017: (i) offering for sale, selling, and/or advertising the unauthorized ROC NATION Apparel bearing the identical ROC NATION Mark, or a confusingly similar mark, physically and prominently on the goods through the Roc Nation Website, Paper Plane Website, and other online retailers; (ii) in connection with Carter's concerts, events, personal appearances, endorsements, and to solicit business to various personal and private ventures unrelated to RNAG, RNLLC, and RAG; (iii) offering for sale, selling, designing, manufacturing, and advertising the unauthorized ROC NATION Apparel bearing the ROC NATION Mark or a confusingly similar mark physically and prominently on the goods, in at least fifty-six (56) brick-and-mortar locations across at least twenty (20) states and through third-party online retail outlets, which sales also personally benefit Carter as herein described; (iv) displaying, showing, exhibiting, and presenting ROC NATION Apparel bearing the ROC NATION Mark owned by Studio IP; (v) using the ROC NATION Mark in connection with advertising and promotional materials of the ROC NATION Apparel and at Jay-Z's concerts and appearances, and using the mark to establish

521949.00667/106552055v.1

promotional and marketing channels that associate the mark with RNAG, Paper Plane Holdings, RAG, Carter, RNLLC and/or John Does; (vi) maintaining and operating or personally benefitting from the operation of the Roc Nation Website, Paper Plane Website, and other official social media accounts, bearing the ROC NATION Mark, or a confusingly similar mark, in the Roc Nation Website URL (and other referral URLs or links) and prominently displayed on the homepage and throughout the website on the Roc Nation Website and Paper Plane Website and social media accounts; and/or (vii) inserting and arranging the ROC NATION Mark along with the Paper Plane Mark and/or one or more corporate and/or trade names of RNAG, Paper Plane Holdings, RAG, RNLLC, Carter, or John Does in a bold, large, heightened, and aggressive manner such that the name and logo are together and synonymous with the ROC NATION Mark owned by Studio IP.

262. Based on the foregoing infringing activities, RNAG, Carter, Paper Plane Holdings, RAG, RNLLC and/or John Does are thereby using a copy, counterfeit, reproduction, or colorable imitation of the ROC NATION Mark, or confusingly similar mark, in Classes 25 and 35 in a manner which is likely to confuse, deceive, and/or cause mistake among consumers (and has caused such confusion, mistake, and/or deceit) as to the source, nature and/or quality of the products bearing the ROC NATION Mark in Classes 25 and 35, the source of the Paper Plane Logo, the source of ROC NATION Apparel, the relationship between the ROC NATION Mark and Jay-Z, and the relationship between Plaintiffs and ROC NATION, Paper Plane Holdings, RNAG, RAG, RNLLC, Carter, and/or John Does or among themselves.

263. RNAG's status as holdover licensee compounds the likelihood of such confusion. Indeed, the ROC NATION Apparel is similar (if not identical) to the goods sold, and uses similar (or identical) depictions of ROC NATION, marketed and sold through similar (if not identical)

521949.00667/106552055v.1

distribution channels to the same consumer market as the sale, advertising, and promotion of the goods by RNAG prior to expiration of the License Agreement.

264.  The common and/or overlapping ownership between the RNAG, RAG, RNLLC and the ownership, use, and marketing of ROC NATION in other classes (such as music, entertainment, and sports) also increases the likelihood of confusion as to the source, origin, or quality of the ROC NATION goods in Classes 25 and 35.

265.  Plaintiffs have no adequate remedy at law for such infringement of the ROC NATION Mark in Classes 25 and 35 in that the: (i)  ROC NATION Mark, and the goodwill associated therewith, is unique and valuable property, injury to which cannot adequately be compensated by monetary damages; (ii) damages to Plaintiffs resulting from the infringement are not precisely and fully ascertainable; (iii) infringement injures and threatens to continue to injure Plaintiffs' business reputations, and goodwill and the reputation, standing, and goodwill associated with the ROC NATION Mark in Classes 25 and 35 as controlled by Iconix and Studio IP, as well as the goodwill and standing of other Iconix brands; (iv) damage resulting to Plaintiffs from such wrongful conduct, and the conduct itself, is continuing, and Plaintiffs would be required to bring a multiplicity of lawsuits to achieve full redress for the injuries caused thereby; (v) Plaintiffs have no quality or other control over the ROC NATION Mark as it is being used by Defendants; and (vi) conduct effectively usurps and converts distribution channels and market share from Studio IP, the owner of the ROC NATION Mark, which is harm that cannot be easily ascertained, and is continuing.

266.  Unless restrained, such infringement of the ROC NATION Mark in Classes 25 and 35 will continue to cause irreparable injury to Plaintiffs, both during the pendency of this action and thereafter, by damaging Plaintiffs' rights in the ROC NATION Mark including Studio IP's ability to engage in quality control over the mark's use and presentation.

521949.00667/106552055v.1

267. Plaintiffs are therefore entitled to an order from this Court permanently enjoining RNAG, RAG, RNLLC, Carter, and/or John Does and their agents, employees, and others acting in concert with them from directly or indirectly infringing the ROC NATION Mark in any manner, or causing or acting in concert with others to do the same, including by using any name, mark, design, or logo that is confusingly similar to the ROC NATION Mark in Classes 25, and 35 in connection with the (i) ROC NATION Apparel; (ii) sale, offer for sale, advertising, manufacturing, distribution, or promotion of any goods or services bearing such mark in Classes 25, and 35; and (iii) concerts, public appearances, endorsements, and events by and including Carter (Jay-Z) which depict ROC NATION, Paper Plane, ROC, or the ROC Family of Marks publicly, in or on apparel, or in connection with other merchandise.

268. Plaintiffs are entitled to an order from this Court directing RNAG and/or RAG and/or their affiliates and subsidiaries to cease use of the Paper Plane Website, Roc Nation Website, and social media accounts and Paper Plane Mark or transfer ownership and/or control of the same, including the respective URLs, to Studio IP.

269. As a direct and proximate result of these counterfeiting activities, and pursuant to Lanham Act § 32, 15 U.S.C. § 1114, Plaintiffs have been damaged and are entitled to compensatory damages, disgorgements of profits by RNAG, RNLLC, RAG, Carter, and/or John Does gained as a result of these counterfeiting activities, and the costs of this action and attorneys' fees as provided under 15 U.S.C. § 1117(a).

270. Plaintiffs are entitled to statutory damages under 15 U.S.C. § 1117(c) in an amount the Court considers just and appropriate given the facts and circumstances of Defendants' misuse of the ROC NATION Mark.

521949.00667/106552055v.1

271.  RNAG, RNLLC, RAG, Carter, and John Does have acted willfully, which entitles Studio IP to treble damages pursuant to 15 U.S.C. § 1117(b).

272.  Plaintiffs are entitled to remedies under 15 U.S.C. § 1118 including an order directing the seizure and destruction of the offending goods, packaging, advertising, and promotional materials.

<u>**SECOND CAUSE OF ACTION**</u>
**(Infringement of Registered Trademark Against RNAG, Paper Plane Holdings, Carter, RAG, RNLLC, New Era, Lids, MLB, and SF Giants:  New Era Caps, and Paper Plane Caps Lanham Act § 32, 15 U.S.C. § 1114)**

273.  Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the proceeding and subsequent paragraphs as if set forth in full.

274.  The ROC NATION Mark is comprised of registered marks in Class 25 (Reg. No. 5195896) for clothing (including shirts, t-shirts, tops, sweatpants, jackets, coats, pants, shorts, sweatpants, jerseys, socks and headwear), and Class 35 (Reg. No. 5195897) for online retail store services featuring clothing, headwear, and accessories, which marks are owned by Studio IP. Plaintiffs do not contest in this action Class 35 use by the Roc Defendants except as pertains to clothing and apparel and the Class 25 uses.

275.  The ROC NATION Mark has been registered since May 2, 2017, and is a valid and protective mark.

276.  RNAG, RNLLC, RAG, Carter, SF Giants, MLB, New Era, and Lids had actual knowledge of Studio IP's ownership of the ROC NATION Mark prior to the adoption of the identical mark on the New Era Caps after May 2, 2017.

277.  RNAG, RNLLC, Paper Plane Holdings, Carter, RAG, and New Era had actual knowledge of Studio IP's ownership of the ROC NATION Mark prior to the adoption of the identical mark on the Paper Plane Caps after May 2, 2017.

278.  RNLLC was a party to the Consent Agreement and RNAG was a party to the License Agreement, both of which contracts expressly identify and confirm Studio IP's rights in the ROC NATION Mark.

279. RAG, Paper Planes, and John Does have overlapping and common control with RNLLC and RNAG, and Carter controls and exercises control of these entities directly or indirectly as set forth in this pleading, and approved the use by the entities of the ROC NATION Mark and the commerce offending the ROC Family of Marks for Carter's personal gain and for the gain of the entities using Plaintiffs' marks in apparel, which inures to Carter's personal and professional benefit.

280.  RNAG, Paper Plane Holdings, Carter, RNLLC, RAG, SF Giants, MLB, New Era, and Lids knew at least by May 2, 2017 that Studio IP owned and controlled the ROC NATION Mark in Classes 25 and 35, but continued to market, advertise, manufacture, distribute, and sell goods (including the New Era Caps and Paper Plane Caps) adopting the ROC NATION Mark after May 2, 2017.

281.  Studio IP was not consulted, was not made aware, and did not consent to the use of the ROC NATION Mark on the New Era Caps or Paper Plane Caps or use of the ROC NATION Mark in connection with any other mark including the Paper Plane Logo, the New Era logo or name, the MLB trademarks, or the trademarks of any Major League Baseball team.

282.  Plaintiffs have not been contacted about, nor have Plaintiffs approved Carter's use of the ROC NATION Mark personally as part of his concerts, music, and sales of goods, or as part of other businesses Carter has used the ROC NATION mark to advance.

283.  Studio IP did not authorize any of the Defendants to use the ROC NATION Mark at any time since it has been registered, including with respect to the New Era Caps.

521949.00667/106552055v.1

284.  Since May 2, 2017, RNAG, RNLLC, RAG, Carter, SF Giants, MLB, New Era, and Lids have individually and/or collectively engaged in knowing and intentional, direct or contributory infringement by manufacturing or causing or approving the manufacture, selling, offering for sale, advertising, promoting, retailing, and distributing, and/or offering to do any of the same, with respect to the New Era Caps bearing the registered ROC NATION Mark as set forth above, including infringement during the period the ROC NATION Mark was filed but not registered as set for in the Complaint, Dkt. 1.

285.  Since May 2, 2017, RNAG, Paper Plane Holdings, RNLLC, Carter, RAG and New Era have individually and/or collectively engaged in knowing and intentional, direct or contributory infringement by manufacturing or causing or approving the manufacture, selling, offering for sale, advertising, promoting, retailing, and distributing, and/or offering to do any of the same, with respect to the Paper Plane Caps bearing the registered ROC NATION Mark as set forth above, including infringement during the period the ROC NATION Mark was filed but not registered as set for in the Complaint, Dkt. 1.

286.  Through the aforementioned infringement, RNAG, RNLLC, RAG, SF Giants, Carter, MLB, New Era, and Lids are using a copy, counterfeit, reproduction, or colorable imitation of the ROC NATION Mark in Class 25 or authorizing others to do the same, in a manner which is likely to confuse, deceive, and/or cause mistake among consumers (and has caused such confusion, mistake, and/or deceit) as to the source of the ROC NATION Mark in Class 25, as to the source of the New Era Caps and/or Paper Plane Caps, respectively, and as to the relationship between ROC NATION and New Era, MLB, and various Major League baseball teams whose marks are comingled with the ROC NATION Mark on the New Era Caps and Paper Plane Caps.  Such conduct violates Lanham Act § 32, 15 U.S.C. § 1114.

521949.00667/106552055v.1

287.  RNLLC, Paper Plane Holdings, Carter, RAG, and/or RNAG's (and/or John Does') egregious and intentional use of Plaintiffs' ROC NATION Mark to build and gain prestige for their own name and brand, and the licensing of the marks and sale of goods bearing ROC NATION in Class 25, has caused confusion and is likely to continue to cause confusion, or to cause mistake, or to deceive, mislead, betray, and defraud consumers and sellers, who believe that the goods they are licensing, manufacturing, or selling pursuant to a license or agreement, and to which consumers believe what they are purchasing, are authentic ROC NATION goods.

288.  New Era has engaged in contributory infringement by continuing to manufacture and supply New Era Caps and Paper Plane Caps bearing infringing ROC NATION Mark to Lids, RNAG and/or Paper Plane Holdings, and with knowledge that the New Era Caps and Paper Plane Caps were mislabeled (or would be mislabeled or improperly marketed) with the ROC NATION Mark.

289.  MLB and SF Giants approved, authorized, or consented to their logo and trademark being used on the 'SF Giants' New Era Caps, and are infringing or contributorily infringing the ROC NATION Mark.  SF Giants receive or will receive payments and royalties from MLB for the New Era Caps, which MLB in turn receives from New Era.

290.  RNAG's status as holdover licensee compounds the likelihood of such confusion.  Indeed, use of the ROC NATION Mark on the New Era Caps are identical or very similar to depictions of the ROC NATION Mark during the term of the license, used in connection with similar goods, marketed and sold through similar (if not identical) distribution channels to the same consumer market as the sale, advertising, and promotion of the goods by RNAG prior to expiration of the License Agreement.

521949.00667/106552055v.1

291.  Plaintiffs have no adequate remedy at law for such infringement of the ROC NATION Mark in Classes 25 and 35 in that the: (i)  ROC NATION Mark, and the goodwill associated therewith, is unique and valuable property, injury which cannot adequately be compensated by monetary damages; (ii) damages to Plaintiffs resulting from the infringement are not precisely and fully ascertainable; (iii) infringement injures and threatens to continue to injure Plaintiffs' business reputations and goodwill and the reputation, standing, and goodwill associated with the ROC NATION Mark in Classes 25 and 35 as controlled by Iconix and Studio IP, as well as the goodwill and standing of the other Iconix brands; (iv) damage resulting to Plaintiffs from such wrongful conduct, and the conduct itself, is continuing, and Plaintiffs would be required to bring a multiplicity of lawsuits to achieve full redress for the injuries caused thereby; (v) Plaintiffs have no quality or other control over the ROC NATION Mark as it is being used by Defendants; and (vi) such activities effectively convert and usurp distribution channels and market share from Studio IP, the owner of the ROC NATION Mark, which is harm that cannot be easily ascertained, and is continuing.

292.  Unless restrained, such infringement of the ROC NATION Mark in Classes 25 and 35 will continue to cause irreparable injury to Plaintiffs, both during the pendency of this action and thereafter, by damaging Plaintiffs' rights in the ROC NATION Mark including Studio IP's ability to engage in quality control over the use of such marks.

293.  Plaintiffs are therefore entitled to an order from this Court permanently enjoining RNAG, RAG, Carter, RNLLC, SF Giants, MLB, New Era, Lids, and/or John Does and their agents, employees, and others acting in concert with them from directly or indirectly infringing the mark in any manner, or causing or acting in concert with others to do the same, including by using any name, mark, design, or logo (including the Paper Plane Logo) that is confusingly similar to the

521949.00667/106552055v.1

ROC NATION Mark in Classes 25 and 35, or associated with such marks in connection with the New Era Caps or in connection with the sale, offer for sale, advertising, manufacturing, distribution, or promotion of any goods or services bearing such mark in Classes 25 and 35, and directing Defendants to take steps to remove any products that so infringe Plaintiffs' ROC NATION Mark to be removed from the marketplace.

294.   As a direct and proximate result of these counterfeiting activities, Plaintiffs have been damaged and are entitled to compensatory damages, disgorgements of profits by RNAG, Paper Plane Holdings, RNLLC, RAG, SF Giants, Carter, MLB, New Era, and Lids gained as a result of these counterfeiting and Lanham Act-violating activities, and the costs of this action and attorneys' fees, including as provided under 15 U.S.C. § 1117(a).

295.   Plaintiffs are entitled to statutory damages under 15 U.S.C. § 1117(c) in an amount, given the facts and circumstances of this lawsuit, the Court deems just and proper.

296.   RNAG, Paper Plane Holdings, RNLLC, RAG and John Does have acted willfully, which entitles Studio IP to treble damages pursuant to 15 U.S.C. § 1117(b).

297.   Plaintiffs are entitled to remedies under 15 U.S.C. § 1118 to an order directing the seizure and destruction of the offending goods, packaging, advertising and promotional materials.

### THIRD CAUSE OF ACTION
**(Common Law Trademark Infringement Against RNAG, Carter,
Paper Plane Holdings, RAG, RNLLC, and/or John Does: ROC NATION Apparel)**

298.   Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the proceeding and subsequent paragraphs as if set forth in full.

299.   Iconix, through Studio IP and/or Studio DE and their respective licensee(s), have continuously used the ROC NATION Mark in Classes 25 and 35 in interstate commerce since at least July 1, 2013.

300.  The ROC Family of Marks have been used in commerce since 1999.  Iconix, through Studio IP and/or Studio DE and their respective licensee(s), have continuously used the ROC Family of Marks since the acquisition of such marks on March 6, 2007.

301.  Plaintiffs, as the direct owners (Iconix through its wholly-owned subsidiary, Studio IP) of all right, title, and interest in and to the ROC NATION Mark and the ROC Family of Marks in Classes 25 and 35, have strong and legally protectable marks, and have standing to maintain an action for trademark infringement, at common law, including for the periods of time both before and after registration of any marks.

302.  RNAG, Paper Plane Holdings, Carter, RNLLC, RAG, SF Giants, MLB, New Era, Lids, and John Does had actual knowledge of Studio IP's ownership of the ROC NATION Mark prior to the adoption of the identical mark on the New Era Caps and offending ROC NATION Apparel.  RNLLC was a party to the Consent Agreement and RNAG was a party to the License Agreement, both of which expressly identify and confirm Studio IP's rights in the ROC NATION Mark.  Paper Plane Holdings, RAG, and John Does have overlapping and common control with RNLLC and RNAG.

303.  RNAG, Paper Plane Holdings, RNLLC, RAG, SF Giants, MLB, Carter, New Era and John Does knew that Studio IP owned and controlled the ROC NATION Mark in Classes 25 and 35, and despite such knowledge marketed, advertised, manufactured, distributed, and sold goods adopting the ROC NATION Mark, and continue to engage in such commercial activities to the harm and exclusion of Plaintiffs.  Carter approved and authorized these commercial activities by all of these Defendants.

304.  Studio IP did not authorize any of the Defendants to use the ROC NATION Mark at any time since it has been registered, including with respect to the New Era Caps.

521949.00667/106552055v.1

305.  Studio IP was not consulted, was not made aware, and did not consent to the use of the ROC NATION Mark on the New Era Caps or use of the ROC NATION Mark in connection with any other mark including the Paper Plane Logo, the MLB trademarks, or the trademarks of any Major League Baseball team.

306.  RNAG, Paper Plane Holdings, RNLLC, RAG, SF Giants, Carter, MLB, New Era, Lids, and John Does have individually and/or collectively engaged in knowing and intentional, direct or contributory infringement by manufacturing, selling, offering, advertising, promoting, retailing, distributing, and/or offering to do any of the same, with respect to the New Era Caps bearing the ROC NATION Mark as set forth above.

307.  RNAG, Paper Plane Holdings, Carter, RNLLC, and RAG and John Does failed to obtain the consent and authorization of Studio IP as the owner of ROC NATION in Classes 25 and 35 for their manufacture, sale, distribution, and promotion of ROC NATION Apparel bearing the ROC NATION Mark beyond the expiration and/or scope of the License Agreement.

308.  RNAG, Paper Plane Holdings, Carter, RNLLC, and RAG and John Does, individually and/or collectively, intentionally and knowingly infringed on Studio IP's ROC NATION Mark and the ROC Family of Marks by, or, with regard to Carter, directed, approved, and/or authorized such activities, among other acts: (i) offering for sale, selling, and/or advertising the unauthorized ROC NATION Apparel bearing the ROC NATION Mark, or a confusingly similar mark, physically and prominently on the goods beyond the expiration and scope of the License Agreement term through the Roc Nation Website, Paper Plane Website, official social media outlets, and other online retailers, direct to consumers, and through at least fifty-six (56) brick-and-mortar retail outlets, and through Carter's concerts, events, appearances, and apparel goods sold at such events or goods sold as a result of such Carter events and appearances; (ii) displaying, showing, exhibiting, and

521949.00667/106552055v.1

presenting ROC NATION Apparel bearing the ROC NATION Mark owned by Studio IP beyond the scope and/or expiration of the term of the License Agreement; (iii) using the ROC NATION Mark in connection with advertising and promotional materials of ROC NATION Apparel beyond the scope and term of the License Agreement; (iv) maintaining and operating the Roc Nation Website and social media accounts bearing the ROC NATION Mark, or a confusingly similar mark, in the Roc Nation Website URL (referral URLs or links) and prominently displayed on the homepage and throughout the website beyond the scope and expiration of the term of the License Agreement; (v) displaying the ROC NATION Mark in a manner not authorized nor approved by Studio IP, including, without limitation, in conjunction with the Paper Plane Mark and the New Era logo in a bold, large, heightened, and aggressive manner, without authorization from Studio IP, such that the name and logo are together and synonymous with the ROC NATION Mark owned by Studio IP; and/or (vi) and offering for sale, marketing, advertising and distributing ROC NATION Apparel outside the scope of the License Agreement "Territory," outside of authorized channels of distribution, and in connection with other products or merchandise.

309. Based on these infringing activities, RNAG, Paper Plane Holdings, Carter, RNLLC, and RAG and/or John Does are thereby using a copy, counterfeit, reproduction, or colorable imitation of the ROC NATION Mark, and/or confusingly similar marks to the ROC Family of Marks, including in Classes 25 and 35 in a manner which is likely to confuse, deceive, and/or cause mistake among consumers (and fans, consumers, customers, and patrons of Carter's boxing, music, sports, representation, and other businesses), and has caused such confusion, mistake, and/or deceit as to the source of the ROC NATION Mark including in Classes 25 and 35, and as to the source of the ROC NATION Apparel, and as to the relationship between Plaintiffs and ROC NATION and

521949.00667/106552055v.1

RNAG, Paper Plane Holdings, RAG, Carter, RNLLC and/or John Does or among themselves, including their businesses and including Carter, personally.

310. RNAG's status as holdover licensee compounds the likelihood of such confusion. Indeed, ROC NATION Apparel is similar (if not identical) to the goods sold, and uses similar (or identical) depictions of the ROC NATION Mark, marketed and sold through similar (if not identical) distribution channels to the same consumer market as the sale, advertising, and promotion of the goods by RNAG prior to expiration of the License Agreement.

311. The common and/or overlapping ownership between the RNAG, Paper Plane Holdings, RAG, RNLLC and the ownership, use, and marketing of ROC NATION in other classes (such as music, entertainment, and sports), and including Carter's actual or perceived control over these entities and genres which commingle ROC NATION, the ROC NATION Mark, and the ROC Family of Marks as part of their businesses, increases the likelihood of confusion as to the source, origin, or quality of the ROC NATION goods including in Classes 25 and 35.

312. Any sale or promotion of goods bearing the ROC NATION Mark, including the ROC NATION Apparel at any time by Paper Plane Holdings, constitutes infringement as Paper Plane Holdings was never authorized to use or exploit such marks.

313. Any sale, promotion, or other use of the ROC NATION Mark by RNAG after July 1, 2016 in Classes 25 or 35 in violation of the License Agreement constitutes unauthorized use, and thus infringement.

314. Even before July 1, 2016, the sale of ROC NATION Apparel infringed on Studio IP's ROC NATION Marks as RNAG sold, offered for sale, designed, manufactured, and/or promoted and advertised ROC NATION Apparel that was not approved by Studio IP, or sold same through

521949.00667/106552055v.1

channels that were not approved by Studio IP, as required by the License Agreement.  Such extra-contractual use constitutes infringement by RNAG.

315.  No Defendant is an authorized licensee of the ROC NATION Mark in Classes 25 and 35, and any attempted assignment by RNAG of the ROC NATION Mark in Classes 25 and 35 prior to July 1, 2016 would have been void *ab initio* under License Agreement Art. 26.

316.  Plaintiffs have no adequate remedy at law for such infringement of the ROC NATION Mark in Class 25 in that the: (i) ROC NATION Mark, and the goodwill associated therewith, is unique and valuable property, injury to which cannot adequately be compensated by monetary damages; (ii) damages to Plaintiffs resulting from the infringement are not precisely and fully ascertainable; (iii) infringement injures and threatens to continue to injure Plaintiffs' business reputations and goodwill and the reputation, standing, and goodwill associated with the ROC NATION Mark in Class 25 as controlled by Iconix and Studio IP, as well as the goodwill and standing of the other Iconix brands; (iv) damage resulting to Plaintiffs from such wrongful conduct, and the conduct itself, is continuing, and Plaintiffs would be required to bring a multiplicity of suits to achieve full redress for the injuries caused thereby; (v) Plaintiffs have no quality or other control over the ROC NATION Mark as it is being used by Defendants as described herein; and (vi) conduct effectively usurps and converts distribution channels and market share from Studio IP, the owner of the ROC NATION Class 25 mark, which is harm that cannot be easily ascertained, and is continuing.

317.  Unless restrained, such infringement of the ROC NATION Mark in Classes 25 and 35 will continue to cause irreparable injury to Plaintiffs, both during the pendency of this action and thereafter, by damaging Plaintiffs' rights in the ROC NATION Mark including Studio IP's ability to engage in quality control over the use of such marks.

521949.00667/106552055v.1

318.  Plaintiffs are therefore entitled to an order from this Court permanently enjoining RNAG, Paper Plane Holdings, Carter, RAG, RNLLC, and/or John Does and their agents, employees, and others acting in concert with them from directly or indirectly infringing the mark in any manner, or causing or acting in concert with others to do the same, including by using any name, mark, design, or logo (including the Paper Plane Logo) that is confusingly similar to the ROC NATION Mark in Classes 25 and 35 in connection with the ROC NATION Apparel and in connection with the sale, offer for sale, advertising, manufacturing, distribution, or promotion of any goods or services bearing such mark in Class 25; and directing RNAG and/or RAG and/or their affiliates and subsidiaries to cease use of the Paper Plane Website, Roc Nation Website, official social media accounts, and Paper Plane Mark or transfer ownership and/or control of the same, including the respective URLs, to Studio IP.

319.  Plaintiffs are further entitled to recover damages sustained in consequence of RNAG, Paper Plane Holdings, Carter, RAG, RNLLC, and/or John Does' wrongful conduct, in an amount to be determined at trial; to recover RNAG, Paper Plane Holdings, Carter (individually, monies received by Carter), RAG, RNLLC, and/or John Does' profits ; and to recover Plaintiffs' attorneys' fees and other costs herein.

320.  Based upon the circumstances of the Defendants' actions, including the willful nature of RNLLC, Paper Plane Holdings, Carter, RNAG, RAG, and John Does' conduct, Plaintiffs are further entitled to recover actual and consequential damages, including attorneys' fees and costs.

321.  As a direct and proximate result of these infringing activities Studio IP and Iconix have been damaged and are entitled to compensatory damages, disgorgements of profits by RNAG, RNLLC, Paper Plane Holdings, RAG and/or John Does and against Carter personally for monies received as a result of such conduct as described herein, including the proceeds Carter personally

521949.00667/106552055v.1

received from such misuse of the ROC NATION Mark and ROC Family of Marks) gained as a result of these infringing activities in an amount of not less than $40 million, and the costs of this action and attorneys' fees.

322.  Plaintiffs are entitled to an order directing the seizure and destruction of the offending goods, packaging, advertising and promotional materials.

## FOURTH CAUSE OF ACTION
**(Common Law Trademark Infringement Against RNAG, Carter, Paper Plane Holdings, RAG, RNLLC, New Era, Lids, MLB, and SF Giants: New Era Caps and Paper Plane Caps)**

323.  Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the proceeding and subsequent paragraphs as if set forth in full.

324.  Iconix, through Studio IP and/or Studio DE and their respective licensee(s), have continuously used the ROC NATION Mark in Classes 25 and 35 in interstate commerce since at least July 1, 2013.

325.  The ROC Family of Marks have been used in commerce since 1999.  Iconix, through Studio IP and/or Studio DE and their respective licensee(s), have continuously used the ROC Family of Marks since the acquisition of such marks on March 6, 2007.

326.  Plaintiffs, as the direct owners (Iconix through its wholly-owned subsidiary Studio IP) of all right, title, and interest in and to the ROC NATION Mark and the ROC Family of Marks in Classes 25 and 35, have a strong and legally protectable mark, and have standing to maintain an action for trademark infringement at common law, including for the periods of time both before and after registration of any 'ROC' marks.

327.  RNLLC, Paper Plane Holdings, RAG, Carter, RNAG (as Studio IP's licensee), and any other John Doe entity owned or controlled by RNLLC, RAG, RNAG, and/or Carter and/or companies controlled by them, at all times relevant, were aware that Iconix and/or Studio IP owned

521949.00667/106552055v.1

ROC NATION in Class 25 (and other Classes) at the time of the unauthorized use, display, and adoption of the ROC NATION Mark.

328.  New Era, as early as at least July 2015, was aware and knew that ROC NATION was controlled and owned, at least in Class 25, for international use by Iconix and Studio IP, as in 2015 New Era and Iconix negotiated a proposed license agreement for hats bearing the ROC NATION Mark for a proposed sale in Canada, Europe, Asia, Africa, Latin America, and other places, after Carter and his associates facilitated an introduction between them.

329.  New Era knew, understood, and accepted, at least as of July 2015, that Studio IP (through its negotiations with Iconix) owned and controlled ROC NATION for at least hats and other Class 25 products, and that Studio IP licensed ROC NATION to RNLLC for the United States.

330.  Studio IP was not consulted, was not made aware, and did not consent to the use of the ROC NATION Mark on the New Era Caps or Paper Plane Caps or use of the ROC NATION Mark in connection with any other mark including the Paper Plane Mark, the New Era logo, the MLB trademarks, or the trademarks of any Major League Baseball team.

331.  During the term of the License Agreement, the sale of the New Era Caps infringed on Studio IP's ROC NATION Mark as RNAG sold, offered for sale, designed, manufactured, and/or promoted the New Era Caps that were not approved by Studio IP, or sold through channels that were not approved by Studio IP, as required by the License Agreement.  Such extra-contractual use constitutes infringement by RNAG.

332.  None of the remaining Defendants, including Paper Plane Holdings, were ever authorized licensees of the ROC NATION Mark in Classes 25 and 35, and any attempted assignment by RNAG to license the ROC NATION Mark in Classes 25 and 35 prior to July 1, 2016 would have been void *ab initio* under License Agreement Art. 26.

521949.00667/106552055v.1

333.  Any sale by RNAG of the New Era Caps after the expiration of the License Agreement (and any sale by RNAG or Paper Plane Holdings of the Paper Plane Caps at any time) would similarly infringe on the ROC NATION Mark and ROC Family of Marks.

334.  RNAG, Paper Plane Holdings RNLLC, RAG, SF Giants, MLB, New Era, and/or John Does have, individually and/or collectively, engaged in knowing and intentional, direct or contributory infringement by manufacturing, offering for sale, advertising, promoting, retailing, selling, distributing, and/or offering to do any of the same, the New Era Caps and/or Paper Plane Caps bearing the ROC NATION Mark.

335. Carter has individually engaged in knowing and intentional, direct or contributory infringement by directing or authorizing the manufacturing, offering for sale, advertising, promoting, retailing, selling, distributing, and/or offering to do any of the same, the New Era Caps and/or Paper Plane Caps bearing the ROC NATION Mark.

336.  RNAG, Paper Plane Holdings, RNLLC, Carter, RAG, SF Giants, MLB, New Era, and/or John Does acts, including conveying, licensing, or authorizing the ROC NATION Mark to New Era and/or MLB for the New Era Caps, have been committed with knowledge of Plaintiffs' exclusive rights and goodwill in the ROC NATION Mark including in Classes 25 and 35, as well as with bad faith and the intent to cause confusion or to cause mistake and to deceive consumers and the trade as to the source of New Era Caps.

337.  RNAG, Paper Plane Holdings, RNLLC, RAG, Carter, New Era, and/or John Does' acts, including conveying, licensing, or authorizing the ROC NATION Mark to New Era for the Paper Plane Caps, have been committed with knowledge of Plaintiffs' exclusive rights and goodwill in the ROC NATION Mark including in Classes 25 and 35, as well as with bad faith and the intent

521949.00667/106552055v.1

to cause confusion or to cause mistake and to deceive consumers and the trade as to the source of the Paper Plane Caps.

338.  New Era, Paper Plane Holdings, RNLLC, Carter, RAG, RNAG, MLB and/or John Does willfully infringed or caused the infringement of the ROC NATION Mark because they knew of Studio IP's ownership of the ROC NATION Mark (either through direct dealings with Studio IP or dealings with Iconix).

339.  Through the aforementioned infringement, RNAG, RNLLC, RAG, SF Giants, MLB, New Era, and/or John Does are using a copy, counterfeit, reproduction, or colorable imitation of the ROC NATION Mark including in Classes 25 and 35 in a manner which is likely to confuse, deceive, and/or cause mistake among consumers (and has caused such confusion, mistake, and/or deceit) as to the source of the ROC NATION Mark including in Classes 25 and 35, as to the source of the New Era Caps, and as to the relationship between ROC NATION, New Era, and/or MLB, and various Major League Baseball teams whose marks are comingled with the ROC NATION Mark on the New Era Caps.

340.  Through the infringement detailed in this pleading and infringement and activities of Defendants not yet known to Plaintiffs, RNAG, Paper Plane Holdings, RNLLC, RAG, New Era, and/or John Does are using a copy, counterfeit, reproduction, or colorable imitation of the ROC NATION Mark including in Classes 25 and 35 in a manner that is likely to confuse, deceive, and/or cause mistake among consumers (and has caused such confusion, mistake, and/or deceit) as to the source of the ROC NATION Mark including in Classes 25 and 35, as to the source of the Paper Plane Caps and other products identified herein, and as to the relationship between ROC NATION, New Era, Paper Plane Holdings, Carter, RNAG, RAG, and RNLLC, whose marks are comingled with the ROC NATION Mark on the Paper Plane Caps.

341.  RNLLC, Paper Plane Holdings, RAG, and/or RNAG's (or John Does') egregious and intentional use of Plaintiffs' ROC NATION Mark to build and gain prestige for their own name and brand, and the licensing of such marks and sale of goods bearing the ROC NATION Mark including in Classes 25 and 35, has caused confusion and is likely to continue to cause further confusion, or to cause mistake, or to deceive, mislead, betray, and defraud consumers, licensees and others who believe that the goods they are purchasing, distributing, selling, or causing to be manufactured, are authentic and properly bear the ROC NATION Mark or are authorized by Plaintiffs or are approved by Plaintiffs.

342.  Carter authorizing, approving, and/or directing the egregious and intentional use of Plaintiffs' ROC NATION Mark to build and gain prestige for RNAG, RNLLC, RAG, or Paper Plane Holdings' name and brand, and Carter's use of ROC NATION in Class 25 and Class 35 to build, market, promote, and generate business for his other businesses has caused confusion and is likely to continue to cause further confusion, or to cause mistake, or to deceive, mislead, betray, and defraud consumers, customers to those businesses, licensees and others who believe that the goods or services they are purchasing, distributing, selling, or causing to be manufactured, are authentic and properly bear the ROC NATION Mark or are authorized by Plaintiffs or are approved by Plaintiffs.

343.  New Era has engaged in contributory infringement by manufacturing and distributing the New Era Caps and Paper Plane Caps to RNAG, RNLLC, and/or RAG (or John Does) with actual or constructive knowledge that same would be mislabeled with the ROC NATION Mark.

344.  New Era, MLB and SF Giants approved, authorized, or consented to their logo and trademark being used on the SF Giants New Era Caps, and are infringing ROC NATION Mark and

521949.00667/106552055v.1

the ROC Family of Marks by inducing third-parties to infringe on the ROC NATION Mark with knowledge of Plaintiffs' ownership of such marks after May 2, 2017.

345.   SF Giants receive or will receive payments and royalties from MLB for the New Era Caps.

346.   As a result of these infringing acts, Plaintiffs have no adequate remedy at law for such infringement of the ROC NATION Mark including in Classes 25 and 35 in that the: (i) ROC NATION Mark, and the goodwill associated therewith, is unique and valuable property, injury to which cannot adequately be compensated by monetary damages; (ii) damages to Plaintiffs resulting from the infringement are not precisely and fully ascertainable; (iii) infringement injures and threatens to continue to injure Plaintiffs' business reputations and goodwill and the reputation, standing, and goodwill associated with the ROC NATION Mark including in Classes 25 and 35 as controlled by Studio IP, as well as the goodwill and standing of the other Iconix brands; (iv) damage resulting to Plaintiffs from such wrongful conduct, and the conduct itself, is continuing, and Plaintiffs would be required to bring a multiplicity of suits to achieve full redress for the injuries caused thereby; (v) Plaintiffs have no quality or other control over the ROC NATION Mark as it is being used by Defendants; and (vi) conduct effectively usurps and converts distribution channels and market share from Studio IP, the owner of the ROC NATION Mark in Classes 25 and 35, which is harm that cannot be easily ascertained.

347.   Unless restrained, such infringement of the ROC NATION Mark including in Classes 25 and 35 will continue to cause irreparable injury to Plaintiffs, both during the pendency of this action and thereafter, by damaging Plaintiffs' rights in the ROC NATION Mark including Studio IP's ability to engage in quality control over use of such marks.

521949.00667/106552055v.1

348.  Plaintiffs are therefore entitled to an order from this Court permanently enjoining RNAG, Paper Plane Holdings, RNLLC, Carter, RAG, SF Giants, MLB, New Era, Lids, and John Does, and their respective agents, employees, and others acting in concert with them, from directly or indirectly infringing or causing, directing, or approving infringement of the ROC NATION Mark and ROC Family of Marks in any manner, or causing or acting in concert with others to do the same, including by using any name, mark, design, or logo (including the Paper Plane Logo which was co-promoted with the ROC NATION Mark) that is confusingly similar to the ROC NATION Mark in Classes 25 and 35 in connection with the New Era Caps or Paper Plane Caps or in connection with the sale, offer for sale, advertising, manufacturing, distribution, or promotion of any goods or services bearing such ROC NATION Mark in Classes 25 and 35, and directing Defendants to take steps to remove from the marketplace any products that so infringe Plaintiffs' ROC NATION Mark.

349.  Plaintiffs are further entitled to recover damages sustained in consequence of RNAG, Paper Plane Holdings, RNLLC, RAG, Carter, SF Giants, MLB, New Era, and/or John Does' wrongful conduct, in an amount to be determined at trial but not less than $40 million; to recover RNAG, Paper Plane Holdings RNLLC, RAG, SF Giants, MLB, New Era, and Carter (individually and personally) profits from infringement of the ROC NATION Mark; and to recover Plaintiffs' attorneys' fees and other costs herein.

350. Such relief is appropriate because Defendants have commercially distributed, promoted, marketed, and sold, or authorized and directed the same, the New Era Caps and/or Paper Plane Caps, which bear the ROC NATION Mark owned by Studio IP, promoting the New Era Caps and Paper Plane Caps as special edition hats because they bear the ROC NATION Mark owned by Studio IP.

521949.00667/106552055v.1

351.  Based upon such conduct, Studio IP is entitled to injunctive relief as well as monetary damages in an amount not less than $40 million, and other remedies including profits, punitive damages, attorneys' fees, costs, and prejudgment interest.

352.  Plaintiffs are further entitled to an order directing the seizure and destruction of the offending goods, packaging, advertising and promotional materials.

### FIFTH CAUSE OF ACTION
**(Common Law Infringement Against COS and MadeWorn: Roc96 Apparel)**

353.  Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the proceeding and subsequent paragraphs as if set forth in full.

354.  Plaintiffs own and control the ROC Family of Marks Classes 9, 14, 18, 25 and 35, which consists of individual common law marks in the ROC, ROCA, ROC 99, and ROC Boys, among various other marks, and registered marks in the names ROCAWEAR and TEAM ROC, and related design and word mark combinations, among several hundred marks registered worldwide.

355.  At the time of adoption of the infringing marks on the Roc96 Apparel, COS was (and is) aware of Plaintiffs' ownership and control of the ROC Family of Marks.

356.  COS was founded by Burke and Jones with the knowledge and approval of Carter.

357.  Burke was at the time of the decision to manufacture, market, and distribute Roc96 apparel, aware that ROCAWEAR was sold to Iconix, which acquired ROC NATION and ROC for Classes 25 and 35 (apparel), and that Plaintiffs owned and controlled the ROC Family of Marks through the 2007 APA.

358. Jones, also a COS principal, operates as the self-described "lifestyle specialist" for ROC NATION, and thus had (and has) knowledge of Plaintiffs' rights in the ROC Family of Marks,

521949.00667/106552055v.1

as confirmed and described under the Consent Agreement and the License Agreement, as of the time of adoption of the infringing marks on the Roc96 Apparel.

359. To the extent not directly liable for infringement, MadeWorn has engaged in contributory infringement by manufacturing and supplying Roc96 Apparel to COS and/or John Does with actual or constructive knowledge that such products were being mislabeled by MadeWorn directly or at the direction of COS, or by COS and/or John Does using Plaintiffs' ROC Family of Marks and other intellectual property to which MadeWorn had no rights.

360. This conduct and the damage to Plaintiffs arise directly from intellectual property rights acquired by Iconix pursuant to the agreements identified in this pleading. Because COS was aware of such rights and undertook the infringing activities described in this pleading, the claims against COS and MadeWorn arise from the common activities pleaded herein. That is, COS, owned by Burke and Carter, both knowledgeable of the transfer of the ROC NATION Mark to Iconix in Class 25 and 35 (apparel), still negotiated and contracted with MadeWorn to create the infringing Roc96 goods.

361. The claims against COS, Burke, and MadeWorn arise directly out of the same transactions, occurrences, and series of transactions and business dealings as the claims against the other Defendants: they all have a common source of the intellectual property rights obtained by Plaintiffs through the transactions identified herein.

362. The common source of all of these claims is the intellectual property rights to the ROC NATION Mark and ROC Family of Marks acquired and developed by Plaintiffs; those intellectual property rights have been infringed, attacked, and damaged by COS, Burke, and MadeWorn through their Roc96 Apparel, similar to such harm as pleaded against the other Defendants in this lawsuit.

521949.00667/106552055v.1

363.  Common questions of law and fact, especially given the intellectual property rights acquired by and accorded to Plaintiffs which fundamentally support the claim concerning the Roc96 apparel, exist as between all parties.  Indeed, the foundation of Plaintiffs' claims concerning the infringing Roc96 Apparel is Plaintiffs' intellectual property rights in the ROC NATION Mark and the ROC Family of Marks, which are infringed by the Roc96 collection.

364.  Plaintiffs did not authorize COS or MadeWorn at any time to utilize the ROC Family of Marks or marks bearing the ROC Family surname in or as part of the offending Roc96 Apparel.

365.  COS and MadeWorn, individually and/or collectively, intentionally and knowingly infringed on Plaintiff's ROC Family of Marks (both collectively and individually) by, among other acts: (i) offering for sale, selling, manufacturing, distributing, marketing, displaying, promoting and/or advertising Roc96 Apparel under the name "Roc96" or other confusingly similar marks to Plaintiffs' marks on the Roc96 Website, social media, in brick-and-mortar locations including Barneys and "pop-up" locations such as Revolve; (ii) utilizing Roc96 as a trade name and brand including in Classes 25 and 35; (iii) promoting, marketing, and advertising individual Roc96 Apparel products utilizing the ROC Family of Marks such as "Roc Boys," 'Roc family tree,'  "Roc plug," "Roc Navy snapback," and "Rocafella," among others; (iv) utilizing the ROC surname on the Roc96 products themselves such as "ROCA" and "ROCAFELLA;" and (v) maintaining and operating the Roc96 Website bearing the ROC Family of Marks, or a confusingly similar mark, and prominently displayed on the homepage and throughout the Roc96 Website.

366.  Roc96, ROCAFELLA, ROC BOYS, "Roc Boys," "ROC Family tree,"  "Roc plug," "Roc Navy snapback," are all part of (and/or confusingly similar to) the ROC Family of Marks including in Classes 25 and 35, and properly owned by Plaintiffs.  COS, Burke, Jones, and MadeWorn knew of the relationship between the 'ROC' marks used in their products and the ROC

521949.00667/106552055v.1

NATION Mark and ROC Family of Marks acquired by Plaintiffs prior to causing the apparel manufacture, marketing, and sale.

367. In addition, the various "ROC" marks, including Roc96, ROCAFELLA, ROC BOYS, "Roc Boys," "ROC Family tree," "Roc plug," and "Roc Navy snapback" used on (or in connection with) Class 25 goods are the same or confusingly similar to individual marks owned or controlled by Plaintiffs, including ROC, ROCA, ROCAWEAR, ROC 99, and ROC BOYS, among other marks. COS, Burke, Jones, and MadeWorn knew of this relationship through Carter or should have known through a simple U.S.P.T.O. search.

368. Based on the foregoing infringing activities, COS and MadeWorn are using a copy, counterfeit, reproduction, or colorable imitation of the ROC Family of Marks and/or Plaintiffs' individual marks bearing the ROC surname or confusingly similar marks, including in Classes 25 and 35 in a manner which is likely to confuse, deceive, and/or cause mistake among consumers (and has caused such confusion, mistake, and/or deceit) as to the source, nature, origin, and/or quality of the products bearing the Roc96 brand and the relationship by and among Plaintiffs and COS, MadeWorn, RNAG, RNLLC, Carter, Burke, and/or Jones.

369. The use of images and video of Jay-Z and Burke and/or ROCK-A-FELLA RECORDS or "Roc-A-Fella Records" or any extension, similar or confusing presentation, or derivation thereof on clothing and apparel is inherently likely to create confusion with the ROC Family of Marks in Class 25 goods because ROCAWEAR was itself born out of Rock-a-Fella Records, under common ownership and promoted by Rock-a-Fella Records, and promoted and advertised through 'Rappertisements' released under the Rock-a-Fella label.

370. The marketing channels for Roc96, such as the display of the Roc96 Website as a sub-link of the official ROC NATION (the entertainment platform) website, also increases customer

confusion and creates actual and likely confusion as to the source, nature, origin, and/or quality of the products bearing the Roc96 name or logo.  For example, Barneys carried and carries a limited edition Roc96 "capsule" which is similar to a specialty offering by Barneys in 2013 under the 'S. CARTER' label promoted by Jay-Z.

371.  The promotion of the Roc96 Apparel as one among many of the 'Roc brands' by Biggs and Jones also increases actual and likely confusion among consumers as to the source, nature, origin, and quality of the Roc96 Apparel.

372.  Plaintiffs have no adequate remedy at law for such infringement, individually and collectively, of the ROC Family of Marks including in Classes 25 and 35 in that the: (i) ROC Family of Marks, and the goodwill associated therewith, is unique and valuable property, injury to which cannot adequately be compensated by monetary damages; (ii) damages to Plaintiffs resulting from the infringement are not precisely and fully ascertainable; (iii) infringement injures and threatens to continue to injure Plaintiffs' business reputations and goodwill, and the reputation, standing, and goodwill associated with the ROC Family of Marks including in Classes 25 and 35 as controlled by Iconix and Studio IP, as well as the goodwill and standing of the other Iconix brands; (iv) damage resulting to Plaintiffs from such wrongful conduct, and the conduct itself, is continuing, and Plaintiffs would be required to bring a multiplicity of suits to achieve full redress for the injuries caused thereby; (v) Plaintiffs have no quality or other control over the ROC Family of Marks as it is being used by COS, MadeWorn, Jones, and Burke; and (vi) conduct effectively usurps and converts distribution channels and market share from Studio IP, the owner of the ROC Family of Marks, which is harm that cannot be easily ascertained, and is continuing.

373.  Unless restrained, such infringement of the ROC Family of Marks will continue to cause irreparable injury to Plaintiffs, both during the pendency of this action and thereafter, by

damaging Plaintiffs' rights in the ROC Family of Marks including Plaintiffs' ability to engage in quality control over the ROC Family of Marks' use.

374.  Plaintiffs are therefore entitled to an order from this Court permanently enjoining COS and MadeWorn and their agents, employees, and others acting in concert with them from directly or indirectly (i) infringing the ROC Family of Marks – that is, any mark, name, logo, or brand which bears 'ROC' or 'Roc' in Class 25 or Class 35 – in any manner, or causing or acting in concert with others to do the same, including the entire Roc96 Apparel line(s) and collection(s); and (ii) using any name, mark, design, or logo that is confusingly similar to the ROC Family of Marks (individually or collectively) in connection with the Roc96 Apparel and in connection with the sale, offer for sale, advertising, manufacturing, distribution, or promotion of any goods or services bearing such mark including in Classes 25 and 35.

375. The Court should issue an order directing COS and/or MadeWorn and/or their affiliates and subsidiaries to cease use of the Roc96 Website or transfer ownership and/or control of the same, including the URL, to Studio IP.

376.  Plaintiffs are further entitled to recover damages sustained in consequence of COS and/or MadeWorn's wrongful conduct, in an amount to be determined at trial; to recover COS, MadeWorn, and/or John Does' profits as a result of the infringing activities; and to recover Plaintiffs' attorneys' fees and other costs herein.

377.  Based upon the circumstances of the Defendants' actions, including the willful nature of COS, MadeWorn and/or John Does' conduct, Plaintiffs are further entitled to recover actual and consequential damages, including attorneys' fees and costs.

521949.00667/106552055v.1

378.  Based upon such conduct as described herein, Studio IP and Iconix are entitled to injunctive relief as well as monetary damages in an amount not less than $10 million, and other remedies including profits, punitive damages, attorneys' fees, costs, and prejudgment interest.

379.  Plaintiffs are entitled to an order directing the seizure and destruction of the offending Roc96 Apparel and goods, packaging, advertising and promotional materials.

**SIXTH CAUSE OF ACTION**
**(Against RNAG, RAG, RNLLC, Carter, New Era, MLB, and SF Giants, for**
**False Designation of Origin, Passing-Off, & Unfair Competition**
**(15 U.S.C. § 1125(a)/Lanham Act § 43(a))**

380.  Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the preceding and subsequent paragraphs as if set forth in full.

381.  Plaintiffs have standing to maintain an action for false designation of origin, passing-off, and unfair competition under Lanham Act § 43(a), 15 U.S.C. § 1125(a) as the owner of the ROC NATION Mark and ROC Family of Marks (individually and collectively) including Classes 9, 14, 18, 25 and 35, strong and distinctive marks that have acquired secondary meaning.

382.  RNAG, Paper Plane Holdings, RNLLC, RAG, SF Giants, Carter, MLB, and New Era have, without authorization, on or in connection with goods, made false designations of origin and are passing-off the ROC NATION Apparel, New Era Caps, and Paper Plane Caps as genuine goods under the ROC NATION Mark that are likely to cause confusion or mistake or to deceive as to affiliation, connection, or association in connection with the ROC NATION Mark including in Classes 25 and 35, and/or as to the origin, sponsorship, association or approval of goods or commercial activities bearing the ROC NATION Mark including in Classes 25 and 35.

383.  These representations have been made in interstate and international commerce as the ROC NATION Apparel, New Era Caps, and Paper Plane Caps are advertised and sold in multiple states and available for shipment via the internet in and to multiple states and abroad.

521949.00667/106552055v.1

384.   The activities of RNAG Paper Plane Holdings, RAG, RNLLC, Carter, New Era, MLB, and SF Giants further misrepresent the nature, characteristics, or qualities of the goods or commercial activities in connection with ROC NATION Apparel, New Era Caps, and Paper Plane Caps.

385.   New Era, MLB, SF Giants and/or John Does have commingled or allowed to be commingled their respective logos, and trademarks with the ROC NATION Mark on the New Era Caps, falsely designating the ROC NATION Mark on these unauthorized goods and with these other marks and logos.

386.   RNAG, RNLLC, RAG, Carter, and/or John Does have used the ROC NATION Mark on ROC NATION Apparel, which clothing is not genuine authorized goods, commingling the ROC NATION Mark with the Paper Plane Mark.   These Defendants falsely designated the ROC NATION Mark in connection with non-genuine goods, and falsely indicated an endorsement or association between ROC NATION Apparel and genuine goods and services bearing the ROC NATION Mark.

387.   RNAG, Paper Plane Holdings, RNLLC, RAG and/or John Does have commingled or allowed to be commingled their respective logos, the Paper Plane Mark, and trademarks with the ROC NATION Mark on the Paper Plane Caps and other goods identified herein and not known to Plaintiffs, falsely designating the ROC NATION Mark on these unauthorized goods and with these other marks and logos.

388.   RNAG, RAG, Carter, and/or RNLLC are improperly passing-off unauthorized ROC NATION Apparel.

389.   RNAG, Paper Plane Holdings, Carter, RNLLC, RAG and/or John Does are improperly passing-off the unauthorized Paper Plane Caps as genuine authorized goods.

521949.00667/106552055v.1

390.  New Era, Lids, SF Giants, RNAG, RNLLC, and/or RAG are improperly passing-off the unauthorized New Era Caps as genuine authorized goods.

391.  The acts and practices of RNAG, Paper Plane Holdings, RAG, RNLLC, New Era, MLB, Carter, and SF Giants alleged herein constitute unfair competition, false designation of origin, false advertising, and/or unfair or deceptive trade practices, including the use of the ROC NATION Mark including in Classes 25 and 35, are likely to cause confusion; cause mistake; or to deceive as to the affiliation, connection, or association of Defendants' products with those of Plaintiffs, or as to the sponsorship or approval of Defendants' goods or commercial activities by Plaintiffs, and as to the association between one or more of the Plaintiffs and RNAG, Carter, Paper Plane Holdings, RAG, RNLLC, New Era, MLB, and/or SF Giants.

392.  Consumers are likely to be driven to the ROC NATION Apparel, New Era Caps, and Paper Plane Caps under the mistaken belief that such products are authorized Iconix or Studio IP products or are properly authorized, licensed, and genuine ROC NATION products, adhering to the standards of quality and design ensured by the ROC NATION Classes 25 and 35 mark owner, Studio IP.

393.  Consumers and the trade, including potential licensees of the ROC Family of Marks and/or ROC NATION, are and will be confused about the source of goods bearing a 'ROC' or 'Roc' surname and confused and deceived as to the owner of such goods including in Classes 25 and 35, and are reluctant and will be reluctant to license these marks or the ROC Family of Marks from Plaintiffs or engage in business with Plaintiffs with regard to these marks and brands.

394.  ROC NATION including in Classes 25 and 35 is a strong (indeed, famous) trademark which is not contested, and cannot be contested by RNAG, and/or RNLLC pursuant to the terms of the Consent Agreement and License Agreement.

395.  The unauthorized marks used by the Defendants in violation of the Lanham Act 43(a) are identical to the genuine ROC NATION Mark including in Classes 25 and 35 owned and controlled by Plaintiffs used on similar goods (apparel and hats), and are sold through similar (if not identical) distribution channels as authorized products advertised, marketed, and previously and/or currently sold by Plaintiffs and/or their licensees under the identical mark.

396.  Consumers of ROC NATION Apparel are not likely to invest the time to discern between genuine authorized products and unauthorized products bearing unauthorized use of the ROC NATION Mark given the relatively low price point and consumer investment costs of ROC NATION Apparel products versus other commercial goods.

397.  The likelihood of confusion is inherently higher because RNAG is a holdover licensee of the ROC NATION Mark including in Classes 25 and 35, and thus, RNAG's continued promotion and sale of the products through similar distribution channels creates the inherent danger of consumer confusion, which has led and will lead to potential licensees avoiding the licensing of the ROC NATION Mark due to such consumer confusion.

398.  Plaintiffs have no adequate remedy at law for the foregoing wrongful conduct in that the: (i) actions damage and threaten to continue to damage Plaintiffs' unique and valuable intellectual property (and Plaintiffs' control over their marks and intellectual property) and business reputation, injury which cannot adequately be compensated by monetary damages; (ii)  damages to Plaintiffs from such wrongful actions are not precisely and fully ascertainable; (iii) such wrongful acts injure and threaten to continue to injure Plaintiffs' reputation, goodwill, and market share; and (iv) damage resulting to Plaintiffs from such wrongful conduct, and the conduct itself, is continuing, and Plaintiffs would be required to bring a multiplicity of lawsuits to achieve full compensation for the injuries caused thereby.

521949.00667/106552055v.1

399.  Unless restrained, the foregoing wrongful acts of RNAG, RAG, RNLLC, Carter, New Era, MLB, and SF Giants will continue to cause irreparable injury to Plaintiffs, both during the pendency of this action and thereafter.

400.  Plaintiffs are therefore entitled to an order from this Court permanently enjoining RNAG, RAG, RNLLC, Carter, New Era, MLB, and SF Giants and their agents, employees, and others acting in concert with them, from directly or indirectly: (i) manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting, or displaying any product which tends to relate or connect such products of Plaintiffs or which displays the ROC NATION Mark in Class 25 in any way not authorized by Studio IP, including the New Era Caps and ROC NATION Apparel; (ii) using any mark which is confusingly similar to the ROC NATION Mark including in Classes 25 or 35; and/or (iii) making any false description or representation of origin concerning any goods offered for sale by Defendants.

401.  Plaintiffs are further entitled to recover damages sustained in consequence of RNAG, RAG, RNLLC, Carter, New Era, MLB, and SF Giants' wrongful conduct, including disgorgement of profits from unauthorized use and appropriation of the ROC NATION Mark, in an amount to be determined at trial, and to recover their attorneys' fees and costs herein, including as provided for under 15 U.S.C. § 1117 (Lanham Act § 35).

402.  The conduct of RNAG, RAG, RNLLC, Carter, New Era, MLB, and SF Giants has been knowing, deliberate, willful, intended to cause confusion, intended to cause mistake, and intended to deceive, and in blatant disregard of Studio IP's rights under the Lanham Act, common and state law, the License Agreement and Consent Agreement, and Studio IP's protected intellectual property rights.

521949.00667/106552055v.1

403.  RNAG, RAG, RNLLC, Carter, New Era, MLB, and SF Giants knew or by the exercise of reasonable care should have known that the manufacture, sale, advertising, marketing, and promotion of the Paper Plane Caps, New Era Caps and ROC NATION Apparel bearing the ROC NATION Mark clearly owned by Studio IP, including such use of the mark in interstate commerce, and continuing use, infringes upon Studio IP's mark and is confusingly similar to, and constitutes a reproduction of, the ROC NATION Mark in Class 25, and is likely to cause confusion, mistake, or deception among purchasers and dealers, users, and the public.

404.  Intentional use and/or licensing of the ROC NATION Mark in Class 25 that is confusingly similar to and constitutes a reproduction or infringement of Studio IP's ROC NATION Mark in Class 25, and which adopts Plaintiffs' ROC NATION Mark unfairly competes with Plaintiffs and is likely to cause confusion, mistake, or to deceive, mislead, betray, and defraud consumers and sellers to believe that the Paper Plane Caps, New Era Caps and ROC NATION Apparel are genuine Iconix products or are endorsed, approved, or authorized by Plaintiffs.

405.  Such conduct has caused Plaintiffs to suffer substantial and irreparable injury for which they have no adequate remedy at law.  RNAG, RAG, RNLLC, Carter, New Era, MLB, and SF Giants have earned substantial sales and profits on the strength of Studio IP's ROC NATION Mark and the strength of Studio IP's name, reputation, standing in the retail community through its portfolio of brands, marketing, advertising, sales, and consumer and trade recognition.

406.  Based upon such conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies provided by 15 U.S.C. § 1125(a), including profits, treble damages, reasonable attorneys' fees, costs, and prejudgment interest.

407.  As a direct and proximate cause of RNAG, RAG, RNLLC, Carter, New Era, MLB, and SF Giants' conduct, as alleged herein, Plaintiffs have been and will be deprived of sales of

Page 95 of 139

products bearing the ROC NATION Mark in Class 25 in an amount not less than $10 million but to be evidenced at trial.  Plaintiffs have also been deprived and will be deprived of the value of their trademark as a commercial asset in an amount as yet unknown but to be determined at trial.

408. Based upon such conduct, Plaintiffs are entitled to injunctive relief and money damages and other remedies provided by 15 U.S.C. § 1125(a), including profits, treble damages, reasonable attorneys' fees, costs, and prejudgment interest.

409. Plaintiffs seek an accounting of RNAG, RAG, RNLLC, Carter, New Era, MLB, and SF Giants' profits and request that the Court grant Plaintiffs treble damages, attorneys' fees, and costs.

## SEVENTH CAUSE OF ACTION
### (Against COS, MadeWorn, Burke, and Jones for
### False Designation of Origin, Passing-Off & Unfair Competition
### (15 U.S.C. § 1125(a)/Lanham Act § 43(a))

410. Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the preceding and subsequent paragraphs as if set forth in full.

411. Plaintiffs have standing to maintain an action for false designation of origin, passing-off, and unfair competition under Lanham Act § 43(a), 15 U.S.C. § 1125(a) as the owner of the ROC Family of Marks (individually and collectively) in Classes 9, 14, 18, 25 and 35, strong and inherently distinctive marks that have acquired secondary meaning.

412. COS, MadeWorn, Burke, and Jones have falsely designated the origin, and are passing-off Roc96 Apparel as genuine goods within the ROC Family of Marks including in Classes 25 and 35 that are likely to cause confusion or mistake or to deceive as to affiliation, connection, or association in connection with the ROC Family of Marks including in Classes 25 and 35, and/or as to the origin, sponsorship, association or approval of goods or commercial activities bearing the ROC Family of Marks including in Classes 25 and 35.

521949.00667/106552055v.1

413.  These representations have been made in interstate and international commerce, as Roc96 Apparel is advertised and sold in multiple states and available for shipment via the internet in and to multiple states and abroad.

414.  To the extent not directly liable for infringement, MadeWorn is liable for contributory infringement by manufacturing and supplying Roc96 Apparel to COS and/or John Does with actual or constructive knowledge that such products were being mislabeled by COS and/or John Does using Plaintiffs' marks, including the ROC Family of Marks.

415.  COS and MadeWorn have misrepresented the nature, quality, and origin of Roc96 Apparel and the other goods under the ROC Family of Marks in commercial advertising or promotion in violation of 15 U.S.C. § 1125(a)(1)(B).  Among these misrepresentations and false or misleading descriptions are statements by Burke and Jones indicating that the Roc96 brand is a mere continuation or has some connection or affiliation with prior "ROC" brands and/or goods bearing the ROC Family of Marks, or that Roc96 represents the lifestyle brand typified by Roc-A-Fella Records and/or Jay-Z in the 1990s or of the broader "ROC" empire.

416.  COS, MadeWorn, Burke, and Jones have further misrepresented the nature, characteristics, or qualities of the goods or commercial activities in connection with Roc96 Apparel.

417.  COS and MadeWorn falsely designated (and are continuing to designate) various marks in the ROC Family of Marks, for example, Roc96, ROCA, ROC BOYS, ROC Family Tree, Roc Snapback, among other marks, in connection with non-genuine goods, and have falsely indicated an endorsement or association between Roc96 Apparel and genuine goods and services of the ROC Family of Marks including in Classes 25 and 35.

418.  COS and MadeWorn are improperly passing-off unauthorized Roc96 Apparel as genuine authorized goods under the ROC Family of Marks including in Classes 25 and 35.

521949.00667/106552055v.1

419.  The acts and practices of COS, MadeWorn, Burke, and Jones described herein constitute unfair competition, false designation of origin, false advertising, and/or unfair or deceptive trade practices in that they are likely to cause (and have caused) confusion and mistake or to deceive the consuming public as to the affiliation, connection, or association of Roc96 with ROCAWEAR, ROC NATION and the various goods and services bearing the ROC Family of Marks including in Classes 25 and 35.  These activities have caused and will likely cause consumer confusion about the sponsorship or approval of Roc96 Apparel and related commercial activities by Plaintiffs, and as to the association between one or more of the Plaintiffs and COS (and their principals Burke and Jones), and MadeWorn.

420.  Consumers are likely to be driven to Roc96 under the mistaken belief that such products are authorized Iconix or Studio IP products or are properly authorized, licensed and genuine products of or bearing the ROC Family of Marks, adhering to the standards of quality and design ensured by the ROC Family of Marks owner including in Classes 25 and 35.

421.  The unauthorized marks used by the Defendants in violation of the Lanham Act 43(a) utilize the identical "Roc" family surname and are otherwise confusingly similar to individual marks in the ROC Family of Marks owned and controlled by Plaintiffs.  COS and MadeWorn are using the offending marks on similar goods (apparel and hats) that are available through the web, as are Plaintiffs' apparel goods bearing the ROC Family of Marks.

422.  The use of images of Jay-Z and Biggs, as well as the thematic references to Roc-A-Fella Records, are inherently likely to create consumer confusion between Roc96 Apparel and ROCAWEAR and the related ROC Family of Marks in Class 25 owned and controlled by Plaintiffs.

423.  Roc-A-Fella Records, directly and through music released under the label, promoted ROCAWEAR using Jay-Z's image and the lifestyle he denoted as the "Roc representor" and the

521949.00667/106552055v.1

"CEO of the R-O-C."  The misleading references by COS, MadeWorn (in manufacturing), Burke, and Jones to Roc-A-Fella Records in the 1990s and "Roc brands" in interviews and promotional and advertising materials is likely to create consumer confusion about the connection, affiliation, sponsorship or approval of Roc96 Apparel and its relationship to other apparel bearing the 'Roc" name or symbols and to Plaintiffs.

424.  Plaintiffs have no adequate remedy at law for the foregoing wrongful conduct of COS, MadeWorn, Burke, and Jones in that: (i) such actions damage and threaten to continue to damage Plaintiffs' unique and valuable intellectual property (and Plaintiffs' control over their marks and intellectual property) and business reputation, injury which cannot adequately be compensated by monetary damages; (ii)  damages to Plaintiffs from Defendants' wrongful actions are not precisely and fully ascertainable; (iii) the wrongful acts of these Defendants injure and threaten to continue to injure Plaintiffs' reputation and goodwill and market share; and (iv) damage resulting to Plaintiffs from these Defendants' wrongful conduct, and the conduct itself, is continuing, and Plaintiffs would be required to bring a multiplicity of lawsuits to achieve full compensation for the injuries caused thereby.

425.  Unless restrained, the foregoing wrongful acts of COS, MadeWorn, Burke, and Jones will continue to cause irreparable injury to Plaintiffs, both during the pendency of this action and thereafter.  Plaintiffs are therefore entitled to an order from this Court permanently enjoining such Defendants and their agents, employees, and others acting in concert with them, from directly or indirectly:(i) manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting, or displaying any product which tends to relate or connect such products of Plaintiffs or which displays Roc96 or any mark in the ROC Family of Marks or confusingly similar thereto including in Classes 25 and 35 in any way not authorized by Studio IP and Iconix, including

the Roc96 Apparel; (ii) using any mark which is confusingly similar to the ROC Family of Marks (individually or collectively) in Classes 25 or 35; and/or (iii) making any false description or representation of origin concerning any goods offered for sale by Defendants.

426. Plaintiffs are further entitled to recover damages sustained in consequence of COS, MadeWorn, Burke, and Jones's wrongful conduct, including damages to Plaintiffs, disgorgement of such Defendants' profits from unauthorized use and appropriation of the ROC Family of Marks (including Roc96), in an amount to be determined at trial, and to recover their attorneys' fees and costs herein, including as provided for under 15 U.S.C. § 1117(a).

427. The conduct of COS, MadeWorn, Burke, and Jones has been knowing, deliberate, willful, intended to cause confusion, intended to cause mistake, intended to deceive, and in blatant disregard of one or more of the Plaintiffs' rights under the Lanham Act, common and state law.

428. Defendants knew or by the exercise of reasonable care should have known that the manufacture, sale, advertising, marketing, and promotion of Roc96 Apparel bearing the ROC Family of Marks, including in interstate and international commerce (which use continues) infringes upon the ROC Family of Marks and the ROC NATION Mark, and is confusingly similar to and constitutes a reproduction of the ROC Family of Marks (individually and collectively) in Class 25, and is likely to cause confusion, mistake, or deception among purchasers and dealers, users, and the public.

429. Defendants' conduct, including false designation of origin, passing-off, and unfair competition in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a), has caused Plaintiffs to suffer substantial and irreparable injury for which they have no adequate remedy at law.

430. Defendants' conduct has permitted or will permit Defendants to earn substantial sales and profits on the strength of Plaintiffs' ROC Family of Marks, and related goodwill and standing.

521949.00667/106552055v.1

431.   The manufacture, sale, distribution, marketing, promotion, and advertising of the Roc96 Apparel constitutes a false designation of origin and passing-off of the ROC Family of Marks (individually and collectively).

432.   As a direct and proximate cause of Defendants' conduct, as alleged herein, Plaintiffs have been and will be deprived of sales of products bearing the ROC Family of Marks in Class 25 in an amount not less than $40 million but to be evidenced at trial.  Plaintiffs have also been deprived and will be deprived of the value of their marks as a commercial asset in an amount as yet unknown but to be determined at trial.

433.   Based upon such conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages, disgorgement of profits, treble damages, reasonable attorneys' fees, costs, and prejudgment interest, including as provided under 15 U.S.C. § 1117(a).

434.   Plaintiffs are entitled, under 15 U.S.C. § 1118, to an order directing the seizure and destruction of the offending goods, packaging, advertising and promotional materials.

## EIGHTH CAUSE OF ACTION
### (Trademark Dilution of the ROC Family of Marks Against All Defendants Except Burke, and Jones (15 U.S.C. § 1125(c)/ Lanham Act § 43(c))

435.   Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the preceding and subsequent paragraphs as if set forth in full.

436.   The ROC Family of Marks (individually and collectively), including Studio IP's ROC NATION Mark and ROCAWEAR and related marks in Classes 9, 14, 18, 25 and 35 are distinctive and famous marks as of the date of the filing of this pleading, pursuant to 15 U.S.C. § 1125(c), and became famous prior to the filing of this pleading and prior to the commencement of the activities attributed to Defendants herein.

521949.00667/106552055v.1

437.  RAG has pled in numerous lawsuits that various marks in the ROC Family of Marks are famous for purposes of 15 U.S.C. § 1125(c), including for example, *Roc Apparel Group LLC v. Wholesaler Clothing Market.*, No. 11/21274 (S.D. Fla. 2001).

438.  Goods bearing the ROC Family of Marks have accounted for billions of dollars in retail sales, through thousands of retail outlets worldwide.  The substantial investment in consumer recognition of these brands not only includes millions of dollars in traditional advertising and promotion, but millions of dollars more through cross-promotion and 'rappertisements,' and endorsements of Jay-Z, a world famous entertainer who recently became the first rapper inducted into the Songwriter's Hall of Fame.

439.  The year Studio IP purchased the ROC Family of Marks, ROCAWEAR alone accounted for over $700 million in sales, and such sales total in the billions, collectively, to date.

440.  ROCAWEAR as an apparel line has been praised and recognized in numerous articles appearing in both trade and general publications, including *Vibe Magazine*, *New York Magazine*, *XXL*, *Black Enterprise*, *Source*, *Hampton's Magazine*, *Entertainment Weekly*, *Blaze*, *Slam*, *DNR*, *Sportswear International* and in daily newspapers such as *The New York Daily News* and *The New York Post*.  In fact, nearly every legitimate national magazine, industry or trade publication, or newspaper has written about, profiled, identified, or remarked about the success or popularity of ROCAWEAR in connection with Jay-Z.

441.  There is substantial consumer recognition of the ROC Family of Marks, including ROCAWEAR, and the ROC NATION Mark, as they are famous marks.

442.  The ROC Family of Marks, including the ROC NATION Mark and ROCAWEAR mark, are recognized by the consuming public as emanating from a specific source, with a specific quality and origin.  Indeed, Jay-Z and others have spent years and, apparently, continue to spend,

521949.00667/106552055v.1

millions of promotional and marketing dollars educating the public that all things ROC are related to Jay-Z and/or ROC NATION.

443.  Plaintiffs, directly and through licensees, have used and continue to use, the ROC Family of Marks, including the ROC NATION Mark in commerce.

444.  The Defendants (except Burke and Jones), through the ROC NATION Apparel, New Era Caps, Paper Plane Caps and Roc96 Apparel, have made and threaten to continue to make commercial use, or have directed commercial use of the ROC Family of Marks in a manner which has caused and will continue to cause dilution of the distinctive quality of such marks and lessen the capacity of such marks to identify and distinguish Plaintiffs' goods.

445.  Plaintiffs are entitled to an order from this Court permanently enjoining these Defendants, their agents, employees, and others acting in concert with them, from directly or indirectly making any further commercial use of the ROC Family of Marks, including the ROC NATION Mark in Classes 25 or 35, or any other names, marks, or logos that are confusingly or substantially similar thereto.

446.  Such relief is warranted because these Defendants' activities dilute, both by blurring and tarnishing, the distinctive quality of the ROC Family of Marks, and the ROC NATION Mark including in Classes 25 and 35 in violation of 15 U.S.C. § 1125(c).  Defendants' activities were willful pursuant to 15 U.S.C. § 1125(c)(5)(B).

447.  The manufacture, sale, distribution, marketing, promotion, and advertising of ROC NATION Apparel, New Era Caps, and Roc96 Apparel constitutes trademark dilution of the ROC Family of Marks and ROC NATION Mark, and harms Plaintiffs, rendering such activity a separate claim and liability basis against Defendants (except Burke and Jones).

521949.00667/106552055v.1

448.  These Defendants' activities as described herein have caused irreparable injury and harm, and have caused other damages to Plaintiffs' business, reputation, and goodwill in the protected ROC Family of Marks, including the ROC NATION including in Classes 25 and 35, and the other Classes to which Studio IP was conveyed and allocated the ROC Family of Marks and the ROC NATION Mark.

449.  Unless enjoined by the Court, these infringing activities will continue to dilute Studio IP's ROC NATION Mark including in Classes 25 and 35, and cause Plaintiffs irreparable injury and other damage to Iconix and its business, name, reputation, and goodwill in its marks.

450. Because Defendants (except Burke and Jones) have willfully intended to cause dilution of the ROC Family of Marks, including the ROC NATION Mark including in Classes 25 and 35, Plaintiffs are further entitled, pursuant to 15 U.S.C. §§ 1117 and 1125(c)(2), to recover all damages sustained as a result of the unlawful conduct, including: (i) Defendants' profits; (ii) Plaintiffs' damages; (iii) Plaintiffs' costs of suit; and (iv) Plaintiffs' reasonable attorneys' fees, including as provided by 15 U.S.C. § 1115.

451.  Due to the willful adoption of the famous ROC Family of Marks with the intention to trade upon the recognition of such famous ROC Family of Marks, Plaintiffs are entitled to remedies under 15 U.S.C. § 1118, including an order directing the seizure and destruction of the offending goods, packaging, advertising, and promotional materials.

### NINTH CAUSE OF ACTION
### (Unfair Competition Against All Defendants Except SF Giants)
### (New York Common Law)

452.  Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the preceding and subsequent paragraphs as if set forth in full.

453.  By marketing, advertising, promoting, manufacturing, distributing and/or selling the ROC NATION Apparel, New Era Caps, Paper Plane Caps and Roc96 Apparel, respectively, in

521949.00667/106552055v.1

violation of Plaintiffs' trademark rights and infringing upon the ROC Family of Marks and the ROC NATION Mark including in Classes 25 and 35 (and harming such use in other Classes allocated to Studio IP by the Consent Agreement) and/or otherwise dealing in the infringing activities, Defendants (except SF Giants) have misappropriated the fruits, labors, and expenditures and/or their licensees (which benefits accrue to Plaintiffs), and thus engaged in unfair business practices under New York common law.

454.  Plaintiffs have widely used the ROC Family of Marks as alleged herein, including the ROC NATION Mark to identify Iconix's brands and goods.  By virtue of such advertising and use, the public has come to identify the source of goods marketed under the ROC Family of Marks and ROC NATION Mark including in Classes 25 and 35.  Such marks have come to represent valuable goodwill which is owned by Plaintiffs.

455.  RNAG, Paper Plane Holdings Carter, RAG, RNLLC and New Era attempted to convert the goodwill, fruits, and labors associated with the ROC NATION Mark by commingling the ROC NATION Mark with the Paper Plane Mark, with the specific intent to convert and usurp the goodwill and investment associated with the ROC NATION Mark and the entire ROC Family of Marks to the Paper Plane Mark, including the Paper Plane Logo, and ultimately take advantage of such converted and usurped goodwill to sell apparel under the Paper Plane Mark independently; seizing on the confusion of consumers who are likely to believe (and do believe) that the Paper Plane Mark is affiliated with (or endorsed by) the ROC NATION brand for Classes 25 and 35 goods.

456.  Defendants' (other than SF Giants) deliberate use of the ROC NATION Mark in Classes 25 and 35 is without the permission of Plaintiffs, and Defendants' use of the mark constitutes unfair competition, rendering such use unlawful.

521949.00667/106552055v.1

457.  By reason of Defendants' (other than SF Giants) above-described unlawful activities, Plaintiffs have sustained injury, damage, and loss, and Defendants have been unjustly enriched.

458.  Plaintiffs have already suffered irreparable harm, and will continue to be irreparably damaged unless this Court enjoins Defendants from continuing their unlawful acts. Plaintiffs have no adequate remedy at law.

459.  Defendants' (other than SF Giants) conduct was intended to cause such loss, damage, and injury.

460.  Defendants (other than SF Giants) knew or by the exercise of reasonable care should have known that their marketing, advertising, promoting, selling, and dealing in and their continuing marketing, advertising, promoting, selling, and dealing in the products bearing the ROC Family of Mark and/or the ROC NATION Mark would cause confusion, mistake, and deception among purchasers, users, and the public.

461.  By marketing, advertising, promoting, selling, and dealing in the goods improperly bearing such marks including in Classes 25 and 35, including the production, marketing, promoting, and sale of the New Era Caps, Paper Plane Caps, ROC NATION Apparel, and Roc96 Apparel, and the continuing marketing, advertising, promoting, selling, and dealing of these products, Defendants (other than SF Giants) intended to and induced, and intends to and will induce customers to purchase New Era Caps, Paper Plane Caps, ROC NATION Apparel, Roc96 Apparel, and other products using the Paper Plane Mark and/or ROC NATION Mark or marks of the ROC Family of Marks by passing-off the extensive goodwill acquired and developed by Plaintiffs.

462.  The conduct of such Defendants has been knowing, deliberate, willful, intended to deceive and cause confusion, or to cause mistake, and is in disregard of Studio IP's rights.  As a result, such conduct is in bad faith.

521949.00667/106552055v.1

463. Such wrongful conduct as alleged in this pleading has permitted or will permit Defendants (excluding SF Giants on this claim) to make substantial sales and profits on the strength of Studio IP's marks and goodwill and the strength of Iconix's worldwide marketing, advertising, sales, and consumer and trade recognition.

464. Such conduct further damages the ROC Family of Marks and the ROC NATION Mark and brand in Class 25 by creating confusion in the consumer and trade marketplace among consumers and the trade as to the origin of the New Era Caps, Paper Plane Caps, ROC NATION Apparel, and Roc96 Apparel, and all apparel bearing the 'ROC' or 'Roc' surname or branding, and has contributed and continues to contribute to RNLLC, Paper Planes Holdings, RAG, COS, Burke, Jones, Carter, and/or RNAG (or John Doe entities under its/their control) building a brand on the strength of the ROC Family of Marks and the ROC NATION Mark including in Classes 25 and 35 owned and controlled by Studio IP.

465. As a direct and proximate result of Defendants' conduct, as alleged herein, Plaintiffs have been and will be deprived of sales of products in an amount not less than $40 million but to be evidenced at trial, and have been deprived and will be deprived of the value of the ROC NATION Mark in Class 25 as a commercial asset in an amount as yet unknown but to be determined at trial; and Defendants have been unjustly enriched.

466. Plaintiffs seek an order granting to them Defendants' profits stemming from the unfair competition detailed in this pleading, and are entitled to their actual and/or compensatory damages.

467. Plaintiffs have no adequate remedy at law for Defendants' continuing violation of their rights as set forth above. Plaintiffs are entitled to permanent injunctive relief, including, without limitation, to restrain RNLLC, RNAG, RAG and/or John Does from using the Paper Plane Logo.

521949.00667/106552055v.1

468.  Plaintiffs are entitled to exemplary or punitive damages for Defendants' intentional misconduct.

## TENTH CAUSE OF ACTION
### (Unjust Enrichment Against All Defendants)
### (New York Common Law)

469.  Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the preceding and subsequent paragraphs as if set forth in full.

470.  Due to the unlawful acts of RNLLC, Paper Plane Holdings RAG, RNAG, New Era, Carter, and John Does with respect to ROC NATION Apparel, Paper Plane Caps and New Era Caps as described herein, RNLLC, Paper Plane Holdings, RAG, RNAG, New Era, Carter, and John Does have been unjustly enriched at Plaintiffs' expense in an amount to be evidenced at trial but not less than $40 million.  Carter has been personally and independently unjustly enriched as pleaded herein.

471.  Due to the unlawful acts of COS, Jones, Burke, and MadeWorn with respect to Roc96 Apparel as described above, COS and MadeWorn have been unjustly enriched at Plaintiffs' expense in an amount to be determined at trial.

472.  RNAG, Paper Plane Holdings, Carter, RAG, RNLLC, New Era and/or John Does were further enriched by converting the goodwill associated with the ROC Family of Marks and the ROC NATION Mark, to the Paper Plane Mark, including the Paper Plane Logo, by improperly commingling the marks.  As a result, the Paper Plane Logo has an increased value and marketability, only after RNAG, Paper Plane Holdings, Carter, RAG, RNLLC, New Era and/or John Does seized upon the goodwill of Plaintiffs' intellectual property.

473.  New Era, Lids, MLB, and SF Giants unjustly benefitted through profits driven from sales of the unauthorized New Era Caps, exploiting Studio IP's ROC NATION Mark.

474.  Carter, Jones, COS, MadeWorn, and Burke were unjustly enriched through their own increased standing and goodwill, as the public promoters of the infringing products, and through

521949.00667/106552055v.1

the increased value of shares, equity, or assets of and in RNAG, Paper Plane Holdings, RAG, RNLLC, and COS, which directly inure to the benefit of Carter, Jones, and Burke individually and personally.  Indeed, Carter personally benefits from the increased exposure of the Roc Family of Marks in Classes 25 and 35 because he enjoys more sales of concert materials, more concert dates, more endorsements, more clients and customers to his various other businesses, and more value to all things 'Roc" that benefit Carter personally.

475.  Defendants retained monies and associated goodwill, gained through deceptive business practices, infringement, acts of deceit, and the claims alleged herein, which is unfair and unjust, all of which has been derived at the expense of Plaintiffs, the owner and controller of the ROC Family of Marks, including the ROC NATION Mark.  Allowing Defendants to retain such monies and benefits would unjustly enrich each of these Defendants and would be contrary to the interests of justice.

476.  RNLLC, Paper Plane Holdings, Carter, RAG, RNAG, New Era, Carter, COS, Jones, Burke, MadeWorn, and John Does all were aware of Plaintiffs' existence and the relationship of the Plaintiffs to the ROC NATION and related trademarks before any of the commercial activities attributed to them in this pleading, but ignored Plaintiffs' intellectual property and rights derived therefrom.

477.  Defendants have received a benefit to which they otherwise were not entitled under common law, pursuant to any business arrangement with Plaintiffs, and/or, in the case of RNLLC, in violation of the Consent Agreement, and in the case of RNAG, in violation of the License Agreement, but at Studio IP's expense, and have enjoyed such financial benefit at the expense of Plaintiffs in an amount not less than $40 million.

521949.00667/106552055v.1

478.  Carter personally and independently benefitted from the same unjust enrichment attributed to RNAG, RNLLC, and RAG because these entities' improper use of the ROC NATION Mark in Class 25 and 35 (for apparel) and improper use of the ROC Family of Marks not only produced benefits to the entities that inured and inures to Carter's personal benefit, but the increased popularity and exposure of the ROC surname through these improper activities increases the popularity, exposure, credibility, and publicity of Jay-Z and various businesses associated with ROC NATION (not in Classes 25 and 35) which benefit Carter, including businesses such as ROC NATION sports, boxing, music, and other ventures.

479.  Carter benefits independently and personally from such increased exposure and publicity to the ROC NATION name, brand, reputation, and image, and, therefore, standing, because more users, clients, subscribers, and customers sign-up to Tidal, his music, video, and exclusive media content business; ROC NATION Boxing, which signs, promotes, underwrites, and manages boxers and events; ROC NATION Management and Publishing, which manages artists and publishes content; ROC NATION Sports Management, which signs, manages, and creates for athletes; and other collateral business.

480.  Carter benefits personally and independently from the increased exposure to all of these ventures because the increased value and popularity of the ROC NATION name, brand, logo, and image is increasingly associated with Jay-Z, attracting users, subscribers, clients, customers, and other business and relationships to these ventures.  Indeed, these businesses create partnerships with other businesses, and therefore, increased business, profits, and exposure to the multi-media entrepreneur, Jay-Z, increasing Jay-Z's exposure, popularity, and media and business empire.

481.  Carter is able to secure more endorsements and business relationships as a result, increasing his personal and independent exposure and popularity, and his ability to create more

521949.00667/106552055v.1

content, concerts, public appearances, new endorsements, and public events which in turn-increases

Jay-Z's exposure, standing, and reputation, all inuring to Carter's personal benefit both financially

and otherwise.

482.  The ROC NATION brand benefits Carter personally and independently, and any

increased exposure of the ROC surname, through apparel and hat sales and sales of other products

that are described herein, is, to the consuming public and trade, attributed to ROC NATION, to Jay-

Z, and, therefore, to Carter personally and independently.  That is, Carter unjustly benefits and is

unjustly enriched through the improper activities attributed to the other Defendants in this lawsuit,

and, therefore, to Carter.

483.  In fact, the ROC NATION website (http://rocnation.com/about) boasts that ROC

NATION has "grown into the world's preeminent entertainment company," Even further, ROC

NATION "work[s] in every aspect of modern entertainment – with recording artists and producers,

songwriters and athletes."  The website lists a who's-who of artists, athletes, and producers who

are, with ROC NATION, "redefining the business of entertainment."

484.  The ROC NATION website further explains that "Carter's love of sports led to the

natural formation of Roc Nations (sic) Sports."  In fact, ROC NATION Sports not only represents

and manages athletes, but also "focuses on elevating athletes' career on a global scale both on and

off the field."  ROC NATION, according to the website, "conceptualizes and executes marketing

and endorsement deals, community outreach, charitable tie-ins, media relations and brand strategy."

485.  That ROC NATION offers its users, subscribers, clients, and customers more than

simply apparel cannot be disputed, as ROC NATION, by its own boast, is the most prominent name

in sports, media, and music, providing everything that a client needs – everything that ROC

NATION's burgeoning name, reputation, and standing supports, which name alone is used as

leverage in all of those areas in which ROC NATION provides consulting and services. Carter uses the cache and status of the ROC NATION name, built and founded upon the jump from music to apparel and Class 25 and 35 goods and services, to benefit himself personally and independently of RNAG, RNLLC, and RAG.

486. These activities are outside the natural business of RNAG, RNLLC, and RAG, but inure to Carter's personal benefit as herein described.

487. While it is not known the extent to which Carter directly controls the day-to-day activities of RNAG, RAG, RNLLC or how many members or equity owners the companies have, Carter is the name, face, persona, and driving force of the companies: Jay-Z has become ROC NATION at the expense of Plaintiffs, and Carter uses that power to benefit his other ventures and to benefit himself.

488. In fact, no matter whether RNAG, RNLLC, and RAG violated Plaintiffs' contract rights, a claim for unjust enrichment is appropriate and valid because Carter has been unjustly enriched (as have the other Defendants) as described in this pleading.

489. It would violate equity and good conscience to allow Defendants to retain the benefit of such unjust enrichment at Plaintiffs' expense.

490. Plaintiffs are entitled to restitution from RNLLC, Paper Plane Holdings, RAG, RNAG, New Era, Carter, Burke, and Jones, and John Does of any benefits from the sale of the New Era Caps, Paper Plane Caps, ROC NATION Apparel and/or Roc96 Apparel, including the transfer to Studio IP of all ownership and control of the Paper Plane Marks, including the Paper Plane Logo (which captures the goodwill of the ROC NATION Mark) including in Classes 25 and 35.

491. Plaintiffs are entitled to restitution from Carter for being unjustly enriched in an amount determined at trial but not less than $25 million.

521949.00667/106552055v.1

## ELEVENTH CAUSE OF ACTION
**(Breach of New York General Business Law § 349 - § 350 Against All Defendants)**
**(New York Statutory Law)**

492.  Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the preceding and subsequent paragraphs as if set forth in full.

493.  Defendants RNLLC, RAG, and RNAG have intentionally and knowingly engaged in deceptive acts and practices in the conduct of their business by the activities complained of herein, including the contracting, licensing, conveying, or authorizing New Era, Lids, and/or MLB to manufacture, distribute, sell, market, and promote business and trade, and engage in commerce concerning the New Era Caps that bear Studio IP's ROC NATION Mark.

494. Defendants RNLLC, Paper Plane Holdings, RAG, RNAG, and New Era have intentionally and knowingly engaged in deceptive acts and practices in the conduct of their business by the activities complained of herein, including the manufacturing, distribution, selling, marketing, and engaging in commerce concerning the Paper Plane Caps that bear Studio IP's ROC NATION Mark.

495. Defendants RNLLC, RAG, RNAG, and/or John Does have intentionally and knowingly engaged in deceptive acts and practices in the conduct of their business by the activities complained of in this pleading, including the manufacture, sale, advertising, and distribution of ROC NATION Apparel which bears Studio IP's ROC NATION Mark, and commingling the ROC NATION Mark with the Paper Plane Mark in a manner which developed an association between the Paper Plane Mark and the ROC NATION Mark.

496. New Era, MLB, Lids, SF Giants, and John Does (such entities known to RNLLC, RAG, RNAG, and/or Carter) have intentionally and knowingly engaged in deceptive acts and practices in the conduct of their business by contracting, licensing, selling, displaying, marketing,

521949.00667/106552055v.1

and promoting the New Era Caps that bear Studio IP's ROC NATION Mark.  These Defendants have engaged in other deceptive practices as alleged in this pleading.

497.  COS and MadeWorn have intentionally and knowingly engaged in deceptive acts and practices in the conduct of their business by promoting, advertising, marketing, manufacturing, distributing, selling, and displaying Roc96 Apparel.

498.  Defendants falsely advertised (and advertise) that the New Era Caps, Paper Plane Caps, and ROC NATION Apparel are goods associated with the respective Defendants to the exclusion of Plaintiffs.

499. Defendants' commercial use of the ROC Family of Marks, including the ROC NATION Mark, is deceptive and is likely to mislead a reasonable consumer about the affiliation, origin, endorsement, nature, and quality of ROC NATION Apparel, Roc 96 Apparel, and the New Era Caps.

500.  Defendants have engaged in deceptive conduct which is likely to mislead consumers and the general public in a material way by misrepresenting that ROC NATION Apparel, Roc 96 Apparel, the New Era Caps, and the Paper Plane Caps were genuine authorized goods associated with the ROC Family of Marks, including the ROC NATION Mark (or a common source thereof), when they were not, and by commingling the marks with the Paper Plane Logo and trademarks of New Era, MLB, and SF Giants in a manner which suggests an affiliation by and among those marks when no such affiliation or relationship is authorized.

501. MadeWorn, COS, Burke, and Jones also engaged in deceptive and misleading representations in promotional materials, including interviews and advertising, by claiming Roc96 was affiliated with prior ROC brands and representing that Roc96 was launched in 1996 and/or

521949.00667/106552055v.1

represents the lifestyle apparel brand created by Jay-Z, Burke, and/or Dash in connection with the launch of Roc-A-Fella Records.

502. Carter has engaged in deceptive trade practices by representing in public, through events and other businesses, and in ways not yet known to Plaintiffs but which will be discovered, that ROC NATION is associated only with Jay-Z and his business entities including ROC NATION Sports, ROC NATION Music, ROC NATION Boxing, and ROC NATION Management and other ventures as depicted on ROC NATION's website.

503. Carter has engaged in deceptive and unfair trade practices that have usurped Plaintiffs' value, standing, and name recognition associated with ROC NATION to Carter himself and to Carter's other businesses including and excluding apparel in Class 25 and Class 35.

504. Carter has commingled and associated the ROC NATION Mark, ROC NATION, and the ROC Family of Marks with himself as a performer and artist, and with other businesses owned or controlled by Carter.

505. Carter has invested heavily in creating the public perception and association that ROC NATION is associated with Jay-Z (that is, Carter), which benefits Carter personally and which violates NYGBL §§ 349-350 as collectively alleged in this lawsuit.

506. By engaging in misleading and deceptive advertising, promotion, sale, and activities, Defendants have engaged in deceptive acts and business practices in violation of New York General Business Law § 349, and false advertising in violation of New York General Business Law § 350.

507. Consumers have relied and rely on these misleading and false representations by purchasing goods and, with regard to Carter goods and services, based on the perception that the same were genuine ROC NATION and ROC Family of Marks goods and services.

521949.00667/106552055v.1

508. By reason of Defendants' above-described unlawful activities, Plaintiffs have sustained injury, damage, and loss, and Defendants have been unjustly enriched.

509. Plaintiffs have already suffered irreparable harm, and will continue to be irreparably damaged unless this Court enjoins Defendants from continuing their unlawful acts. Plaintiffs have no adequate remedy at law.

510. The actions of the Defendants as herein pleaded do not comply with the rules and regulations of, and the statutes administered by, the Federal Trade Commission or any official department, division, commission or agency of the United States or the State of New York.

511. The manufacture, sale, distribution, marketing, promotion, and advertising of ROC NATION Apparel, Roc96 Apparel, the New Era Caps and the Paper Plane Caps, harms the ROC Family of Marks, including NATION Mark, and harms Plaintiffs, rendering such activity a separate claim and liability basis against Defendants.

512. As pleaded in this lawsuit and in this amended pleading, Plaintiffs have been injured by reason of Defendants' violation of New York General Business Law §§ 349 and 350 separate and apart from the trademark infringement harm suffered by Plaintiffs as alleged herein, and are entitled to a Court order enjoining such unlawful acts and practices.

513. The public and the public interest are harmed by Defendants' conduct as alleged in this pleading, because the public has been deceived that goods it has purchased (or may consider purchasing) are not authentic to Plaintiffs but instead are associated only with Jay-Z and the ROC NATION entities controlled by Jay-Z (involving and selling apparel and non-apparel).

514. Consumers are not only being misled as to the origin and source of ROC NATION and goods bearing the ROC NATION mark, logo, name, and reputation, but are being misled as to the relationship between Plaintiffs' goods and goods authorized to be produced, distributed,

521949.00667/106552055v.1

licensed, and marketed by Plaintiffs bearing the ROC NATION name and brand and goods and services, including marketing and promotion of ROC NATION by Defendants.

515.  This consumer-oriented deception materially misleads and deceives the public into associating ROC NATION goods in Classes 25 and 35 with Jay-Z and his companies (including Carter himself).

516.  Defendants' conduct has materially harmed and has the potential to continue materially harming the public as herein pleaded; in fact, such harm continues and will expand because as the ROC NATION empire grows, as boasted by Jay-Z, the likelihood that Plaintiffs may recover or transfer the association of ROC NATION goods (apparel in Classes 25 and 35) to Plaintiffs and its licensees' businesses becomes more remote.  To the contrary, the public is being materially deceived into believing that anything and everything bearing the ROC NATION name and brand or even the ROC surname is related to Jay-Z.

517.  Plaintiffs have been injured by Defendants' violation of New York General Business Law §§ 349 and 350, and are entitled to money damages for the harm suffered by Plaintiffs in an amount not more than the statutory amount (actual damages sustained by Plaintiffs) that may be recovered, but as to be determined at trial.

518.  Plaintiffs are entitled under New York General Business Law § 349(h) to treble damages for Defendants' willful and knowing violation of this statute.  Plaintiffs also are entitled to their reasonable attorneys' fees and treble damages under the statute.

519.  Plaintiffs are entitled under the statutes to enjoin such continued and future conduct by Defendants.

521949.00667/106552055v.1

**TWELFTH CAUSE OF ACTION**
**(Breach of New York General Business Law § 360-l**
**Against All Defendants except Jones and Burke)**

520.  Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the preceding and subsequent paragraphs as if set forth in full.

521.  Plaintiffs are the exclusive owners of the ROC Family of Marks, including the ROC NATION Mark.

522.  By virtue of Plaintiffs' continuous use of the ROC Family of Marks since 2007 (and continuous use since 1999 by Plaintiffs' predecessors-in-interest), and continuous use of ROC NATION Mark including in Classes 25 and 35 since 2013, and billions of dollars in sales of goods through thousands of channels after millions of dollars of advertising, promotion, celebrity endorsement and exposure, the marks have become and continue to be "distinctive" within the meaning of New York General Business Law § 360-l.

523.  These marks have gained widespread publicity and public recognition in the United States and around the world.

524.  Defendants (except Jones and Burke) have made and continue to make commercial use in commerce of the ROC Family of Marks and the ROC NATION Mark including in Classes 25 and 35, including, without limitation in connection with ROC NATION Apparel, Roc96 Apparel, Paper Plane Caps, and New Era Caps, in a manner that causes dilution of the distinctive quality of the ROC Family Marks (typified by the 'ROC' surname) and the ROC NATION Mark, and lessens the capacity of such mark to identify and distinguish Plaintiffs' goods.

525.  Plaintiffs are entitled to a Court order permanently enjoining Defendants, their agents, employees, and others acting in concert with them, from directly or indirectly making any further commercial use of the ROC Family of Marks, including the ROC NATION Mark including in Classes 25 and 35, or any other names, marks, or logos that are substantially similar thereto.

521949.00667/106552055v.1

526.  RNAG and/or Paper Plane Holdings and/or RAG and/or RNLLC and/or John Does have specifically violated General Business Law § 360-l through infringement, sale, distribution, marketing, licensing, promotion, and other activities with regard to ROC NATION Apparel.

527.  Plaintiffs have suffered an injury to their business reputation and dilution of the distinctive quality of the ROC NATION Mark.

528.  Plaintiffs are entitled under New York General Business Law § 360-l to injunctive relief for Defendants' violation of this statute.  Plaintiffs are also entitled to their reasonable attorneys' fees under the statute.

### THIRTEENTH CAUSE OF ACTION
**(Accounting Against RNAG, RNLLC, RAG, COS, and Paper Plane Holdings)**

529.  Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the preceding and subsequent paragraphs as if set forth in full.

530. Studio IP had a confidential and mutual relationship with RNLLC and RNAG pursuant to the License Agreement, which licensed and entrusted intellectual property, including the ROC NATION Mark, to RNAG in exchange for certain obligations, including the obligation to pay royalties.

531.  Plaintiffs are entitled under New York law to an accounting from RNAG (and its successors-in-interest, including Paper Plane Holdings), RNLLC, and RAG as to sales and profits associated with ROC NATION Apparel, New Era Caps, and the Paper Plane Caps and additional goods or services using the Paper Plane Mark and such accounting should be ordered by the Court without the need for any professional to be accompanied by Plaintiffs during such accounting.

532. RNLLC, RNAG, and Paper Plane Holdings are required under New York law to provide the accounting on their own and at RNAG's cost and expense.

521949.00667/106552055v.1

533.  Studio IP is entitled to a full and complete accounting for the Paper Plane Caps, New Era Caps and ROC NATION Apparel, as well as goods bearing the Paper Plane Caps including any sales and profits, and costs attendant thereto, for all sales from the inception of the New Era Caps and ROC NATION Apparel through trial.

534.  Plaintiffs are entitled under New York law to an accounting from COS as to its sales and profits associated with Roc96 Apparel, and such accounting should be ordered by the Court without the need for any professional to be accompanied by Plaintiffs during such accounting.

535.  Studio IP is entitled to a full and complete accounting of Defendants' sales of goods and products that have infringed Studio IP's ROC NATION Mark including in Classes 25 and 35 from inception of the Paper Plane Caps, New Era Caps and ROC NATION Apparel to the present, as well as the sale of any goods bearing the Paper Plane Mark since commencement of the same through trial.

## <u>FOURTEENTH CAUSE OF ACTION</u>
### (Tortious Interference with Contract against Carter)

536.  Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the preceding and subsequent paragraphs as if set forth in full.

537.  Iconix has a contractual relationship under the APA with Rocawear Licensing LLC. Studio IP has a contractual relationship with RNLLC under the Consent Agreement.  Studio IP has a contractual relationship with RNAG under the License Agreement.

538.  Carter, Burke, Jones, and Paper Plane Holdings each had knowledge of the APA, Consent Agreement, and License Agreement.

539.  Upon information and belief, Carter and Burke, the founder of ROCAWEAR, were the direct or indirect beneficial owners of Rocawear Licensing LLC at the time of the APA.

521949.00667/106552055v.1

540. Carter owned or controlled RNAG and/or RNLLC directly or indirectly and was directly involved in the negotiation of the Consent Agreement and License Agreement.

541. Upon information and belief Paper Plane Holdings is under common control and/or beneficial ownership with RNAG and/or RNLLC.

542. Upon information and belief, at all relevant times, Burke was in continuous contact with Carter (personally and professionally), and was aware of the Consent Agreement and License Agreement.

543. Upon information and belief, at all relevant times, Jones was an employee of RNAG, RNLLC, and/or its affiliates and/or subsidiaries, and was directly involved with carrying out the License Agreement as the ROC NATION "lifestyle specialist."

544. With knowledge of the APA, Consent Agreement, and License Agreement, Carter thereafter, with malicious and fraudulent intent because he never considered the License Agreement and Consent Agreement as a contractual, legal, or practical impediment to his commercial desires and conduct, directed and induced RNLLC and/or RNAG that he controls directly or indirectly to enter a contract with MLB and/or New Era and/or sub-license the ROC NATION Mark without authority under the APA, Consent Agreement, and/or License Agreement.

545. Carter demonstrated conceit to the License Agreement and Consent Agreement, and any other arrangement with Iconix by treating contracts and arrangements as if they were suggestive rather than instructive as to his commercial exploits with regard to the ROC NATION Mark and ROC Family of Marks in Classes 25 and 35.

546. Carter directed and caused RNAG, RNLLC, and RAG, as the case may be, to use the ROC NATION Mark in any way it preferred, as long as Carter himself was benefitted, no matter any contract or arrangement that may have prevented or informed such use. Carter's arrogant

521949.00667/106552055v.1

treatment of, and disrespect to the ROC NATION Mark and ROC Family of Marks in Classes 25 and 35 is demonstrated by his conduct and the commercial activities of businesses that he controls and whose activities he instructs and directs.  Carter basically ignored the limitations of the Consent Agreement and License Agreement and conducts business with the ROC Family of Marks any way he prefers without regard to limitations therein.

547.  Carter never respected the License Agreement or Consent Agreement or, for that matter, Iconix, and treated the agreements and Iconix as beholden to him.  In fact, Carter's malicious actions were outside the scope of any authority Carter had as a member of RNAG, RNLLC, or RAG, and were performed to benefit Carter personally, as detailed herein.

548.  Upon information and belief, Carter, in bad faith and disregard of contractual rights, and with the intent to seize control of intellectual property he agreed to convey to Plaintiffs for a considerable sum, directed the contract between New Era and/or RNLLC and/or RNAG and/or MLB for the New Era Caps knowing that no such Defendant controlled or had any right to the ROC NATION Mark in Class 25 for the New Era Caps.

549.  Carter tortiously and intentionally interfered with the Consent Agreement by authorizing or allowing the New Era Caps and Paper Plane Caps to be born and the ROC NATION Apparel to be sold at his direction or approval, tortiously interfering with the APA, Consent Agreement, and/or the License Agreement.

550.  Carter knew or should have known that no Defendant entity had a right to use the ROC NATION name, logo, or brand in association with Class 25 products and in association with the Paper Plane Caps, New Era Caps or ROC NATION Apparel pursuant to the APA, Consent Agreement, and/or the License Agreement.

521949.00667/106552055v.1

551. As result of such breaches induced by Carter, Plaintiffs have been damaged in an amount to be discerned at trial, but not less than $40 million as a result of Carter's tortious interference with contract.

## FIFTEENTH CAUSE OF ACTION
### (Tortious Interference with Prospective Economic Relations Against RNAG, RAG, RNLLC, Paper Plane Holdings LLC, Carter, and John Does)

552. Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the preceding and subsequent paragraphs as if set forth in full.

553. Since July 2015, New Era and Iconix have maintained a business relationship for the purpose of exploration and negotiation of a global licensing agreement for the ROC NATION brand in International Class 25.

554. In 2015, New Era and Iconix/Studio IP negotiated a proposed license agreement for hats bearing the ROC NATION name and mark for proposed sales in Canada, Europe, Asia, Africa, Latin America, and other places.

555. A possible worldwide licensing deal was also part of the prospective economic advantage considered and potentially realized by Iconix/Studio IP for the period of time following July 1, 2016.

556. RNLLC, Paper Plane Holdings, RAG, Carter, RNAG (as Studio IP's licensee), and any other John Doe entity owned or controlled by RNLLC, RAG, RNAG, and/or Carter and/or companies controlled by them, at all times relevant, were aware of these negotiations.

557. RNLLC, RAG, Carter, Paper Plane Holdings, RNAG (as Studio IP's licensee), and any other John Doe entity owned or controlled by RNLLC, RAG, RNAG, and/or Carter and/or companies controlled by them, at all times relevant, fraudulently and intentionally misrepresented to New Era that one or more of them had the license rights to use, or authority to use, the ROC NATION Mark in Class 25, including for the period of time following July 1, 2016.  These

representations to New Era were made for the purpose of inducing reliance by New Era to agree to launch the New Era Caps and Paper Plane Caps.

558. New Era relied upon these misrepresentations of ownership by entering into an agreement with RNLLC, RAG, Paper Plane Holdings, Carter, RNAG and/or John Does to manufacture, distribute, sell, and promote the New Era Caps and Paper Plane Caps as part of its license arrangement with MLB.

559. The foregoing arrangement usurped Plaintiffs' known economic relationship with New Era and the prospects for a global licensing deal of the identical ROC NATION Mark in Class 25.

560. These Defendants acted with malicious intent and disregard to the business relationship being discussed between Iconix and New Era and in violation of contractual agreements. The New Era – RNAG contract for the New Era Caps and the Paper Plane Caps was intended to invade the business relationship between Iconix and New Era and to dishonestly prevent such business arrangement to be finalized by contract. Mr. Carter was the person and instrument of such intentional interference, directly involved in the New Era – RNAG relationship and directly ignoring the License Agreement and Consent Agreement to his personal benefit, as herein elsewhere described.

561. As a direct and proximate result of such acts, Plaintiffs have been damaged in an amount to be discerned at trial, but not less than $40 million.

## SIXTEENTH CAUSE OF ACTION
### (Breach of Contract Against RNAG and Paper Plane Holdings)

562. Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the preceding and subsequent paragraphs as if set forth in full.

521949.00667/106552055v.1

563.  The "Term" of the License Agreement (defined at Variable Terms (e) therein) expired June 30, 2016, but RNAG, and Paper Plane Holdings (as RNAG's successor in interest) has continued to use or authorize the use of the ROC NATION Mark licensed to RNAG pursuant to the License Agreement, which use is continuing through the date of this pleading.

564.  Pursuant to License Agreement Art. 26, the License Agreement is binding on Paper Plane Holdings, a successor and/or assign of RNAG.

565.  The License Agreement provides at the first "Whereas" clause that Studio IP is "the owner of and/or has the right to use the ROC NATION Mark for certain products in the United States."

566.  Studio IP is a direct party to the License Agreement and Iconix is an intended third-party beneficiary of the License Agreement which was executed by its wholly-owned subsidiary as part of a company-wide strategy to procure and maintain the ROC Family of Marks and related and derivative marks.

567.  The "Territory" under the License Agreement is defined as the United States and its territories and possessions.

568.  Under Art. 1[5] of the License Agreement, Studio IP licensed ROC NATION to RNAG in connection with "Licensed Products" defined therein.

569.  RNAG represented in the License Agreement in Art. 10(a) that it acknowledged and understood "the substantial goodwill and favorable public recognition associated with Licensor and the Licensed Products [including hats] . . . are all critical elements to this Agreement."

570.  Under Art. 10(c) of the License Agreement, RNAG may not manufacture, exhibit, or sell products bearing the ROC NATION Mark without Studio IP's written approval.

_____

[5] All references to License Agreement denote sections of the License Agreement "Standard Terms."

521949.00667/106552055v.1

571.  Pursuant to Art. 10(i) of the License Agreement, RNAG is obligated to inform Studio IP if RNAG desires to have a third party manufacture Licensed Products (including hats and the ROC NATION Apparel), but RNAG remains responsible for the acts of such manufacturers, and is required thereunder to cause such manufacturers to cease any unauthorized use of the ROC NATION Mark.

572.  Pursuant to Art. 11(a) of the License Agreement, RNAG is required to display the ROC NATION Mark "only in such form and manner as used by [Studio IP] or otherwise with [Studio IP's] prior written approval."

573.  Studio IP has never consented to RNAG, Paper Plane Holdings, or any other Defendant's use of the ROC NATION Mark for the New Era Caps, Paper Plane Caps or ROC NATION Apparel (to the extent outside the term and scope of the License Agreement).

574.  Pursuant to Art. 19(a) of the License Agreement, RNAG is obligated to indemnify Studio IP for RNAG's breach of any License Agreement "obligation, covenant or agreement."

575.  Art. 21(d) provides for the survivorship of the rights accorded to Studio IP under the License Agreement.

576.  Art. 21(d) of the License Agreement provides for RNAG to pay Studio IP's legal fees, costs, and expenses in the event of any litigation or unauthorized use of the ROC NATION Mark.

577.  Under Art. 23(a) of the License Agreement, upon its expiration, RNAG's license to use the ROC NATION Mark as provided thereunder terminated, and RNAG was required to discontinue using the ROC NATION Mark "or any variation or simulation thereof."

578.  Under Art. 23(a) of the License Agreement, RNAG agreed to not reproduce nor adapt any design bearing the ROC NATION Mark "for use on merchandise subsequent to the termination of this Agreement."

521949.00667/106552055v.1

579. RNAG and/or RAG and/or RNLLC and/or John Does continue to use or authorize the use through contract or apparent authority or permission the ROC NATION Mark or a "variation or simulation thereof" in connection with the New Era Caps, Paper Plane Caps and ROC NATION Apparel.

580. Under Art. 27(b) of the License Agreement, RNAG consented to waive any immunity with respect to its obligations under the License Agreement.

581. Art. 27(a) of the License Agreement provides that the "Courts shall have exclusive jurisdiction over the subject matter of this Agreement."

582. Pursuant to the License Agreement, which obligation was not relieved by the MSA,

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ Such breaches are continuing.

583. RNAG has under-represented and under-reported royalty payments due to ROC NATION Apparel sales after the License Agreement's expiration that have not been recorded for the benefit of Studio IP or reported to Studio IP, and no royalty payments have been made on such ROC NATION Apparel sales since expiration of the License Agreement. Such sales and under-reporting are not known to Plaintiffs because the knowledge remains in the exclusive possession of RNAG.

584. Such under-reporting of ROC NATION Apparel sales after expiration of the License Agreement constitutes a prior and continuing breach of the License Agreement.

521949.00667/106552055v.1

585. New York law provides that the continued use by a party of a licensed trademark after the license agreement terminates or expires constitutes a breach of contract.

586. RNAG and Paper Plane Holding's use (and/or RNLLC and/or John Does or others at their direction) of the ROC NATION Mark with regard to the New Era Caps and the Paper Plane Caps and/or New Era Caps and/or its license or contract with New Era/MLB violates the letter and spirit of the License Agreement.

587. RNAG and Paper Plane Holding's use (and/or RNLLC and/or John Does or others at their direction) of the ROC NATION Mark with regard to ROC NATION Apparel and/or its license or contract with manufacturers or parties concerning ROC NATION Apparel violates the letter and spirit of the License Agreement.

588. RNAG, as an unauthorized holdover licensee of the ROC NATION Mark, bypassed Studio IP and continues (directly or through Paper Plane Holdings) to use or authorize the use (or conveyed such use or authority to use) of the ROC NATION Mark with regard to the New Era Caps, Paper Plane Caps and/or ROC NATION Apparel, violates the letter and spirit of the License Agreement.

589. RNAG's (and Paper Plane Holdings as a RNAG's successor-in-interest) License Agreement breaches include (by way of example only and without limitation as to the facts of the breach or the provision(s) breached):

    A.    Using or authorizing others to use the ROC NATION Mark in connection with the New Era Caps, Paper Plane Caps, and ROC NATION Apparel beyond the term (and any sell-off aperiod) and scope of the License Agreement, and in violation of the express obligation to discontinue such use at the end of the License Agreement term in violation of Art. 23(a), and in connection with RNAG's trade name, domain name on company purchase orders and the like in violation of License Agreement, Schedule B(b).

    B.    Failing to protect the ROC NATION Mark by allowing it to be used by others in connection with the New Era Caps, Paper Plane Caps, and ROC NATION aApparel, and by not obtaining Studio IP's consent in writing for such use.

C. Failing to secure Studio IP's consent and approval for the New Era Caps, Paper Plane Caps, and ROC NATION Apparel to be manufactured by a third party, and allowing and authorizing the New Era Caps, Paper Plane Caps, and ROC NATION Apparel to be sold, distributed, displayed, exhibited, and promoted without Studio IP's approval, permission, or consent.

D. Reproducing, causing to be reproduced, or allowing to be reproduced or adopting the ROC NATION Mark (and/or any variations or similarities thereof) in connection with the New Era Caps, Paper Plane Caps, and ROC NATION Apparel.

E. Offering for sale, marketing, advertising, and distributing ROC NATION Apparel and the New Era Caps and Paper Plane Caps outside the License Agreement Territory, in violation of Art. 1(d).

F. Distributing ROC NATION Apparel and New Era Caps and Paper Plane Caps outside of the authorized channels of distribution in violation of Arts. 5(a), 14(a).

G. Selling and/or displaying ROC NATION Apparel in connection with other products or merchandise in violation of Arts. 5(b), 9(c) (trade shows).

H. Utilizing the ROC NATION Mark in a manner which was not approved in violation of Art. 11(a).

I. Using concepts, sketches, fabrications, patterns, prints and the like, outside the purposes of the License Agreement and on merchandise after termination, and otherwise failing to return the same to the licensor in violation of Art. 13(a).

J. Failing to use reasonable commercial efforts to prevent unauthorized use of derivatives of the ROC NATION Mark by employees (including, without limitation, employee Emory Jones) in violation of License Agreement, Schedule B(b).

K. Engaging in activity which is inconsistent with, and challenges, Studio IP's ownership in the ROC NATION Mark, and goodwill attached thereto, and which otherwise reduces the value of the ROC NATION Mark, including selling New Ear Caps, ROC NATION Apparel, and suffering the sale of Roc96 Apparel by one or more RNAG employees, in violation of License Agreement, Schedule B(c) and (h).

L. Failing to police infringement of similar trademarks to ROC NATION and report such known usage including the creating, marketing, and sale of Roc96 Apparel in violation of License Agreement Schedule B(f).

M. Displaying the ROC NATION Mark in a form and manner which was not specifically approved by Studio IP (or its successor-in-interest) in violation of Schedule B(i).

521949.00667/106552055v.1

N.   Failing to pay royalty and advertising fees, including the guaranteed minimums for each, or to properly report such royalties as provided in the License Agreement, including Arts. 2 and 8 of the Standard Terms, among other locations.

O.   Failing to take reasonable efforts to prevent counterfeiting in violation of Schedule B(g).

P.   RNAG assigning, transferring and/or delegating all or part of the License Agreement to Paper Plane Holdings in violation of License Agreement Art. 26.

590.   RNAG is obligated to indemnify Studio IP for the costs and fees, including attorneys' fees, incurred by Studio IP in protecting and recovering the ROC NATION Mark from such third-party use, and for any damages sustained by Studio IP as a result of such breach of the License Agreement.

591.   As a direct and proximate result of such breaches, Studio IP, Iconix as a third-party beneficiary, and Icon DE, as a successor-in-interest under the License Agreement, have been damaged in an amount to be discerned at trial but not less than ███████████████████ ████████ and for non-paid (or underpaid) royalties for non-reported ROC NATION Apparel sales after expiration of the License Agreement, and not less than $40 million as a result of RNAG's breach of the License Agreement.  Studio IP is entitled to an injunction preventing such further breach of the License Agreement.

592.   Studio IP and Icon DE also are entitled to attorneys' fees, costs, and expenses in connection with litigation and License Agreement rights under License Agreement Arts. 19(a) and 21(d).

## SEVENTEENTH CAUSE OF ACTION
**(Breach of Implied Covenant of Good Faith and Fair Dealing Against RNAG)**

593.   Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the preceding and subsequent paragraphs as if set forth in full.

521949.00667/106552055v.1

594.  In every contract under New York law there is an implied covenant of good faith and fair dealing.

595.  Pursuant to Art. 28 of the License Agreement Standard Terms, the License Agreement is governed by New York law, and thus RNAG had an implied covenant to not fundamentally rob Studio IP of the benefit of the bargained-for license.

596.  RNAG robbed Studio IP of the license limitations and restrictions by operating, through closely-held third-party companies owned or controlled by (or under common ownership with) RNAG (including, without limitation, RAG, Paper Plane Holdings, RNLLC, and John Does) or under common ownership and control with RNAG, in a way to improperly benefit RNAG, to enable RNAG and/or such parties to have unfettered and unauthorized use of the ROC NATION Mark in Class 25 in violation of Studio IP's rights and to undermine the validity, enforceability, and marketability of the ROC NATION Mark including in  Classes 25 and 35 by Studio IP.

597.  Among other acts, RNAG commingled the ROC NATION Mark with the Paper Plane Logo to convert and usurp the goodwill associated with the ROC NATION Mark.  After seizing upon the goodwill associated with the ROC NATION Mark, RNAG and/or others under RNAG's control or that are under similar control, is using the Paper Plane Logo on Class 25 goods independently, effectively profiting off of the ROC NATION Mark, even without using the mark directly.

598.  RNAG and its principals also used the status as a licensee of the ROC NATION Mark to facilitate launching a competing and confusingly similar Roc96 Apparel line using the same ROC Family of Marks.  Even if not expressly prohibited under the License Agreement, such activities violate the implied covenant of good faith and fair dealing in that contract.

521949.00667/106552055v.1

599.  RNAG improperly created, facilitated, manipulated, or used e-mail, verbal, and other exchanges with Iconix after July 1, 2016 to create the imprimatur or argument that Iconix and RNAG extended or amended the License Agreement in order for RNAG to continue using the ROC NATION Mark and to claim the integrated License Agreement was extended or amended in a writing or by mutual performance or understanding, even though Iconix never consented to extend or amend the expired License Agreement.  Such conduct by RNAG breached the License Agreement's implied covenant of good faith and fair dealing because it sought to invent a means to continue using the ROC NATION Mark under purported cover of the License Agreement.

600.  RNAG's conduct in continuing to use the RON NATION Mark under a manipulated, manufactured, and strained construction of the License Agreement violates the License Agreement's implied covenant of good faith and fair dealing; indeed any construction of the License Agreement which purports to authorize RNAG's use of the ROC NATION Mark after expiration of the License Agreement and after July 1, 2016 violates the License Agreement's implied covenant of good faith and fair dealing.

601.  Such breach is different and separate from the breach of the License Agreement, especially given that RNAG abused the License Agreement to benefit RNAG or Paper Plane Holdings or RNLLC or RAG or other Carter-controlled entities to the exclusion of Plaintiffs and Plaintiffs' ROC NATION Mark.

602.  As a result of such breaches, Plaintiffs have been directly and consequentially damaged and Studio IP is entitled, and RNAG is liable for, damages in an amount to be determined at trial, but not less than $8 million.

521949.00667/106552055v.1

**EIGHTEENTH CAUSE OF ACTION**
**(Fraudulent Conveyance under DCL §§ 273, 273-a, and 276**
**Against RNAG and Paper Plane Holdings)**

603.  Plaintiffs replead, reallege, and incorporate herein by reference the allegations in all of the preceding and subsequent paragraphs as if set forth in full.

604.  Starting on or about April 28, 2017, RNAG conveyed all or some of its assets (including ownership and/or control of all or part Roc Nation Website and/or control of official social media handles, interests in outstanding purchase orders and manufacturing agreements, and the rights to use RNAG intellectual property) to Paper Plane Holdings.

605.  The RNAG transfers to Paper Plane Holdings were rendered without fair consideration, consisting of a fraudulent transfer in violation of N.Y. DCL § 273.

606.  RNAG made these fraudulent conveyances, without fair consideration, at a time when RNAG was a Defendant in this action against claims for money damages, which is fraudulent as to Plaintiffs under DCL § 273-a.

607.  The transfer of the Roc Nation Website and other interests and assets and/or ROC NATION Apparel was executed by RNAG with the actual intent to hinder, delay, or defraud the Plaintiffs in this case, by attempting to create an additional corporate layer after RNAG was caught in the act of infringing on Plaintiff's ROC Family of Marks, including the Roc Nation Mark.

608.  RNAG's intent to hinder, delay or defraud the Plaintiffs is demonstrated by the sudden creation of Paper Plane Holdings the day after RNAG became aware of the lawsuit and the transfer of the Roc Nation Website to the Paper Plane Website just days later.  Such activity is fraudulent as to Plaintiffs as an actual and future creditor of RNAG under N.Y. DCL § 276.

609.  Based on the foregoing fraudulent conveyances, Plaintiffs are entitled to an order setting aside such conveyances, instituting a constructive trust over the fraudulently-conveyed assets, holding Paper Plane Holdings liable to the same extent as RNAG for the claims asserted

521949.00667/106552055v.1

herein, and awarding reasonable attorneys' fees for the costs of this action under N.Y. DCL § 276-a against RNAG and Paper Plane Holdings.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand that a judgment be entered against Defendants and their respective business and commercial partners, agents, employees, and any and all persons in active concert or participation with Defendants, including their affiliates, subsidiaries, successors, and related entities, and any person or entity acting under their supervision, direction, control, or on behalf of any of the Defendants from (i) engaging in the marketing, promotion, offering, rendering, sale, or other use in commerce of any product in Classes 18, 25, or 35 bearing the name, image, or likeness of the ROC Family of Marks, including the ROC NATION Mark or confusingly similar marks; (ii) assisting, aiding, abetting, acting in concert with, or helping any other person or entity in the marketing, promotion, offering, advertising, rendering, or sale or other use in commerce of any products in Classes 18, 25, or 35 bearing the ROC Family of Marks, including the ROC NATION Mark, confusingly similar marks, or its image or likeness; (iii) using or depicting or authorizing others to use or depict the ROC Family of Marks, including the ROC NATION Mark in any confusingly similar way in Classes 25 or 35 products; (iv) engaging in any advertising, marketing, or promotion, including online and through social media, which may deceive the public as to the origin of the ROC Family of Marks, including ROC NATION for Classes 25 and 35 goods or in a way which indicates ROC Family of Marks (individually or collectively), including the ROC NATION Mark, originated or originates with any of the Defendants; (v) using the ROC Family of Marks (individually or collectively), including the ROC NATION Mark, in any manner which dilutes ROC NATION in Class 25 and Class 35 (apparel); (vi) engaging in any continued sales or marketing, advertising, or promotion of Roc96 Apparel, ROC NATION Apparel, and apparel bearing the 'ROC' or 'Roc' surname or the Paper Plane Mark and New Era Caps, Paper Plane Caps or similar goods thereto and

521949.00667/106552055v.1

removing such products from stores, shelves, inventory, and places of sale, including delivering for

destruction such entire inventory of goods bearing the ROC Family of Marks, including the ROC

NATION Mark and the Paper Plane Mark; and (vii) representing by any means, directly or indirectly,

or doing any act or thing intended or calculated or likely to cause confusion, mistake, or to deceive

the public into believing that any of Defendants' goods in Classes 25 or 35, in stores, websites, in

advertising, marketing, or promotion, originated or originates with any party other than Plaintiffs,

and otherwise from competing unfairly with Plaintiffs.  Specifically, Plaintiffs demand relief as

follows:

A.   On the First Cause of Action for Infringement of Registered Trademarks under Lanham Act § 32, 15 U.S.C. § 1114 against RNAG, RAG, RNLLC, Paper Plane Holdings, Carter, and John Does in connection with the ROC NATION Apparel, for injunctive relief and for damages, including profits of these Defendants and the costs of this action including attorneys' fees and punitive damages;

B.   On the Second Cause of Action for Infringement of a Registered Trademark in violation of Lanham Act § 32, 15 U.S.C. § 1114 in connection with the New Era Caps and Paper Plane Caps against RNAG, Paper Plane Holdings, Carter, RAG, RNLLC, New Era, Lids, MLB, and SF Giants for injunctive relief and for damages (including under 15 U.S.C. §§ 1117(a), 1117(b), 1117(c)), including profits of Defendants and the costs of this action including attorneys' fees and punitive damages, and damages under 15 U.S.C. § 1118;

C.   On the Third Cause of Action for Common Law Trademark Infringement against RNAG, Carter, Paper Plane Holdings, RAG, RNLLC, and/or John Does for injunctive relief and for damages, including profits of Defendants, and compensatory damages sustained by Plaintiffs and the costs of this action including attorneys' fees.  Plaintiffs demand an order seizing the infringing goods;

D.   On the Fourth Cause of Action for Common Law Trademark Infringement against RNAG, Carter, Paper Plane Holdings, RAG, RNLLC, New Era, Lids, MLB, and SF Giants concerning the New Era Caps and the Paper Plane Caps for injunctive relief and for damages, including profits of Defendants, and compensatory damages sustained by Plaintiffs and the costs of this action including attorneys' fees.  Plaintiffs demand an order seizing the offending goods;

521949.00667/106552055v.1

E.     On the Fifth Cause of Action for Common Law Infringement against COS and MadeWorn concerning the Roc96 Apparel, for injunctive relief and for damages, including profits of Defendants, and compensatory damages sustained by Plaintiffs and the costs of this action including attorneys' fees. Plaintiffs demand an order seizing the offending goods;

F.     On the Sixth Cause of Action for False Designation of Origin, Passing-Off, Deceptive Trade Practices, and Unfair Competition under Lanham Act § 43(a), 15 U.S.C. § 1125(a) against RNAG, RAG, RNLLC, Carter, New Era, MLB, and SF Giants, for injunctive relief and for damages (treble damages under the Lanham Act), including profits of Defendants and the costs of this action including attorneys' fees, treble damages, prejudgment interest, and an accounting;

G.     On the Seventh Cause of Action for False Designation of Origin, Passing-Off, and Unfair Competition under Lanham Act § 43(a), 15 U.S.C. § 1125(a) against COS, MadeWorn, Burke, and Jones, for injunctive relief and for damages (treble damages under the Lanham Act), including profits of Defendants and the costs of this action including attorneys' fees, prejudgment interest and an accounting;

H.     On the Eighth Cause of Action for Trademark Dilution of the ROC Family of Marks against all Defendants except Burke and Jones under Lanham Act § 43(c), 15 U.S.C. § 1125(c) for injunctive relief and for damages (treble damages under the Lanham Act), including profits of Defendants and the costs of this action including attorneys' fees, prejudgment interest, and an accounting.   Plaintiffs demand an order seizing the offending goods, packaging, advertising, and promotional materials;

I.     On the Ninth Cause of Action for Unfair Competition against all Defendants except SF Giants under New York common law for injunctive relief and damages, including profits of Defendants and the attendant costs of sales and profits, and including the costs of this action, attorneys' fees, and prejudgment interest.   Plaintiffs seek punitive damages for these Defendants' intentional misconduct as alleged herein;

J.     On the Tenth Cause of Action for Unjust Enrichment against all Defendants for damages, including fees and prejudgment interest;

K.     On the Eleventh Cause of Action for Breach of N.Y. General Business Law §§ 349-350 against all Defendants for statutory damages, including, to the extent recoverable under the statutes, restitution and profits of Defendants and the costs of this action including attorneys' fees, prejudgment interest.   Plaintiffs demand treble damages under N.Y. G.B.L. § 349(h);

L.     On the Twelfth Cause of Action for Breach of N.Y. General Business Law § 360-I against all Defendants except Jones and Burke for injunctive relief and

521949.00667/106552055v.1

for damages to Plaintiffs' business reputation and dilution of their intellectual property, including the costs of this action and attorneys' fees;

M.    On the Thirteenth Cause of Action for an Accounting against RNAG, RNLLC, RAG, COS, and Paper Plane Holdings, including an order directing, at Defendants costs, an accounting reflecting Defendants sales, costs, and royalty information as to the subject offending sales and business concerning the ROC Family of Marks and the ROC NATION Mark;

N.    On the Fourteenth Cause of Action against Carter for Tortious Interference with Contract, for damages and the costs of this action including attorneys' fees;

O.    On the Fifteenth Cause of Action for Tortious Interference with Prospective Business Advantage against RNAG, RAG, RNLLC, Paper Plane Holdings LLC, Carter, and John Does, for damages, including profits of Defendants and the costs of this action including attorneys' fees;

P.    On the Sixteenth Cause of Action for Breach of Contract against RNAG and Paper Plane Holdings, for damages as alleged under such claim, including profits of RNAG and Paper Plane Holdings for the sale of goods infringing on the ROC Family of Marks, including the ROC NATION Mark and for sales of all other goods bearing the ROC surname including the New Era Caps, Paper Plane Caps, and ROC NATION Apparel, and this costs of the action including attorneys' fees;

Q.    On the Seventeenth Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing against RNAG, for direct and consequential damages, the costs of this action including attorneys' fees; and

R.    On the Eighteenth Cause of Action for Fraudulent Conveyance under N.Y. DCL §§ 273, 273-a, and 276 against RNAG and Paper Plane Holdings, a construction trust over Paper Plane Holdings' assets, an order setting aside the fraudulent conveyances, declaring Paper Plane Holdings liable to the same extent as RNAG, awarding direct and consequential damage, costs and attorneys' fees, including under N.Y. DCL § 276-a.

Plaintiffs seek all of the damages and relief, injunctive and otherwise, available to Plaintiffs by law under and pursuant to all of the claims in this action and arising from all of the allegations in this pleading and as may be adduced in this action through discovery and further investigation.

Dated: New York, New York
         January 12, 2018

BLANK ROME LLP

Page 137 of 139

 /s/ Samuel D. Levy
Samuel D. Levy (SDL9271)
slevy@blankrome.com
Craig M. Flanders (CF2009)
cflanders@blankrome.com
The Chrysler Building – 405 Lexington Ave.
New York, New York 10174-0208
Firm:   212-885-5000
Direct: 212-885-5352
Fax:    212-202-6187

*Counsel for Plaintiffs Iconix Brand Group,
Inc.; Studio IP Holdings, LLC, and Icon DE
Holdings, LLC*

521949.00667/106552055v.1

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

Dated: New York, New York
       July __, 2017

BLANK ROME LLP

 /S/ Samuel D. Levy
Samuel D. Levy (SDL9271)
slevy@blankrome.com
Craig M. Flanders (CF2009)
cflanders@blankrome.com
The Chrysler Building – 405 Lexington Ave.
New York, New York 10174-0208
Firm:   212-885-5000
Direct: 212-885-5352
Fax:    212-202-6187

*Counsel for Plaintiffs Iconix Brand Group, Inc.; Studio IP Holdings, LLC, and Icon DE Holdings, LLC*

521949.00667/106552055v.1