Alex Spiro
Andrew J. Rossman
Jordan Harap
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Fl.
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Defendant Shawn C. Carter*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ICONIX BRAND GROUP, INC., STUDIO IP HOLDINGS, LLC, and ICON DE HOLDINGS, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> ROC NATION APPAREL GROUP, LLC; ROC APPAREL GROUP LLC; ROC NATION, LLC; SHAWN C. CARTER a/k/a JAY-Z; NEW ERA CAP COMPANY, INC. d/b/a NEW ERA; MAJOR LEAGUE BASEBALL PROPERTIES, INC.; HAT WORLD, INC. d/b/a LIDS SPORTS GROUPS; SAN FRANCISCO BASEBALL ASSOCIATES LLC d/b/a SAN FRANCISCO GIANTS; CIRCLE OF SUCCESS LLC; MADEWORN HOLDINGS LLC; EMERY JONES; KAREEM BURKE; PAPER PLANES IP HOLDINGS, LLC; and JOHN DOES 1-5, <br><br> Defendants. | 17 Civ. 3096 (AJN) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SHAWN C. CARTER'S PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND .............................................................................................................3

     A.    Plaintiffs' Allegations ...................................................................................3

     B.    Procedural History ........................................................................................6

ARGUMENT ..................................................................................................................6

I.     PLAINTIFFS FAIL TO STATE A CLAIM AGAINST CARTER FOR UNJUST
ENRICHMENT (COUNT 10)........................................................................................7

     A.    The Unjust Enrichment Claim Is Duplicative.........................................................7

     B.    Against Carter, Plaintiffs Fail To Plead The Elements Of Unjust
Enrichment.....................................................................................................8

          1.    Plaintiffs Fail To Plead Carter's Personal Enrichment, Their
Detriment, Or Any Connection Between The Two ...................................9

          2.    Carter Cannot Be Liable For Benefits That Others May Have
Received................................................................................................11

II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST CARTER FOR BREACH
OF NEW YORK GENERAL BUSINESS LAW (COUNT 11).......................................12

III.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST CARTER FOR
TORTIOUS INTERFERENCE WITH CONTRACT (COUNT 14)...............................14

     A.    Plaintiffs Fail To Allege That Carter Acted Solely Outside The Scope Of
His Corporate Authority For His Own Personal Gain ...........................................14

     B.    Plaintiffs Fail To Allege Facts Showing That Carter Acted Maliciously,
Fraudulently, Or Illegally...............................................................................15

IV.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST CARTER FOR
TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC
RELATIONS (COUNT 15)..........................................................................................17

CONCLUSION................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................... 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................ 6, 7

*Besicorp Ltd. v. Kahn*,
  290 A.D.2d 147 (3rd Dep't 2002)................................................................ 17

*Bilinski v. Keith Haring Foundation, Inc.*,
  96 F. Supp. 3d 35 (S.D.N.Y. 2015) .............................................................. 9

*Carvel Corp. v. Noonan*,
  350 F.3d 6 (2d Cir. 2003)........................................................................... 17

*Carvel Corp. v. Noonan*,
  3 N.Y.3d 182 (2004) ................................................................................. 18

*Catskill Dev. LLC v. Park Place Entertainment Corp.*,
  547 F.3d 115 (2d Cir. 2008)....................................................................... 18

*Chevron Corp. v. Donzigeri*,
  871 F. Supp. 2d 229 (S.D.N.Y. 2012).......................................................... 11

*Corsello v. Verizon N.Y., Inc.*,
  18 N.Y.3d 777 (2012) ............................................................................. 7, 8

*De Blasio v. Merrill Lynch & Co, Inc.*,
  2009 WL 2242605 (S.D.N.Y. Jul. 27, 2009) ................................................ 10

*Fisher v. APP Pharm., LLC*,
  783 F. Supp. 2d 424 (S.D.N.Y. 2011)......................................................... 19

*Greene v. Gerber Prods. Co.*,
  262 F. Supp. 3d 38 (E.D.N.Y. 2017) ............................................................ 8

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
  50 N.Y.2d 183 (1980) ............................................................................... 18

*Hofmann v. Dist. Council 37, Am. Fed'n of State, Cty., & Mun. Employees, AFL-CIO*,
  2002 WL 31045858 (S.D.N.Y. May 9, 2002) ............................................... 17

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
  679 F. Supp. 2d 395 (S.D.N.Y. 2013).............................................. 14, 15, 16

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007) ............................................................................................ 7

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ........................................................................ 15

*Kay v. Grossman*,
    202 F.3d 611 (2d Cir. 2000) .......................................................................................... 8

*Laydon v. Mizuho Bank, Ltd.*,
    2014 WL 1280464 (S.D.N.Y. Mar. 28, 2014) ............................................................ 10

*LBB Corp. v. Lucas Distrib., Inc.*,
    2008 WL 2743751 (S.D.N.Y. July 14, 2008) ...................................................... 12, 13

*Legurnic v. Ciccone*,
    63 F. Supp. 3d 241 (E.D.N.Y. 2014) ........................................................................ 11

*Lombard v. Booz-Allen & Hamilton, Inc.*,
    280 F.3d 209 (2d Cir. 2002) ...................................................................................... 18

*Manchanda v. Google*,
    2016 WL 6806250 (S.D.N.Y. Nov. 16, 2016) ............................................................ 10

*Masefield AG v. Colonial Oil Indus.*,
    2006 WL 346178 (S.D.N.Y. Feb. 15, 2006) ........................................................ 16, 17

*NBT Bancorp, Inc. v. Fleet/Norstar Fin. Group, Inc.*,
    87 N.Y.2d 614 (1996) ................................................................................................ 18

*Network Enterprises, Inc. v. Reality Racing, Inc.*,
    2010 WL 3529237 (S.D.N.Y. Aug. 24, 2010) .......................................................... 10

*New World Solutions, Inc. v. NameMedia, Inc.*,
    150 F. Supp. 3d 287 (S.D.N.Y. 2015) .................................................................. 12, 13

*Poller v. BioScrip, Inc.*,
    974 F. Supp. 2d 204 (S.D.N.Y. 2013) ...................................................................... 10

*Pulse Creations, Inc. v. Vesture Group, Inc.*,
    154 F. Supp. 3d 48 (S.D.N.Y. 2015) ........................................................................ 12

*Rey-Willis v. Citibank, N.A.*,
    2003 WL 21714947 (S.D.N.Y. July 23, 2003) ................................................ 13, 14, 19

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ................................................................................ 16, 18

*Ruha v. Guior*,
    277 A.D.2d 116 (1st Dep't 2000) .............................................................................. 16

*Sperry v. Crompton Corp.*,
    8 N.Y.3d 204 (2007) .................................................................................................... 9

*Usov v. Lazar,*
　　2013 WL 3199652 (S.D.N.Y. June 25, 2013) ................................................................. 11

*Weisblum v. Prophase Labs, Inc.,*
　　88 F. Supp. 3d 283 (S.D.N.Y. 2015).......................................................................... 7

## STATUTORY AUTHORITIES/RULES

Fed. R. Civ. P. 12 ......................................................................................................... 6, 13

Fed. R. Civ. P. 9 ............................................................................................. 3, 14, 17, 19

N.Y. Gen. Bus. Law § 349.............................................................................................. passim

N.Y. Gen. Bus. Law § 350.............................................................................. 2, 5, 12, 14

Defendant Shawn C. Carter respectfully submits this Memorandum of Law in support of his Motion (the "Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts 10, 11, 14, and 15 of the Second Amended Complaint (Dkt. No. 104) filed by Plaintiffs Iconix Brand Group, Inc., Studio IP Holdings, LLC, and Icon DE Holdings, LLC (together, "Plaintiffs").

## PRELIMINARY STATEMENT

If this case amounts to anything, it is a trademark dispute between companies. The thrust of Plaintiffs' Second Amended Complaint appears to be that the "ROC Defendants" (Roc Nation Apparel Group, LLC, Roc Apparel Group LLC, and Roc Nation, LLC) and affiliated companies developed and commercialized an alleged "ROC" brand; they sold some intellectual property rights to Plaintiffs; and Plaintiffs' limited rights have been infringed. While Plaintiffs claim entitlement to a "ROC Family of Marks," the truth is, there is no such "Family of Marks." Rather, Plaintiffs' rights to the "ROC" name are contractually cabined, and Plaintiffs never obtained the right to use the word "ROC" outside of limited circumstances. The ROC Defendants, by contrast, have been the senior users of the word "ROC" in trademarks and brands for years and are entitled to broad use of the word going forward. This is the crux of the dispute.

Despite this, Plaintiffs also bring claims individually against Defendant Shawn Carter, more commonly known as the artist JAY-Z. Apart from conclusory allegations, Plaintiffs bring these claims solely on the basis of Carter's association with the ROC Defendants. They no doubt also do so because he is famous. In addition to seeking trademark liability against Carter for the alleged infringement of the ROC Defendants, Plaintiffs tack on four claims alleging unjust enrichment, violations of New York General Business Law, and tortious interference with contract and prospective relations. For all his celebrity wattage, Carter does not belong in this case. While that is better demonstrated at summary judgment, the four catchall claims should be dismissed now because they are either duplicative of the trademark claims or fall well short of alleging the pleading

elements necessary to be sustained at this stage.  Dismissal of these claims, moreover, would properly narrow Plaintiffs' kitchen-sink complaint to the actual substance of this dispute—the trademark issues.

**I.**   The unjust enrichment claim should be dismissed as an initial matter because it is duplicative of Plaintiffs' other claims.  It seeks recovery for the same harm underlying Plaintiffs' trademark, contract, and unfair competition claims and thus merely restates them.  Even if not duplicative, the claim still fails because Plaintiffs do not allege the essential elements of unjust enrichment, namely that Carter was enriched at their expense.  All they plead is that the alleged trademark infringement enriches the ROC Defendants and certain other non-party management companies that Carter is associated with.  But the alleged enrichment, if any, goes to the companies, not to Carter, and thus there are no benefits to disgorge from Carter personally.  Dismissal is further warranted because the alleged enrichment—that the infringement of Plaintiffs' limited rights to use the ROC name on clothing leads more clients to sign with the ROC management companies—is far too speculative to state a claim.

**II.**  Plaintiffs fare no better on their claim alleging trademark violations pursuant to Sections 349 and 350 of New York General Business Law.  Claims involving trademark violations are not cognizable under these consumer protection statutes unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution.  Plaintiffs' claims fail under this standard because they do not allege any specific injury to the public and instead simply rely on the harms that would result from an everyday trademark violation.

**III.**  The tortious interference with contract claim should be dismissed because Plaintiffs fail to satisfy the enhanced pleading requirements necessary to state a claim against Carter personally. In particular, the parties to the contracts at issue included companies of which Carter is an officer or

member.  Plaintiffs also allege that Carter benefitted from the contracts he obstructed.  New York law recognizes that these allegations—of a company officer interfering with a contract under which the officer benefits—paint an implausible scenario.  Thus, to state a claim for tortious interference against Carter, Plaintiffs have to allege facts showing that Carter acted outside his official capacity, purely for his own gain, ***and*** with malice, fraud, or illegality.  Plaintiffs' claim fails because they plead the exact opposite.  They allege that Carter acted in furtherance of the business interests of the companies whose contracts he allegedly hindered, and that he was motivated by profit rather than malice.

**IV.**  Plaintiffs' claim for tortious interference with prospective business relations should be dismissed for similar reasons.  Plaintiffs claim that various Defendants, including Carter, interfered with Plaintiffs' ongoing dealings with Defendant New Era Cap Company, Inc. ("New Era").  For this claim to survive the pleading stage, Plaintiffs have to allege either that Carter acted "solely" out of malice or interfered using wrongful means.  Plaintiffs do neither.  Any assertion that Carter acted ***solely*** out of malice is completely contradicted by Plaintiffs' allegation that Carter acted at least in part to further his business interests.  Plaintiffs also do not allege wrongful conduct.  Although they claim that fraud was used to induce New Era to stop dealing with them, they do not allege any specific facts to support a claim for the fraud, and, failing to differentiate among various Defendants in the allegations, they do not even identify which Defendants made any misstatements or if Carter made any.  Plaintiffs' fraud allegations thus do not satisfy the particularity requirements of Rule 9(b), and the claim should be dismissed.

## **BACKGROUND**

### A.    **Plaintiffs' Allegations**

Plaintiffs are Iconix Brand Group, Inc., a brand-management company, and two of its wholly-owned subsidiaries.  Second Amended Complaint ("SAC") ¶ 13.  In 2007, Plaintiffs bought

certain rights to use the "ROC" name that was made popular by Carter, a music artist, and companies with which he is affiliated. *Id.* at ¶ 79. Although Plaintiffs characterize their rights as relating to the "ROC Family of Marks," they do not dispute that their ability to use the ROC name is actually limited, and that the ROC Defendants have the right to use the name in many areas such as music and promotion. *Id.* at ¶ 479.

Plaintiffs also admit that Carter is singularly responsible for the popularity of the word ROC. *See, e.g.*, *id.* at ¶¶ 43, 62. Carter first used the ROC surname in 1996 when he founded the record label Roc-A-Fella Records, and over the next decade he used that word in developing successful brands in various business sectors, including apparel, accessories, music, and artist and sports management. *See id.* at ¶¶ 39, 42-43, 47-48, 50.

In the Second Amended Complaint, Plaintiffs assert 18 claims, alleging that Defendants are infringing on Plaintiffs' rights to the ROC name or engaging in unfair competition, among other things. Plaintiffs also sue Carter personally in 12 of these claims. *See id.* at Counts 1-4, 6, 8-12, 14, and 15. Plaintiffs' principal allegations against Carter are that he controlled the ROC Defendants and is thus personally liable for their alleged infringement.

The Second Amended Complaint, however, shows that Plaintiffs have no facts to support the allegation that Carter controlled the ROC Defendants and directed the allegedly infringing activities. Plaintiffs readily admit, for example, that their claims are based solely on Carter's being the "face" of the companies. *Id.* at ¶ 487. In the same vein, Plaintiffs concede they have no idea "the extent to which Carter directly controls the day-to-day activities." *Id*. Consistent with these admissions, Plaintiffs' allegations of control are entirely conclusory. While numerous, the allegations are identical in (their lack of) substance: they merely recite the legal requirement of control and are unaccompanied by even a single fact. *See, e.g.*, *id.* at ¶¶ 71, 73, 76, 122, 124, 154, 199. And

implicitly recognizing the lack of factual support to claim that Carter directed any infringing activity, Plaintiffs take the novel approach of asserting that Carter should also be held personally liable for his "inaction." *See, e.g.*, *id.* at ¶ 76.

As a fallback to these control claims against Carter, Plaintiffs assert four claims for (i) unjust enrichment, (ii) violation of Sections 349 and 350 New York General Business Law, (iii) tortious interference with contract, and (iv) tortious interference with prospective economic relations. *See id.* at Counts 10, 11, 14 and 15 (respectively).  This Motion is directed to these four claims.

As to the unjust enrichment claim, the alleged harm is the exact same harm underlying "the [other] claims alleged" in the Second Amended Complaint, namely Defendants' receipt of benefits "through deceptive business practices, infringement, [and] acts of deceit."  *Id.* at ¶ 475.  Plaintiffs also do not allege facts showing that Carter received any personal benefit.  Instead, they only allege that various companies affiliated with Carter may have benefitted from the alleged infringement. *See id.* at ¶¶ 478-85.

Regarding the claim under New York General Business Law, Plaintiffs assert that Carter breached a consumer protection statute that protects against harms to the public.  But they do not allege any public harm.  *See id.* at ¶¶ 506-07, 513-15.

Finally, as to the tortious interference claims, Plaintiffs allege that Carter interfered, first, with three agreements they had with certain ROC Defendants and a related non-party, Rocawear Licensing LLC,[1] and, second, with a potential contract Plaintiffs had with Defendant New Era.  *See id.* at ¶¶ 544, 549, 559.  Despite claiming that Carter interfered with his companies' contracts, Plaintiffs do not allege that Carter acted with malice, fraud, or the like or that he operated purely for personal gain.  Nor do Plaintiffs allege that Carter made any threats to or defrauded New Era before

---

[1]  The three agreements are referred to in the Second Amended Complaint as the "Asset Purchase Agreement" (or "APA"), the "Consent Agreement," and the "License Agreement."  SAC ¶ 537.

it stopped dealing with Plaintiffs.  The sum of Plaintiffs' allegations is instead that Carter acted in his role as a corporate officer and to further the business interests of his companies.  *See id.* at ¶¶ 122, 155, 159, 342, 539, 540.

### B.    Procedural History

The Second Amended Complaint marks Plaintiffs' third attempt to state a claim against Carter in his individual capacity.  On April 27, 2017, Plaintiffs filed their initial complaint, asserting 13 claims for trademark violations, unfair competition, unjust enrichment, and others.  *See* Complaint (Dkt. No. 1).  Three months later, Plaintiffs filed their first amended complaint.  *See* First Amended Complaint (Dkt. No. 30).  Carter moved to dismiss that complaint on October 27, 2017 (*see* Dkt. No. 73), and, rather than respond to that motion, Plaintiffs filed the Second Amended Complaint on January 17, 2018.[2]

## ARGUMENT

Under Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed if it fails to allege "sufficient factual matter" that, if "accepted as true, … 'state[s] a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible only if the alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  By contrast, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555) (citations omitted).

---

[2]   A new, correctly-redacted version of the Second Amended Complaint was filed on January 29, 2018.  *See* Second Amended Complaint (Dkt. No. 104).

This plausibility standard is intended to avoid the "potentially enormous expense of discovery in cases with no reasonably founded hope that the discovery process will reveal relevant evidence to support [plaintiff's] claim." *Twombly*, 550 U.S. at 559-560 (internal quotation omitted); *see also id.* at 570 (stating that where "plaintiffs … have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed"); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50, n.4 (2d Cir. 2007) (plausibility standard designed to ensure district courts "retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed") (internal quotation marks omitted).

Under these well-settled pleading standards, Counts 10, 11, 14, and 15 should be dismissed with prejudice.

## I.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST CARTER FOR UNJUST ENRICHMENT (COUNT 10)

Plaintiffs' unjust enrichment claim against Carter should be dismissed from the outset because it is duplicative of the contract, unfair competition, and trademark claims. *Infra*, § I.A. The claim should also be dismissed for the independent reason that Plaintiffs fail to plead that Carter was personally enriched at their expense. *Infra*, § I.B.

### A.   The Unjust Enrichment Claim Is Duplicative

New York law is crystal clear: "[A]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). The claim is thus "available only in unusual situations when … circumstances create an equitable obligation running from the defendant to the plaintiff" even though "the defendant has not breached a contract nor committed a recognized tort." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (quoting *Corsello*, 18 N.Y.3d at 790).

Here, Plaintiffs' unjust enrichment claim duplicates their trademark, contract, and unfair competition claims.  Indeed, the Court need not parse the allegations of the Second Amended Complaint to see the duplication; Plaintiffs admit it.  They expressly allege that the basis of the unjust enrichment claim is "***the*** [***other***] ***claims alleged herein***."  SAC ¶ 475 (emphasis added).  They also allege that the enrichment comes from defendants' having retained money and goodwill "through deceptive business practices, infringement, [and] acts of deceit."  *Id.*  Thus, according to Plaintiffs themselves, the unjust enrichment claim is spun out of existing claims.

Courts routinely dismiss such "catchall cause[s] of action" that are being held in reserve for "when others fail."  *Corsello*, 18 N.Y.3d at 790; *see Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 77 (E.D.N.Y. 2017) (dismissing unjust enrichment claim that was "based on the same allegations as those set forth in support of … other claims."); *see also Corsello*, 18 N.Y.3d at 791 ("[I]f plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects.").  The same result should follow here, and the unjust enrichment claim should be dismissed for this reason alone.

### B.    Against Carter, Plaintiffs Fail To Plead The Elements Of Unjust Enrichment

Even if the unjust enrichment claim were not duplicative, it should still be dismissed because Plaintiffs fail to plead either that Carter was personally enriched or that any enrichment came at their expense.[3]  *Infra*, § I.B.1.  Plaintiffs, moreover, do not remedy this defect by lumping Carter with the other Defendants and claiming that all Defendants were unjustly enriched.  This is so because Carter cannot be liable for the enrichment of another person or company.  *Infra*, § I.B.2.

---

[3]   "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution."  *Kaye v. Grossman*, 202 F.3d 611, 613 (2d Cir. 2000) (citation and quotation marks omitted).

1.     <u>Plaintiffs Fail To Plead Carter's Personal Enrichment, Their Detriment, Or Any Connection Between The Two</u>

The only enrichment Plaintiffs allege Carter personally received is that his businesses have attracted more customers and clients.  SAC ¶¶ 479-80.  Carter has interests, for example, in Tidal, a media provider; ROC Nation Boxing, a boxing promoter; ROC Nation Management and Publishing, a talent and publishing agency; and ROC Nation Sports Management, a sports agency.  *See id.* According to Plaintiffs, the misuse of their limited right to the ROC name generates more publicity for brands over which they have no rights; this in turn causes more artists to sign with ROC Nation Management, more boxers to hire ROC Nation Boxing, and so on.  This theory of Carter's enrichment fails for multiple reasons.

***First***, the alleged benefit went to companies that Carter is affiliated with, not to Carter himself.  As a result, Plaintiffs do not allege any enrichment that could be disgorged from Carter personally.  Without this, there is no basis for a claim.  *Infra*, § I.B.2 (showing that a defendant cannot be liable for the unjust enrichment of other defendants).

***Second***, the Court need not indulge the implausible premise that underlies Plaintiffs' unjust enrichment claim, even at the motion to dismiss stage.  Plaintiffs' theory is that a boxer sees hats with ROC logos, and then is inspired to contract with ROC Nation Boxing to promote his fights.  This is precisely the type of "indirect and hypothetical" benefit that cannot support an unjust enrichment claim.  *See Bilinski v. Keith Haring Foundation, Inc.*, 96 F. Supp. 3d 35, 52 (S.D.N.Y. 2015) (where defendant art seller interfered with plaintiff's exhibition of art to promote defendant's own works, plaintiff failed to allege unjust enrichment because "[t]he benefit acquired by the [defendant]—the alleged increase in value of [defendant's works]—is not a benefit flowing directly to the defendants at plaintiffs' expense."); *see also Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215 (2007) (claim dismissed where connection between benefit and harm was "simply too attenuated to

support such a claim"); *De Blasio v. Merrill Lynch & Co, Inc.*, 2009 WL 2242605, at *40 (S.D.N.Y. Jul. 27, 2009) (claim dismissed where allegations lacked "factual basis"); *Network Enterprises, Inc. v. Reality Racing, Inc.*, 2010 WL 3529237, at *8 (S.D.N.Y. Aug. 24, 2010) (claim dismissed where benefit was "entirely speculative"); *see also Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 236 (S.D.N.Y. 2013) ("To plead a plausible claim to relief on a theory of unjust enrichment, plaintiffs must show a causal nexus between a defendant's enrichment and their own expense that goes beyond mere correlation.") (citation and quotation marks omitted); *Laydon v. Mizuho Bank, Ltd.*, 2014 WL 1280464, at *13 (S.D.N.Y. Mar. 28, 2014) (similar).

*Third*, even if one were to assume purely for purposes of this motion that it is plausible that the Carter-affiliated businesses profit from publicity generated from the ROC logo, that does not mean the allegedly infringing uses of the ROC logo caused any alleged enrichment. Under Plaintiffs' own theory, Carter's enrichment is just as, if not more, likely to come from Plaintiffs' and Carter's *lawful* uses of the ROC surname. Starting with the undisputed fact that Plaintiffs have only a limited right to the ROC name, there is nothing wrong with Carter's calling the boxing promotion company "ROC Nation Boxing," for example, while Plaintiffs sell clothes with the "ROC" logo. Given this, any benefit that supposedly accrues to Carter could be attributable to either of these lawful uses. Thus, when a boxer signs with ROC Nation Boxing, the boxer may be doing so because of Carter's undisputedly permitted ventures, or another reason entirely. In any case, Plaintiffs fail to allege any facts showing that this hypothetical boxer made a decision because of the infringing use. The result is that there is no "clear relationship between [Carter's] profit and [Plaintiffs'] injury," and Plaintiffs fail to state a claim. *Manchanda v. Google*, 2016 WL 6806250, at *6 (S.D.N.Y. Nov. 16, 2016) (dismissing unjust enrichment claim).

2.      Carter Cannot Be Liable For Benefits That Others May Have Received

Plaintiffs also make the conclusory allegation that all Defendants, including Carter, received unjust benefits from the alleged infringement. *See* SAC ¶¶ 475-77. This conclusory allegation fails on two fronts. **First**, as shown earlier, *supra*, § I.B.1, Carter received no personal benefits from the infringement.

**Second**, Plaintiffs cannot resuscitate their claim against Carter by referring to benefits other Defendants allegedly received. Plaintiff cannot do so for the simple reason that Carter cannot be liable for the unjust enrichment of others. Under New York law, unjust enrichment requires that the "[d]efendant received a benefit." *Legurnic v. Ciccone*, 63 F. Supp. 3d 241, 248 (E.D.N.Y. 2014); *see Chevron Corp. v. Donzigeri*, 871 F. Supp. 2d 229, 260 (S.D.N.Y. 2012) ("A complaint does not state a cause of action in unjust enrichment if it fails to allege that defendant received something of value which belongs to the plaintiff."). Thus, it is not enough that the defendant is merely alleged to be associated with other defendants who may have received a benefit. *See Usov v. Lazar*, 2013 WL 3199652, at *6 (S.D.N.Y. June 25, 2013) (unjust enrichment claim dismissed because "Plaintiff fails to substantiate that Mr. Lazar acted in anything other than in his capacity as an officer" of company that was enriched).

But that is the most Plaintiffs allege against Carter. Indeed, the only plausible reading of the Second Amended Complaint is that Carter is connected to the alleged unjust enrichment of the other Defendants solely by virtue of Plaintiffs' having treated all Defendants as one through group pleading. Because Plaintiffs do not allege facts showing that Carter received any benefits personally, and they cannot as a matter of law rely on the benefits that others allegedly received to state a claim against him, the unjust enrichment claim should be dismissed.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST CARTER FOR BREACH OF NEW YORK GENERAL BUSINESS LAW (COUNT 11)

Plaintiffs' claim under Sections 349 and 350 of New York General Business Law fail because Plaintiffs do not plead an injury to the public as required by the statute.[4]

"Under New York law, claims involving trademark violations are not cognizable under [New York General Business Law] §§ 349 or 350 unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution." *New World Solutions, Inc. v. NameMedia, Inc.*, 150 F. Supp. 3d 287, 331 (S.D.N.Y. 2015) (citation omitted); *see also Pulse Creations, Inc. v. Vesture Group, Inc.*, 154 F. Supp. 3d 48, 58 (S.D.N.Y. 2015) ("The majority view [in the Second Circuit] is that trademark infringement claims are not cognizable under … § 349 unless there is specific and substantial injury to the public interest over and above the ordinary trademark infringement.") (citation and quotation marks omitted).

"Even in evaluating a Rule 12(b)(6) motion, claims that arise out of a trademark infringement action, and disputes between competitors where the core of the claim is harm to another business as opposed to consumers, [are] situations which courts have found to reflect a public harm that is too insubstantial to satisfy the pleading requirements." *New World Solutions*, 150 F. Supp. 3d at 331 (citation and quotation marks omitted); *see also Pulse Creations*, 154 F. Supp. 3d at 58 (similar). "[C]ourts have generally held that the type of injury needed to sustain a trademark violation under these provisions is limited to one that would trigger [FTC] intervention … such as potential danger

---

[4]   These sections of New York General Business Law are consumer protection statutes.  *See LBB Corp. v. Lucas Distrib., Inc.*, 2008 WL 2743751, at *2 (S.D.N.Y. July 14, 2008).  Section 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are ... unlawful."  N.Y. Gen. Bus. Law § 349(a).  Section 350 in turn provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."  N.Y. Gen. Bus. Law § 350.

to the public health or safety." *New World Solutions*, 150 F. Supp. 3d at 331 (citation and quotation marks omitted).

Here, Plaintiffs fail to plead any public harm, let alone the "specific and substantial injury … over and above the ordinary trademark infringement" necessary to survive a motion to dismiss. Plaintiffs of course make the conclusory assertion that Defendants' conduct is causing public harm. *See* SAC ¶ 246 ("Defendants' deceptive conduct is harming the public in addition to harming the Plaintiffs and their brands."); *id.* at ¶ 252 ("Defendants' unauthorized acts … will harm and continue to harm the public unless permanently restrained by the Court."); SAC ¶ 253 (same). But this is just Plaintiffs' say-so, and they do not allege any facts concerning how the alleged infringement actually harms the public, which is plainly insufficient to state a claim.

Where Plaintiffs do make an effort to allege a particular harm, they merely describe the harm ***to them*** from the alleged trademark infringement. They allege that consumers (i) are deceived that goods "are not authentic to Plaintiffs," SAC ¶ 513; (ii) are misled as to the origin and source of Plaintiffs' products, *see id.* at ¶ 514; and (iii) are misled into believing "anything and everything bearing the ROC NATION name and brand or even the ROC surname is related to Jay-Z," *id.* at ¶ 516. These allegations merely describe consumer confusion—an injury that is alleged by every trademark plaintiff and harms "the plaintiff alone." *Rey-Willis v. Citibank, N.A.*, 2003 WL 21714947, at *7 (S.D.N.Y. July 23, 2003) (omitting citation and quotation marks). This sort of general consumer confusion does not injure the public at large and therefore does not "suffice" to state a claim. *LBB Corp.*, 2008 WL 2743751, at *3. Because Plaintiffs fail to allege an injury "over and above ordinary trademark infringement or dilution," Count 11 should be dismissed.

The claim fails for the additional reason that Plaintiffs' conclusory allegations of the allegedly deceptive acts fall far short of satisfying the particularity requirements of Rule 9(b), which

applies to claims under Sections 349 and 350.  *See Rey-Willis*, 2003 WL 21714947, at *7 ("Rey–Willis' claim for deceptive business practices [under Section 349] must be pled in accordance with Rule 9(b)."); *see infra*, § IV (showing Plaintiffs' failure to allege fraud with particularity).

## III.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST CARTER FOR TORTIOUS INTERFERENCE WITH CONTRACT (COUNT 14)

Plaintiffs allege that Carter interfered with his own companies' contracts.  *See* SAC ¶¶ 544, 549.  They also allege that he economically benefitted from the contracts he interfered with.  *See id.* at ¶¶ 68, 539.  Given the inherent implausibility of these allegations, it is "insufficient" for Plaintiffs merely to allege the elements of tortious interference.  *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 406 (S.D.N.Y. 2013).[5]  Rather, Plaintiffs must also satisfy two heightened pleading requirements to state a claim.  They have to allege that Carter acted "wholly outside the scope of [his official] authority for purely personal gain."  *Id.* at 407-08.  And they have to allege that Carter "acted either maliciously, fraudulently, or illegally."  *Id.* at 406.  These pleading requirements are independent of each other and so both have to be satisfied.  Plaintiffs satisfy neither.

### A.   Plaintiffs Fail To Allege That Carter Acted Solely Outside The Scope Of His Corporate Authority For His Own Personal Gain

It is well settled that "a claim for tortious interference will lie ***only against a stranger*** who improperly interferes with a contract between two contracting parties."  *Id.* at 407 (emphasis added).  As Plaintiffs allege, Carter is no stranger to the contracts but is an officer or member of the companies whose contracts he allegedly obstructed.  Thus, a claim cannot be stated against him unless Plaintiffs allege specific facts showing that he "act[ed] wholly outside the scope of [his]

---

[5]   These elements are "[1] the existence of a valid contract between plaintiff and a third party; [2] defendant's knowledge of the contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom."  *Id.* at 405.

authority for purely personal gain." *Id.* at 407-08 (dismissing tortious interference claim against corporate officer where plaintiff failed to allege that officer acted entirely for his own benefit). This is a "narrow exception," *id.* at 407, and Plaintiffs do not come close to alleging that it applies.

Plaintiffs fail to do so because, rather than allege facts showing that Carter acted outside the scope of his authority and that he did so solely to benefit himself, Plaintiffs allege the exact opposite. They allege, for example, that Carter acted "*to further the business interests*" of the ROC Defendants. SAC ¶ 122 (emphasis added). They also allege that Carter "authoriz[ed], "approv[ed]," and "direct[ed]" the allegedly infringing uses, again "*to build and gain prestige for*" the ROC Defendants. *Id.* at ¶ 342 (emphasis added). The only plausible reading of Plaintiffs' allegations that Carter "authoriz[ed]" certain actions to further the "interests" of the ROC Defendants is that Carter acted for the benefit of the ROC Defendants, rather than for his own personal gain, and did so within the scope of his authority, rather than outside it. Against the backdrop of these allegations, Plaintiffs' conclusory assertions (*see id.* at ¶¶ 206, 547) that Carter acted in his individual capacity "need not [be] credit[ed]." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001). Plaintiffs thus fail "to meet the enhanced pleading requirement under New York law to hold" Carter "personally liable," and their tortious interference claim should be dismissed. *IMG Fragrance*, 679 F. Supp. 2d at 408.

### B.     Plaintiffs Fail To Allege Facts Showing That Carter Acted Maliciously, Fraudulently, Or Illegally

Dismissal of the tortious interference with contract claim is independently warranted under New York's "economic interest rule." Under that rule, to state a claim for tortious interference against a defendant with an economic interest in the underlying contracts, as is the case here, a plaintiff must "adequately allege that the defendant either acted maliciously, fraudulently, or illegally." *IMG Fragrance*, 679 F. Supp. 2d at 406. Plaintiffs fail to meet this standard.

Starting with malice, Plaintiffs' only non-conclusory allegation is that Carter was motivated by financial self-interest.  *See, e.g.*, SAC ¶¶ 122, 159, 342.  This allegation is insufficient to state a claim because it is well established that a desire to make money does not amount to malice.  *See Masefield AG v. Colonial Oil Indus.*, 2006 WL 346178, at *6 (S.D.N.Y. Feb. 15, 2006) (defendant failed to plead malice to overcome economic interest rule where "amended counterclaim only alleges that plaintiffs were motivated by a desire for economic profit").

Plaintiffs otherwise attempt to plead malice by simply calling Carter's actions "malicious" and "arrogant."  *See* SAC ¶ 544 (alleging Carter acted with "malicious and fraudulent intent" by not complying with agreements); *id.* at ¶ 546 (calling Carter's treatment of the allegedly infringed marks "arrogant"); *id.* at ¶ 547 (simply describing Carter's "actions" as "malicious").  These "bare allegations" do not plead malice, "particularly where such allegations are contradicted by [Plaintiffs'] own claims that [Carter's] actions were financially motivated" and done to further the business interests of the ROC Defendants.  *See Ruha v. Guior*, 277 A.D.2d 116, 116 (1st Dep't 2000).  Carter's alleged conduct thus may have been self-interested but, as a matter of law, it was not malicious.

Nor do Plaintiffs plead fraud or illegality.  Even in the context of a tortious interference claim, Plaintiffs must meet "the heightened pleading standard required under Rule 9(b)."  *IMG Fragrance*, 679 F. Supp. 2d at 406.  The Second Circuit "has read Rule 9(b) to require that a complaint (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (citation and quotation marks omitted).  Plaintiffs allege none of these requirements.  All they allege in substance is that Carter "never considered [contracts to be] impediment[s] to his commercial desires and conduct."

16

SAC ¶ 544.  This allegation does not set forth any specific statements by Carter, when and where those statements were made, and why those statements were fraudulent.  And it does not allege that Carter interfered with the contracts using illegal means.  Given this, Plaintiffs' allegations do not even begin to rise to the level of illegality or maliciousness necessary to state a claim against Carter in his individual capacity for tortious interference with contract.

## IV.  PLAINTIFFS FAIL TO STATE A CLAIM AGAINST CARTER FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS (COUNT 15)

"To prevail on a claim for tortious interference with prospective economic advantage, a plaintiff must show, *inter alia*, that the defendant interfered either (1) *solely* out of malice or (2) by wrongful means."  *Masefield AG v. Colonial Oil Indus.*, 2006 WL 346178, at *7 (emphasis in original) (citing *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003)).  "A defendant whose interference was intended, at least in part, to advance its own interest cannot be said to have acted solely out of malice.  In such cases, therefore, a plaintiff must show that a defendant acted by wrongful means."  *Id.*

At the outset, Plaintiffs do not allege that Carter acted "solely" out of a malice.  Rather, as shown earlier (*supra*, § III.A.), Plaintiffs allege that Carter acted at least in part to further the business interests of the ROC Defendants.  These allegations of a non-malicious motive completely foreclose an interference claim based on malice.  *See Hofmann v. Dist. Council 37, Am. Fed'n of State, Cty., & Mun. Employees, AFL-CIO*, 2002 WL 31045858, at *4 (S.D.N.Y. May 9, 2002) (complaint's allegation that defendants interfered to achieve more profit for themselves "negate[s] malice as a basis of liability for tortious interference [with business relations]"); *Besicorp Ltd. v. Kahn*, 290 A.D.2d 147, 150 (3rd Dep't 2002) (dismissing interference claim where plaintiffs alleged defendants were motivated by desire to maximize their financial gain rather than solely by malice or a desire to inflict injury by wrongful means).

Plaintiffs' last resort is to plead that the interference was "by wrongful means." But they do not do that either. In particular, Plaintiffs do not allege any facts showing that Carter directed any "wrongful" conduct at New Era, the alleged prospective counterparty. *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004) ("As federal courts applying New York law have recognized, conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship."). As the Second Circuit has instructed, "methods sufficiently wrongful to be deemed tortious under New York law … include physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and some degree of economic pressure." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214-15 (2d Cir. 2002) (citing *NBT Bancorp, Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 624 (1996)).

Here, there is no allegation of violence, economic pressure, or litigation. Plaintiffs' claim of "wrongful means" instead hinges entirely on fraud, namely that various Defendants misrepresented to New Era the scope of their rights to the ROC name. But just as Plaintiffs fail to plead malice, fraud, or illegality to overcome the economic interest rule to state a claim for tortious interference with contract (*supra*, § III.B.), Plaintiffs fail to meet the "more demanding" burden of pleading wrongful means for purposes of a tortious interference with economic relations claim. *Catskill Dev. LLC v. Park Place Entertainment Corp.*, 547 F.3d 115, 132 (2d Cir. 2008) (citing *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980)).

Moreover, like before, Plaintiffs do not plead the alleged fraud with anywhere near the particularity required by Rule 9(b). *See Rombach*, 355 F.3d at 170. They do not allege specific facts showing the circumstances of the fraud or that would provide a reasonable inference of Defendants' intent to deceive New Era. The complete absence of facts is compounded by Plaintiffs' "fail[ure] to

differentiate among the named Defendants in each allegation," which also "does not satisfy the requirements of 9(b)." *Fisher v. APP Pharm., LLC*, 783 F. Supp. 2d 424, 433 (S.D.N.Y. 2011). Indeed, Plaintiffs do not identify which Defendants made misrepresentations, much less that Carter made any.  And while Plaintiffs may use the terms "fraud", "malicious," and "intent," they do not back these up with facts.  Courts have a word to describe these type of allegations: "conclusory." *See Rey-Willis*, 2003 WL 21714947, at *7-8 ("Rey–Willis broadly directs his claims of fraud at the [corporate] 'defendant'" without "identify[ing] the persons who made the alleged misrepresentation"; "[this] fails to meet the heightened pleading standard of Rule 9(b) as his allegations are stated in conclusory terms.").  Plaintiffs thus do not allege that Carter committed a fraud, and the claim for tortious interference with economic relations should be dismissed.

## CONCLUSION

Counts 10, 11, 14, and 15 should be dismissed with prejudice.

DATED:  March 5, 2018       **QUINN EMANUEL URQUHART &**
        New York, New York       **SULLIVAN, LLP**

                                       **By : /s/ ALEX SPIRO**
                                         Alex Spiro
                                         Andrew J. Rossman
                                         Jordan Harap
                                         51 Madison Avenue, 22nd Floor
                                         New York, NY 10010

                                         *Attorneys for Defendant Shawn C. Carter*