Samuel D. Levy
Craig M. Flanders
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000
*Attorneys for Plaintiffs Iconix Brand Group, Inc.,*
*Studio IP Holdings, LLC, and Icon DE Holdings, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ICONIX BRAND GROUP, INC.; STUDIO IP HOLDINGS, LLC, and ICON DE HOLDINGS, LLC, | |
| Plaintiffs, | C.A. No. 17-cv-3096 (AJN) |
| vs. | |
| ROC NATION APPAREL GROUP, LLC; ROC APPAREL GROUP LLC; ROC NATION, LLC; SHAWN C. CARTER a/k/a JAY-Z; NEW ERA CAP COMPANY, INC. d/b/a NEW ERA; MAJOR LEAGUE BASEBALL PROPERTIES, INC.; HAT WORLD, INC. d/b/a LIDS SPORTS GROUPS; SAN FRANCISCO BASEBALL ASSOCIATES LLC d/b/a SAN FRANCISCO GIANTS; CIRCLE OF SUCCESS LLC; MADEWORN HOLDINGS LLC; EMERY JONES; KAREEM BURKE; PAPER PLANES IP HOLDINGS, LLC, and JOHN DOES 1-5, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT SHAWN C. CARTER'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

SUMMARY OF THE FACTS............................................................................................ 3

    I.        PARTIES AND BACKGROUND OF THE ROC FAMILY OF MARKS............ 3

    II.      CARTER'S INTERFERES AND VIOLATIONS OF ICONIX'S RIGHTS ......... 4

           A.      Sale of Unauthorized Roc Nation Apparel and Paper Plane Caps.............. 5

           B.      Unauthorized New Era Caps Usurping Iconix Business Opportunity........ 5

           C.      Launch and Misleading Promotion of Roc96 Apparel ............................... 5

LEGAL ARGUMENT ....................................................................................................... 6

    POINT I.     THE COMPLAINT STATES A CLAIM FOR UNJUST ENRICHMENT
                      (COUNT X) ....................................................................................... 7

           A.      All of the Elements of Unjust Enrichment are Clearly Plead ................... 7

                1.      Complaints Adequately Carter's Enrichment ................................. 7

                2.      Complaint Adequately Pleads that the Enrichment Came at
                      Iconix's Expense ........................................................................... 9

    POINT II.    THE COMPLAINT STATES A CLAIM FOR DILUTION AND
                    INJURY    TO BUSINESS REPUTATION UNDER N.Y. GBL 349-350
                    (COUNT XI) ..................................................................................... 14

           A.      SAC Sufficiently Pleads A Public Harm. ................................................ 15

            B.      SAC Sufficiently Pleads Deceptive Acts................................................. 18

    POINT III.   THE COMPLAINT STATES A CLAIM FOR
                    TORTIOUS    INTERFERENCE WITH A CONTRACT (COUNT XIV)
                     ................................................................................................ 19

    POINT IV.   THE COMPLAINT STATES A CLAIM FOR TORTIOUS
                    INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS
                    (COUNT XV) .................................................................................... 22

CONCLUSION ............................................................................................................... 24

**TABLE OF AUTHORITIES**

**Page(s)**

<u>Cases</u>

Advance Watch Co. v Pennington,
   No. 13-CIV-8169 (JMF), 2014 U.S. Dist. LEXIS 149919 (S.D.N.Y. Oct. 22,
   2014) ...................................................................................................................................24

Albert v Loksen,
   239 F.3d 256 (2d Cir 2001)...............................................................................................21

All R's Consulting, Inc. v Pilgrims Pride Corp.,
   No. 06 Civ. 3601, 2008 U.S. Dist. LEXIS 30626 (S.D.N.Y. Mar. 28, 2008)..........................24

Anderson News, L.L.C. v Am. Media, Inc.,
   732 F. Supp. 2d 389 (S.D.N.Y. 2010)................................................................................10

Anderson News, LLC v. American Media, Inc.,
   680 F.3d 162 (2d Cir. 2012)...........................................................................................6, 13

ATG Capital LLC v MGT Capital Inv., Inc.,
   No. 17-2440 (AJW), 2018 U.S. Dist. LEXIS 45141 (S.D.N.Y. Mar. 19, 2018) .....................9

Atuahene v. City of Hartford,
   10 F. App'x 33 (2d Cir. 2001) .............................................................................................6

Balance Point Divorce Funding, LLC v Scrantom,
   978 F. Supp. 2d 341 (S.D.N.Y .2013)................................................................................21

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007)......................................................................................................7, 10

Bilinski v Keith Haring Found., Inc.,
   96 F. Supp. 3d 35, 52 (S.D.N.Y. 2015)..............................................................................10

Briarpatch Ltd. v. Phx. Pictures, Inc.,
   373 F.3d 296 (2d Cir. 2004)................................................................................................7

Burberry Ltd. v Euro Moda, Inc.,
   08-CIV-5781 (CM) 2009 U.S. Dist. LEXIS 53250 (S.D.N.Y. June 10, 2009) ....................17

C Holdings B.V. v. Asiarim Corp.,
   992 F. Supp. 2d 223 (S.D.N.Y. 2013)................................................................................19

Can't Live Without It, LLC v ETS Express, Inc.,
   287 F. Supp. 3d 400, 413 (S.D.N.Y. 2018)........................................................................16

Carvel Corp. v Noonan,
    3 N.Y.3d 182 (2004) .................................................................................................23

Casper Sleep, Inc. v Mitcham,
    204 F. Supp. 3d 632, 643 (S.D.N.Y. 2016).............................................................16

Cespuglio v Ward,
    No. 03-8603 (SAS), 2004 U.S. Dist. LEXIS 8586 (S.D.N.Y. May 12, 2004) ........20

Corsello v. Verizon New York, Inc.,
    18 N.Y.3d 777 (2012) .............................................................................................11

Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.,
    887 F. Supp. 2d 459 (E.D.N.Y. 2012) ....................................................................20

Fischer v Forrest,
    No. 14-CIV-1304 (PAE) 2015 U.S. Dist. LEXIS 4395 (S.D.N.Y. Jan. 13,
    2015) .......................................................................................................................11

Fisher v APP Pharms., LLC,
    783 F. Supp. 2d 424 ...............................................................................................23

Frazier v Coughlin,
    850 F.2d 129 (2d Cir. 1988)....................................................................................11

Glob. Packaging Servs., LLC v. Glob. Printing & Packaging,
    248 F. Supp. 3d 487, 496 (S.D.N.Y. 2017).............................................................13

Goonewardena v. State of New York,
    475 F. Supp. 2d 310 (S.D.N.Y. 2007).......................................................................6

Goshen v Mut. Life Ins. Co.,
    98 N.Y.2d 314 (2002) ...............................................................................14, 16, 18

Grgurev v. Licul,
    229 F. Supp. 3d 267, 292-293, 2017 U.S. Dist. LEXIS 11090 (S.D.N.Y.
    January 26, 2017).....................................................................................................17

Helios International S.A.R.L. v. Cantamessa USA, Inc.,
    No. 12 Civ. 8205, 2013 WL 3943267 (S.D.N.Y. Jul. 13, 2013) ............................18

In re Houbigant,
    914 F. Supp. 964 (S.D.N.Y. 1995)..........................................................................18

Is. Two LLC v Is. One, Inc.,
    2013 U.S. Dist. LEXIS 138963 (S.D.N.Y. Sep. 26, 2013)................................20, 22

King v. Simpson,
    189 F.3d 284 (2d Cir. 1999) ................................................................................7

Kirch v. Liberty Media Corp.,
    449 F.3d 388 (2d Cir. 2006) ..............................................................................22

Koch v. Acker, Merrall & Condit Co.,
    18 N.Y.3d 940 (2012) ........................................................................................14

Kuklachiev v. Gelfman,
    600 F. Supp. 2d 437 (E.D.N.Y. 2009) ..............................................................18

Levinson v Primedia, Inc.,
    No. 02-CIV-2222 (DAR), 2007 U.S. Dist. LEXIS 58518 (S.D.N.Y. Aug. 9,
    2007) ...................................................................................................................20

Manchanda v Google,
    No. 16-CV-3350 (JPG), 2016 U.S. Dist. LEXIS 158458 (S.D.N.Y. Nov. 16,
    2016) ...................................................................................................................10

Maurizio v. Goldsmith,
    230 F.3d 518 (2d Cir. 2000) ..............................................................................14

McCarthy v. Dun & Bradstreet Corp.,
    482 F.3d 184 (2d Cir. 2007) ................................................................................6

Medisim Ltd. v BestMed LLC,
    910 F. Supp. 2d 591 (S.D.N.Y. 2012) ..............................................................12

Multibank, Inc. v Access Global Capital LLC,
    158 A.D.3d 458 (1st Dep't 2018) ......................................................................20

Murtha v Yonkers Child Care Assn.,
    45 N.Y.2d 913 (1978) ..................................................................................20, 22

MyPlayCity, Inc. v Conduit Ltd.,
    No 10-CIV-1615(CM) 2012 U.S. Dist. LEXIS 100492 (S.D.N.Y. July 17,
    2012) ...................................................................................................................12

New World Solutions, Inc. v NameMedia Inc.,
    150 F. Supp. 3d 287, 297 (S.D.N.Y. 2015) ......................................................15

Ong v Park Manor (Middletown Park) Rehabilitation and Healthcare Ctr.,
    51 F. Supp. 3d 319, 343 (S.D.N.Y. 2014) ........................................................19

Oswego Laborers' Local 214 Pension Fund v Mar. Midland Bank, N.A.,
    85 N.Y.2d 20 (1995) ..........................................................................................15

Pelman v McDonald's Corp.,
    396 F.3d 508 (2d Cir 2005)...............................................................................19

Peterson v. Insurance Co. of N. Am.,
    40 F.3d 26 (2d Cir. 1994) .................................................................................7

Petrosino v Stearn's Prods.,
    No. 16-7735 (NSR), 2018 U.S. Dist. LEXIS 55818 (S.D.N.Y. Mar. 30, 2018)......................14

PKG Group, LLC v Gamma Croma, S.p.A.,
    446 F. Supp. 2d 249 (S.D.N.Y. 2006)...............................................................23

Ptachewich v. Ptachewich,
    96 A.D.2d 582 (2nd Dept. 1983) .......................................................................12

Resource Mine, Inc. v Gravity Microsystem LLC,
    No. 09-CV-0573 (DRH) (SIL), 2014 U.S. Dist. LEXIS 171742 (E.D.N.Y.
    Dec. 11, 2014).................................................................................................22

Roberts v. IRS,
    468 F. Supp. 2d 644 (S.D.N.Y. 2006)..................................................................6

Rombach v Chang,
    355 F.3d 164 (2d Cir 2004)..............................................................................23

Salahuddin v. Cuomo,
    861 F.2d 40 (2d Cir. 1988)................................................................................6

Securitron Magnalock Corp. v Schnabolk,
    65 F.3d 256 (2d Cir 1995).................................................................................15

Sidney Frank Importing Co. v Beam Inc.,
    998 F. Supp. 2d 193 (S.D.N.Y. 2014).................................................................23

Sioson v. Knights of Columbus,
    303 F.3d 458 (2d Cir. 2002)..............................................................................13

Sperry v Crompton Corp.,
    8 N.Y.3d 204 (2007) .......................................................................................10

Spirit Locker, Inc. v EVO Direct, LLC,
    696 F. Supp. 2d 296 (E.D.N.Y. 2010) ...............................................................15

Stutman v Chem. Bank,
    95 N.Y.2d 24 (2000) .......................................................................................19

Ulloa v. Universal Music & Video Distribution Corp.,
    303 F. Supp. 2d 409 (S.D.N.Y. 2004)................................................................13

Universal Entertainment Events, Inc. v Classic Air Charter, Inc.,
    No. 15-CV-1104 (SJF) (AKT), 2016 U.S. Dist. LEXIS 29346 (E.D.N.Y. Mar.
    8, 2016) ......................................................................................................................11

Usov v Lazar,
    No. 13-818 (RWS), 2013 U.S. Dis.t LEXIS 89257 .........................................8, 9

VR Optics, LLC v Peloton Interactive, Inc.,
    No. 16-CV-6392., 2017 U.S. Dist. LEXIS 132509 (S.D.N.Y. Aug. 18, 2017)......................20

Whitley v Bowden,
    No. 17-CV-3564 (KMK), 2018 U.S. Dist. LEXIS 79287 (S.D.N.Y. May 9,
    2018) ......................................................................................................................13

## STATUTES

15 U.S.C. § 1117(a)-(c) ..........................................................................................12

15 U.S.C. § 1125(a) ................................................................................................12

Copyright Act ..........................................................................................................13

Lanham Act ..........................................................................................................2, 12

## OTHER AUTHORITIES

Fed. R. Civ. P. 8 .....................................................................................................23

Fed. R. Civ. P. 8(a) ..................................................................................................6

Fed. R. Civ. P. 8(a)(2) ..............................................................................................6

Fed. R. Civ. P. 8(a)(2), (d)(2) .................................................................................13

Fed. R. Civ. P. 8(a)(3) ..............................................................................................7

Fed. R. Civ. P. 12 (b) (6) .....................................................................................6, 11

Fed. R. Civ. P. 9(b) ............................................................................................18, 23

Plaintiff, Iconix Brand Group, Inc., Studio IP Holdings, LLC; and Icon DE Holdings, LLC (collectively "Iconix") submits this memorandum of law in support of Iconix opposition Defendant Shawn Carter's ("Jay-Z" or "Carter") March 5, 2018 Partial Motion to Dismiss (Dkt. Nos. 124-125) the March 5, 2018 Second Amended Complaint (the "SAC").[1]

## PRELIMINARY STATEMENT

This case involves years of commercial abuses by Jay Z in connection with use of the Roc Family of Marks and related rights which he sold to Iconix for over $200 million in 2007 (and confirmed in separate 2013 agreement) only to proceed with impunity to engage in wrongful conduct in derogation of these rights.

Jay Z incredulously casts himself as a victim, targeted for his "celebrity wattage" and "because he is famous." Iconix is not a starry-eyed passerby seeking to make a quick buck; but a publically traded brand licensing company and commercial partner of Jay Z that has engaged in a complex series of transactions and business dealings with Jay Z directly over more than a decade. Having used his fame as a "sword" to extract commercial terms in the way of marketing and licensing terms, and to carry out the very wrongful conduct complained of in the complaint; Mr. Carter cannot hide behind his celebrity as a shield.[2]

Centrally, Carter seeks to shift liability for his personal actions, and benefits he personally received, to a series of companies that he owns and controls (and potentially stripped of all assets). As the allegations detail, Jay Z is inextricably linked to the Roc Family of Marks, and the goodwill

---

[1] All capitalized terms not otherwise defined herein have the meanings defined in the SAC.

[2] Mr. Carter's counsel in this case similarly accused the SEC of issuing a recent subpoena to Mr. Carter "driven more by governmental fascination with celebrity and headlines than by any proper investigative purpose," in connection Mr. Carter's dealings with Iconix. (Case No. 18-00182, Dkt. 11 p. 2)  Judge Gardephe, ignore this posturing, ultimately compelled a response to the subpoena. (Id. at 21)

associated therewith, as the recognized unified source of goods sold bearing these marks. This rendered Iconix's Roc Family of Marks particularly vulnerable to Carter's infringing, tortious, and wrongful conduct.  In a manner few have managed, Jay Z has built an "empire" of goods and services across industries around the unified "Roc" theme, with his own personality as the center of gravity of each. That is, Jay Z presides over the "empire" using the various "Roc" goods and services to promote him personally, which he then cross-leverages for commercial gain. Accordingly, Carter is inextricably and personally linked to the allegations in the SAC giving rise to the claims in this suit.

In light of Carter's personal involvement with the transactions at issue, it is unsurprising Carter does not attempt to dismiss the majority (8 out of 12)[3] of the claims asserted against him. Carter moves to dismiss claims for unjust enrichment (Claim X), violations of N.Y. GBL § 349-50 (Claim XI); tortious interference with a contract (Claim XIV), and tortious interference with prospective economic relations (Claim XV).  Notably, while many of the same (albeit deficient) arguments could have been raised by entities (RNAG, RNLLC, RAG, Paper Plane Holdings) owned or controlled by Carter, they do not mount similarly challenges.  If the legal challenges were legitimate than Carter would presumably mount them across the board. Instead, Mr. Carter has engaged in transparent procedural posturing to evade liability.

Carter's challenges to each of these claims are premised on application of inapposite legal standards and selective readings of the SAC which contravene the standard of review at this stage of the proceedings.  Accordingly, and as detailed below, Carter's motion to dismiss must be denied.

---

[3] Counts I + II (Lanham Act Infringement), Counts III/IV (Common Law Infringement); Count VI (Lanham Act - False Designation of Origin, Passing Off, Deceptive Trade Practices/Unfair Competition); Count VIII (Dilution); Count IX (Common Law Unfair Competition); Count XII (Injunction under GBL 360-1)

## SUMMARY OF THE FACTS[4]

### I.    PARTIES AND BACKGROUND OF THE ROC FAMILY OF MARKS

In 1999, Jay-Z, Burke and Dash founded ROCAWEAR, Id. at ¶ 42, which was launched as the apparel line of Rock-a-Fella Records.  Id. at ¶ 234.  By 2007, ROCAWEAR's intellectual property holding company, Rocawear Licensing LLC, developed a worldwide portfolio of over 250 registered and common trademarks.  Id.  A wide range of individual apparel products apparel sold under the ROCAWEAR brand have utilized various derivations of word and design marks (both registered and arising under common law) with the common 'ROC' element.  Id. at ¶ 51. 'ROC' or 'Roc' was intended to be the surname designating all things 'ROC,' which came to include "records, music, clothing, accessories, publishing, fashion, entertainment, sports, artist and sports representation, and everything else in the lifestyle and business promoted and developed by Jay-Z. . . ." Id. at ¶ 54.  In other words, the "entire 'ROC' portfolio was designed to have a unified source, namely Jay-Z himself, who was the self-described 'ROC representor' of the entire 'ROC Family,' enticing fans to engage in the lifestyle brand of 'Team ROC' by sporting the clothing of the movement." Id. at ¶ 57.

The ROC empire was severed and sold, however, in 2007, when the ROC Family of Marks covering clothing apparel, and related classes (9 14, 18, 25, and 35) was sold to Plaintiffs in 2007, along with all of the goodwill related thereto, through a March 6, 2007 Asset Purchase Agreement among Iconix Brand Group, Inc. ("Iconix"), Rocawear Licensing LLC, and others (the "APA"). Id. at ¶¶ 79-85.  The parties to the APA expressly recognized the existence of the ROC Family of Marks, and conveyed the goodwill associated with that family and "rights associated

---

[4] The facts are alleged in detail in the SAC, incorporated by reference. This section provides a brief summary for convenience only and the facts detailed further in the legal section below and the SAC.

with…continuations, continuations-in-part, substitutes, renewals, reissues and extensions of [the conveyed trademarks] now existing, *hereafter filed, issued, or acquired*" to Iconix.  Id. at ¶¶ 82, 83 (emphasis in SAC).

Less than a year after the sale of the ROC Family of Marks was sold to Iconix, Jay-Z entered into an agreement with non-party Live Nation on April 3, 2008 to form a new venture operating under the name "ROC NATION."  Id. at ¶ 95.  This venture, which was managed by Carter's Roc Nation LLC ("RNLLC"), was in direct violation of the APA as it clearly utilized the valuable ROC surname, and all of the goodwill associated therewith, which was previously transferred to Iconix under the APA. Id. at ¶¶ 95-97.  Ultimately, Iconix and Jay-Z came to an understanding, wherein the parties agreed that RNLLC would allocate the ownership rights to the ROC NATION trademark to Studio IP, a wholly-owned Iconix subsidiary on July 1, 2013 (the "Consent Agreement").  Id. at ¶¶ 98 – 101.  The Consent Agreement recognized, among other things, that Studio IP is the owner of the marks bearing ROC and reaffirmed other existing ownership rights with respect to the Roc Family of Marks.  *Id*.

At the same time, Iconix and Jay-Z agreed that Studio IP would license ROC NATION to yet another Carter entity, Roc Nation Apparel Group, LLC ("RNAG ") (the "License Agreement"). Id. at ¶¶ 132-38.  The License Agreement, which expired on June 30, 2016, reiterated that Studio IP "is the owner and/or has the right to use the mark ROC NATION for certain products in the United States."  Id. at ¶¶ 132, 134.

## II.  **CARTER'S INTERFERES AND VIOLATIONS OF ICONIX'S RIGHTS**

Despite his involved in the negotiation and execution of the APA, Consent Agreement, and the License Agreement and having full knowledge of the same, Jay-Z has continued to engage in, direct and approve the design, manufacture, promotion, and sale of goods infringing on the Roc

Family of Marks and otherwise engage in wrongful conduct to rob Iconix of the goodwill associated with its brand and products. (See SAC generally).

### A. Sale of Unauthorized Roc Nation Apparel and Paper Plane Caps

Despite the termination of the License Agreement, Carter authorized and directed the continued use of the ROC NATION Mark after expiration of the license and without authorization. (SAC ¶180) These unauthorized products bearing ROC NATION Mark included, in part, products that commingled the ROC NATION Mark with a paper plane logo which is owned and controlled by Jay Z (the "Roc Nation Apparel"). Id. at ¶¶ 180-213. Other offending products, include hats using the ROC NATION name on the back and Paper Plane Logo on the front. Id. at ¶¶ 214-218.

The unauthorized Roc Nation Apparel was sold to over fifty (50) brick and mortar retail outlines and on a website (the "Roc Nation Website"). (Id. at ¶ 117) After the lawsuit was filed, the Roc Nation Website was simply shut down and rerouted to a new website (the "Paper Plane Website") that sold the same offending products. Id. Jay Z linked (and links) these website from the Roc Nation sports, music and entertainment business, even after the License Agreement expired. Id. at 196-97.

### B. Unauthorized New Era Caps Usurping Iconix Business Opportunity

In 2015, Iconix engaged in discussions with hat manufacturer New Era to collaborate on a worldwide deal for the sale of ROC NATION hats. Id. at 553-54. In 2016 or 2017, without Iconix authorization (or knowledge), Carter and/or those under his control, directly cut a deal with New Era to jointly promote hats bearing the ROC NATION name depicted with the New Era, MLB and certain team trademarks. Id. at 151-79.

### C. Launch and Misleading Promotion of Roc96 Apparel

Sometime in 2016, Jay-Z with Kareem Burke ("Burke"), and Emery Jones ("Jones") his childhood friend and ROC NATION employee, launched a new clothing and apparel brand

"Roc96." Id. at ¶ 219.  Managed by Circle of Success LLP ("COS"), an entity co-owned by Burke, Roc96, under the direction and approval of Jay-Z, designed, manufactured, promoted, and sold apparel ("Roc96 Apparel") bearing the mark "Roc96" which is nothing more than the "ROC" mark a "96" added to the protected mark, along with various "Roc" product names. Id. at ¶¶ 219, 221, 227. "Roc96" apparel and subsequent marketing campaign focused on Jay-Z, Roc-A-Fella Records, and their 1996 record *Reasonable Doubt* and was promoted as a continuation of prior "Roc" clothing brand;  creating an inherent likelihood of consumer confusion with apparel bearing the Roc Family of Marks.  Id. at ¶¶ 219-40.

## **LEGAL ARGUMENT**

At the dismissal stage, the Court must "accept as true the factual allegations of  the complaint" and "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." Anderson News, LLC v. American Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012); McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). "A district court may grant a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b) (6) only if it appears beyond doubt that the non-moving party could prove no set of facts that would entitle it to relief." Roberts v. IRS, 468 F. Supp. 2d 644, 648-649 (S.D.N.Y. 2006).

Under Rule 8(a)(2), a plaintiff's complaint need only include a "short and plain statement of the claim showing that the pleader is entitled to relief." Goonewardena v. State of New York, 475 F. Supp. 2d 310, 320 (S.D.N.Y. 2007); Fed. R. Civ. P. 8(a)(2). The "statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted to enable him to answer and prepare for trial." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). Rule 8(a) "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged." Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001). Instead, when deciding a Rule 12(b)(6) dismissal motion, "[t]he issue is not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." King v. Simpson, 189 F.3d 284, 287 (2d Cir. 1999). "[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

It is well-settled that inconsistent theories of recovery may be pled in the alternative. Fed. R. Civ. P. 8(a)(3) ("a demand for relief sought . . . may include relief in the alternative"). "[U]nder our system of notice pleading and pleading in the alternative, a party should plead all theories that he wishes to pursue." Peterson v. Insurance Co. of N. Am., 40 F.3d 26, 32 (2d Cir. 1994).

## POINT I.

## THE COMPLAINT STATES A CLAIM FOR UNJUST ENRICHMENT (COUNT X)

### A.      All of the Elements of Unjust Enrichment are Clearly Plead

A claim for unjust enrichment is pled by establishing (1) defendant was enriched; (2) at plaintiff's expense; (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover. Briarpatch Ltd. v. Phx. Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004). Carter does not challenge the third element and attacks the first and second elements based on blatant mischaracterization of the pleadings.

### 1.      Complaints Adequately Carter's Enrichment

As a threshold matter, all of Carter's unjust enrichment arguments rest on the central (and ultimately fatal) fallacy that "[t]he only enrichment Plaintiffs allege Carter personally received is that his businesses have attracted more customers and clients." (Mtn. at p. 9, Dkt. 124). Not so.

The SAC repeatedly alleges that Carter was personally unjustly enriched, including, without limitation, that "Carter has personally benefitted. . .through increased exposure and publicity…including increased recognition and attention."   (SAC ¶ 202, see also ¶¶ 203

[". . .benefits Carter. . .personally given the increased publicity and exposure to Jay-Z"], 204 ["Jay-Z sells merchandise and apparel bearing his name. . .which benefits Carter personally. . ."], 206 ["These activities are outside the scope of Carter's corporate responsibility . . . [and] benefit Carter personally"], 211 ["inures to Carter's personal benefit"], 503 ["value, standing, and name recognition" usurped by "Carter himself"], 505 ["benefits Carter personally"]).

This is a not a situation like Usov, the sole case cited by Carter to support the theory Carter should be immunized from the unjust enrichment claim, where the sole allegation involves actions as an officer.  Usov v Lazar, No. 13-818 (RWS), 2013 U.S. Dis.t LEXIS 89257, at *17 S.D.N.Y. June 18, 2013.)  Here, Carter's actions in his capacity as "officer" is not offered as the sole (or any) ground for unjust enrichment. Indeed, Carter's enrichment is not derived from the enrichment of his business interest, but the other way around.  Id. at ¶ 210.  Jay Z benefits directly and that increased exposure to increase the value of his business interests - not the other way around.  Id. at ¶¶ 197 ([website searches for Roc Nation trigger banner advertisements for Jay Z], 198, 205, 207-08, 210-11, 487 ["Carter uses that power to the benefit his other ventures and to benefit himself"]).[5]

Unlike the average executive quietly running commercial operations behind the scenes, the SAC more than plausibly alleges that Carter has engaged in a decades-long operation to commercialize his persona and celebrity and ultimately profit off of that image and celebrity through a number of businesses.  (SAC ¶¶ 53-59, 206, 210, 487 ["Jay Z has become Roc Nation at the expense of Plaintiffs"], 211) The enrichment is not tethered to any one business but is innate

---

[5] Carter's narrow reading of the SAC as alleging enrichment to Carter's business only (and not him personally), directly conflict with  Carter's exceedingly *broad* view of his own "economic interest" in those same companies when it comes to avoiding liability for tortious interference with a contract.  (*See* Point III *infra*) Carter cannot have it both ways.

to Carter himself and easily transferable from company-to-company and across products lines and categories.  Id.  Especially under these (relatively unique) circumstances, enrichment is certainly plausible.

Separately, only three months ago, this Court denied a motion to dismiss an unjust enrichment claim against a shareholder of a company on the grounds that enrichment was shown through the increased value of stock.  ATG Capital LLC v MGT Capital Inv., Inc., No. 17-2440 (AJW), 2018 U.S. Dist. LEXIS 45141, at *29 (S.D.N.Y. Mar. 19, 2018) (Nathan, A.) (allegations that "Individual Defendants also benefited from Plaintiffs' efforts, as each was a shareholder of [defendant] at the time [defendant's] stock price skyrocketed")  As in ATG Capital, the SAC alleges that Carter, is an owner of RNAG, RNLLC, RAG, Paper Plane Holdings, and COS (SAC ¶¶ 68, 223, 540, 541, 596); and that Carter was unjustly enriched "through the increased value of the shares, equity, or assets of and in" these companies. Id. at ¶ 474-75.  For this independent reason, the unjust enrichment claims are adequately stated against Carter.

As Carter's underlying premise is inaccurate (and otherwise legally irrelevant), all of the remaining arguments are the 'fruit of the poisonous tree' and must likewise fail.

## 2.  Complaint Adequately Pleads that the Enrichment Came at Iconix's Expense

Contrary to Carter's arguments, Iconix has sufficiently plead enrichment at the expense of Iconix.  (SAC ¶¶ 116 [Carter, and others "have seized and transferred from Plaintiffs . . . the name recognition, goodwill, reputation . . . of Plaintiffs"], 205 ["at the commercial expense of Plaintiffs"], 470 ["Carter . . .ha[s]been unjustly enriched at Plaintiffs' expense"]; 487 ["Jay-Z has become ROC NATION at the expense of Plaintiffs"]).  In sum, the SAC alleges Carter (and other Defendants owned by Carter) "*retained monies and associated goodwill, gained through deceptive business practices, infringement, acts of deceit, and the claims alleged herein, which is unfair and*

*unjust, all of which has been derived at the expense of Plaintiffs, the owner and controller of the*

*ROC Family of Marks, including the ROC NATION Mark.*" Id. at 475.

This case, unlike the inapposite authority cited by Carter, does not involve speculative or attenuated enrichment that has no relationship at all to Iconix.  Bilinski v Keith Haring Found., Inc., 96 F. Supp. 3d 35, 52 (S.D.N.Y. 2015) (too speculative to say temporarily restraining sale of one art collection, affected the market in such a way that it increased the value of another art collection *at expense* of the first); Sperry v Crompton Corp., 8 N.Y.3d 204, 216 (2007) (where respective manufacturers of  tires and chemicals used to make the rubber for tires had no privity and no other relationship, too attenuated to state unjust enrichment claim) Manchanda v Google, No. 16-CV-3350 (JPG), 2016 U.S. Dist. LEXIS 158458, at *16 (S.D.N.Y. Nov. 16, 2016) (where no benefit pled at all).

Here, Iconix alleges that Carter directly usurped and transferred goodwill (and ultimately sales) from Iconix to himself and entities he owns (which increased the value of his equity). (SAC ¶¶ 116, 202-04, 205, 470, 475)  Moreover, Jay Z has a long and storied relationship with Iconix, having sold the Roc Family of Marks to Iconix in 2007, jointly marketed Iconix's brands, and engaged in a series of licensing transactions.  Id. at ¶¶ 39-253.

Furthermore, Carter argues the unjust enrichment claim should be dismissed because it is "just as, if not more, likely" that such enrichment arises from "lawful" conduct.  Again, no authority is provided for this proposition, which contravenes prevailing law.  Twombly, 550 US at 556 (plausibility "does not impose a probability requirement at the pleading stage," and dismissal inappropriate even if it "strikes a savvy judge that actual proof of those facts is improbable, and "'that a recovery is very remote and unlikely'"); Anderson News, L.L.C. v Am. Media, Inc., 732 F. Supp. 2d 389, 396 (S.D.N.Y. 2010) (Even at the summary judgment stage, a

claimant "does not have to tend to rule out the possibility that the defendants" conduct was actually lawful behavior, to avoid dismissal")

Certainly a self-serving, conclusory statement as to Carter's allegedly "lawful" conduct is insufficient to trigger dismissal of unjust enrichment, especially at this stage.  Frazier v Coughlin, 850 F.2d 129, 129 (2d Cir. 1988) ("On a motion to dismiss under rule 12(b)(6), the factual allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff.") emphasis added; see, e.g., Fischer v Forrest, No. 14-CIV-1304 (PAE) 2015 U.S. Dist. LEXIS 4395, at *39 (S.D.N.Y. Jan. 13, 2015) ("For the purpose of resolving the motion to dismiss, the Court assumes that it would be unjust to permit [defendants] to retain the deceitfully obtained proceeds from . . . sales").

**B.**     **The Unjust Enrichment Claim Is Not Subject to Dismissal on Duplication Grounds**

Carter argues, in conclusory fashion, that the unjust enrichment claim duplicates unspecified other claims for breach of contract, trademark infringement, and unfair competition. As a threshold matter, Iconix does not assert any breach of contract claim against Mr. Carter, so the unjust enrichment claims cannot duplicate a claim which does not exist. Universal Entertainment Events, Inc. v Classic Air Charter, Inc., No. 15-CV-1104 (SJF) (AKT), 2016 U.S. Dist. LEXIS 29346, at *22 (E.D.N.Y. Mar. 8, 2016) (denying motion to dismiss unjust enrichment as duplicative of breach of contract claim where plaintiff "raised their unjust enrichment claim against Moss, who is not a party to the Charter Agreement."); see also Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 790 (2012) (Unjust enrichment is proper where defendants must account for enrichment "though the defendant has not breached a contract").

Duplication between unjust enrichment and the unfair competition/trademark claims is inherently unlikely because the remedial relief available for each is different. Unlike unjust enrichment (which is limited to restitution); damages for trademark infringement/unfair include

actual compensatory damages, statutory damages ($1,000 – $2,000,000), treble damages, and punitive damages.  See 15 U.S.C. § 1117(a)-(c).  Moreover, the elements of liability for each of these causes of action are materially different.  In general, trademark infringement and unfair competition require some level of wrongdoing by the defendants such as use of the trademark without consent or false/misleading statements. See, e.g., 15 U.S.C. § 1125(a). "Unjust enrichment, however, does not require the performance of any wrongful act by the one enriched." Ptachewich v. Ptachewich, 96 A.D.2d 582, 583 (2nd Dept. 1983)

In light of the differences in liability and damages, it is unsurprising that Carter does not cite a single case where a claim for unjust enrichment claim was dismissed as duplicative of unfair competition or trademark infringement; although cases have found the converse.  MyPlayCity, Inc. v Conduit Ltd., No 10-CIV-1615(CM) 2012 U.S. Dist. LEXIS 100492, at *49 (S.D.N.Y. July 17, 2012) (even at the summary judgement stage and where "unjust enrichment arises out of the same set of facts as [plaintiff's] claim for trademark infringement" dismissal not appropriate because damages may not be duplicative, which cannot be ascertained until trial); Medisim Ltd. v BestMed LLC, 910 F. Supp. 2d 591, 619 (S.D.N.Y. 2012) ("the Lanham Act does *not* preempt state law. Hence, even if [plaintiff's] unjust enrichment claim duplicates its Lanham act claims . . . dismissal . . . not warranted.") (emphasis in original).

Carter barely makes an effort to articulate the grounds for impermissible duplication. Beyond the wholly vague and conclusory statement that the "unjust enrichment claim duplicates their trademark, contract, and unfair competition."  Indeed, it is entirely unclear which of the twelve claims[6] asserted against Mr. Carter are duplicated.  The sole argument Carter advances for

---

[6] The failure to specify the claims is particularly confusing as numerous claims could potentially be characterized as "trademark" (e.g., Claims 1-4, 6, 8) or "unfair competition." (e.g., Claims 6, 9).

duplication centers on a single allegation (out of several dozen) reference to other "claims;" which Carter claims *categorically* requires dismissal as a matter of law.  No authority is provided for such a liberal dismissal standard which contravene the established standard of review at this stage. Anderson News, LLC, 680 F.3d at 185 (courts must draw "all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff.").

As Carter expressly stakes his duplication argument on a single allegation, announcing the Court "need not parse" the claims, Iconix (and the Court) cannot speculate as to which allegations Carter claims are duplicative, and the inquiry must end there.  Sioson v. Knights of Columbus, 303 F.3d 458, 460 (2d Cir. 2002) ("Perhaps counsel . . . intends that we form an argument for him, by looking into the record to document the facts . . . then examining various combinations of these facts in the light of the legal doctrines he later mentions. But that is simply not our job, at least in a counseled case."); see also Whitley v Bowden, No. 17-CV-3564 (KMK), 2018 U.S. Dist. LEXIS 79287, at *43 (S.D.N.Y. May 9, 2018) (denying dismissal, where no analysis of how allegations in complaint fit the legal theory).

Finally, it is well-settled that a party can plead unjust enrichment in the alternative. Fed. R. Civ. P. 8(a)(2), (d)(2).  This court has repeatedly upheld unjust enrichment as an alternative theory of recovery.  Glob. Packaging Servs., LLC v. Glob. Printing & Packaging, 248 F. Supp. 3d 487, 496 (S.D.N.Y. 2017) ("To the extent Plaintiff seeks to assert a claim for unjust enrichment as an alternate theory of recovery and not duplicative of remaining claims, the motion to dismiss is denied."); Ulloa v. Universal Music & Video Distribution Corp., 303 F. Supp. 2d 409, 419 (S.D.N.Y. 2004) (denying summary judgment dismissing unjust enrichment claim as plead in the alternative to claims under the Copyright Act).

In sum, the unjust enrichment claim is not duplicative, and even if it was properly plead in the alternative.

## POINT II.

### THE COMPLAINT STATES A CLAIM FOR DILUTION AND INJURY TO BUSINESS REPUTATION UNDER N.Y. GBL 349-350 (COUNT XI)

Carter challenges the sufficiency of Claim XI of the SAC for violation of N.Y. GBL §§ 349, 350.[7] N.Y. G.B.L. § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state" and § 350 of the same provision prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GBL §§ 349, 350.   "While GBL § 350 relates specifically to false advertising, 'the standard for recovery under § 350 . . . is otherwise identical to section 349.'" Petrosino v Stearn's Prods., No. 16-7735 (NSR), 2018 U.S. Dist. LEXIS 55818, at *18 (S.D.N.Y. Mar. 30, 2018); see Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 967 (2012) (elements of each are the same). "This legislation . . . is **intentionally broad**, applying to virtually all economic activity'" and is "designed to secure an honest market place where trust, and not deception, prevails."   Goshen v Mut. Life Ins. Co., 98 N.Y.2d 314, 323-324 (2002) (internal citation omitted and emphasis added).

A claim under both GBL §§ 349 and 350 is stated where: (1) the defendant's deceptive acts were directed at consumers; (2) the acts [we]re misleading in a material way, and (3) the plaintiff has been injured as a result.  Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000).  The test for the second element is an objective standard testing "whether representations or omissions,

---

[7] The Roc Defendants, (including RNAG, RNLLC, RAG, and Paper Plane Holdings) which are owned and/or controlled by Mr. Carter himself did not mount similar challenges to these allegations. The discrepancy suggests procedural posturing over a legitimate attack to the sufficiency of the pleading.

limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund v Mar. Midland Bank, N.A., 85 N.Y.2d 20, 26 (1995).

Carter does not challenge the third element, injury to the plaintiff, which is sufficiently pled and need not be addressed.  Instead, Carter argues (i) public harm is inadequately pled; and (ii) the second element (deceptive or misleading conduct) is not pled with the requisite specificity. Both arguments fail.

### A.      SAC Sufficiently Pleads A Public Harm.

Carter's primary line of attack is that the allegations "merely describe the harm to [Iconix]" rather than consumers. (Mtn. at 13, Dkt. 124)  Not only is this argument substantively incorrect but, "so long as the conduct is consumer-oriented, even a defendant's business competitor has standing to bring a claim under § 349, provided the competitor is incidentally harmed by the defendant's deceptive conduct." Spirit Locker, Inc. v EVO Direct, LLC, 696 F. Supp. 2d 296, 302 (E.D.N.Y. 2010); see also N.Y. G.B.L. § 349(h) (conferring standing to "any person who has been injured by reason of any violation of this section").  "The critical question, then, is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor." Securitron Magnalock Corp. v Schnabolk, 65 F.3d 256, 264 (2d Cir 1995).

Carter cites dicta in New World Solutions, Inc., a summary judgement case where the GBL claims were "abandoned," for the improper premise that actionable consumer harm under GBL § 349 is limited to "potential danger to the public health or safety." New World Solutions, Inc. v NameMedia Inc., 150 F. Supp. 3d 287, 297 (S.D.N.Y. 2015) (denying summary judgment where plaintiff did "not respond to Defendant's claims or defend its claims under NYGBL §§ 349 and 350 in its opposition papers" and thus the claims were "deem[ed] abandoned.")

As Judge Rakoff articulated in a criticism the following year (and more recently this year):

the elevated requirements that some district courts have apparently engrafted onto the 'consumer-oriented' element of § 349 claims lack a basis in governing New York law. . .  [and the] suggestion that the allegedly deceptive practice must pose some danger to the public health or safety, or have 'significant ramifications' for the public, is simply wrong.

Casper Sleep, Inc. v Mitcham, 204 F. Supp. 3d 632, 643 (S.D.N.Y. 2016); see also, Can't Live Without It, LLC v ETS Express, Inc., 287 F. Supp. 3d 400, 413 (S.D.N.Y. 2018) (adopting same reasoning).

Consistent with Judge Rakoff's explanation, a narrow view of actionable consumer-oriented conduct under the GBL directly contravenes the "intentionally broad" reading mandated by the New York Court of Appeals. . . ." Goshen, 98 N.Y.2d at 323-324.

The SAC alleges that Carter directly, and in concert with others (and those under this direction and control), misled and deceived consumers through: (i) advertising on the Roc Nation Website and Paper Plane Website and through promotional interviews; (ii) selling counterfeit products in commerce through brick and mortar stores and online; (iii) promoting or allowing his image to be promoted in a deceptive and misleading manner with the Roc96 Apparel; (iv) promoting the Roc Nation Apparel and Roc96 Apparel as related to one another and other brands. (SAC ¶¶ 29, 69-78, 175, 182-192, 199-200, 238, 499-500)  For example, customers visiting the Roc Nation Website in search of genuine goods,  were automatically re-routed to the Paper Plane Website were counterfeit goods were offered. Id. at ¶ 117, see also ¶¶ 196-197.

As a result of these activities, the SAC alleges that consumers will be "*misled as to the origin and source of ROC NATION and goods bearing the ROC NATION mark, logo, name, and reputation, [and] are being misled as to the relationship between Plaintiffs' goods and services….by Defendants*," and that the activities "*create an inherent likelihood of confusion*" and consumers have been actually deceived by purchasing goods they otherwise would not have

purchased.  (SAC ¶¶ 514; see also ¶¶ 181, 229, 249-51, 502-03, 505, 507, 513-16)  These activities "*are luring consumers to purchase their products through their use of marks that are identical and/or confusingly similar to Plaintiffs' ROC Family of Marks and the ROC NATION Mark, and which commingle marks controlled by Defendants with the ROC Family of Marks*." Id. ¶¶ 244, 246.

Under nearly identical circumstances involving consumer trademarks, this Court has declined to dismiss N.Y. GBL claims.  For example, in a case involving the unauthorized use of the BURBERRY name and design marks, this court held "[b]y selling infringing products to third party retailers located in New York" the defendants had "placed into the stream of commerce goods likely to confuse consumers as to their true source of origin. This is sufficient to demonstrate an injury under [N.Y. G.B.L. 349]."  Burberry Ltd. v Euro Moda, Inc., 08-CIV-5781 (CM) 2009 U.S. Dist. LEXIS 53250, at *46 (S.D.N.Y. June 10, 2009).

Similarly, last year, in a case involving the unauthorized use of the DELMONICO's trademark in connection with restaurants, the Court denied dismissal finding "Plaintiffs have adequately alleged that Defendants' unauthorized use of the DELMONICO'S name in connection with non-[plaintiff] restaurants and products caused consumer harm or injury to the public, and that they had a broad impact on consumers at large inasmuch as such use was likely to cause consumer confusion."  Grgurev v. Licul, 229 F. Supp. 3d 267, 292-293, 2017 U.S. Dist. LEXIS 11090, at *49 (S.D.N.Y. January 26, 2017).   The allegations here are substantively indistinguishable from Burberry and Grgurev cases, similarly necessitating a denial of the motion to dismiss.

While some courts, among split authority, have found that "ordinary" trademark infringement cannot support a GBL §§ 349, 350 claim under certain circumstances; when the

complaint alleges deceptive conduct that is *intentional* or involves counterfeiting, courts routinely reject dismissal. Goshen, at * 326-327(denying dismissal, where knowingly false omissions about product defects alleged); Helios International S.A.R.L. v. Cantamessa USA, Inc., No. 12 Civ. 8205, 2013 WL 3943267, *13 (S.D.N.Y. Jul. 13, 2013) (citation omitted) (§§ 349 and 350 claims "premised upon allegations that Defendants conspired to deceive American consumers with counterfeit goods"); In re Houbigant, 914 F. Supp. 964, 984 (S.D.N.Y. 1995) (imported counterfeits goods "with the intent to cause confusion and mistake, to deceive customers as to the source and origin of the products"); Sprint Solutions, 206 F. Supp. 3d 755, 762-763 (E.D.N.Y.) (plaintiffs alleged that the defendant "used Plaintiffs' trademarks in commercial advertising or promotion, which misrepresented the nature, characteristics, and/or qualities of the infringing products; deceived or had the capacity to deceive customers; had a material effect on the purchasing decisions; and affected interstate commerce" and, further, "the deceptive acts and advertisements by the Defendant were directed at consumers, were misleading in a substantial and material way, and caused injury to Plaintiffs and their consumers"); Kuklachiev v. Gelfman, 600 F. Supp. 2d 437, 476 (E.D.N.Y. 2009) (plaintiff theatrical performers alleged that "consumers were deceived by advertising materials . . . that included images of the plaintiffs and that were designed in the distinctive style used by plaintiffs for prior performances").

Here, the SAC outlines *intentional* deceptive and misleading conduct (e.g., SAC ¶¶ 175, 185, 251, 497, 501) and use of counterfeit goods in the stream of commerce. Id. ¶¶ 262, 269, 286, 294, 309, 340, 368).

### B.   SAC Sufficiently Pleads Deceptive Acts

In a one-sentence throw-away, Carter makes the conclusory argument that the SAC fails to satisfy Fed. R. Civ. 9(b). The Second Circuit has specifically rejected heightened pleading of a GBL § 349 claim explaining:

§ 349 extends well beyond common-law fraud to cover a broad range of deceptive practices, . . . and because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed. R. Civ. P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a), Fed. R. Civ. P. . . ."

Pelman v McDonald's Corp., 396 F.3d 508, 511 (2d Cir 2005); Stutman v Chem. Bank, 95 N.Y.2d 24, 29 (2000) ("A deceptive practice, however, need not reach the level of common-law fraud to be actionable under section 349.")

Even if heightened pleading applied here, Carter utterly fails to provide any analysis of which elements he asserts are lacking and why, and thus Carter's arguments would independently fail on these grounds. Ong v Park Manor (Middletown Park) Rehabilitation and Healthcare Ctr., 51 F. Supp. 3d 319, 343 (S.D.N.Y. 2014) (denying dismissal on plausibility grounds explaining "this argument itself is conclusory, and the Court declines to dismiss any claims based on a one-sentence argument that, itself, does not give Plaintiff fair notice of the claims he must defend.").

**POINT III.**

**THE COMPLAINT STATES A CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT (COUNT XIV)**

The elements of a claim for tortious interference are: (1) the existence of a valid contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract, and (5) damages resulting therefrom. C Holdings B.V. v. Asiarim Corp., 992 F. Supp. 2d 223, 246 (S.D.N.Y. 2013).

Leaving most of these elements unchallenged, Carter argues he should be immune from liability for tortious interference with a contract because Carter has an "economic interest" in the transaction or is a corporate officer of the breaching parties. "The defense of economic interest does not apply, however, where the allegedly interfering parties acted to protect their own interest

instead of their interest in the breaching party's business." <u>VR Optics, LLC v Peloton Interactive, Inc.</u>, No. 16-CV-6392., 2017 U.S. Dist. LEXIS 132509, at *14 (S.D.N.Y. Aug. 18, 2017).[8]

"Corporate officers and directors may be held liable for tortious interference with their company's contracts where they either acted 'outside the scope of their employment' or 'for . . . personal, rather than the corporate interests.'" <u>Is. Two LLC v Is. One, Inc.</u>, 2013 U.S. Dist. LEXIS 138963, at *11 (S.D.N.Y. Sep. 26, 2013).  Allegations that the tortfeasor "promoted his interests over those of [the company] . . . are sufficient to state a claim . . ." <u>Id.</u> at *11-12; <u>see also</u> <u>Multibank, Inc. v Access Global Capital LLC</u>, 158 A.D.3d 458, 460 (1st Dep't 2018) (denying dismissal of tortious interference with a contract claim where "the complaint alleges that [defendant] was not acting in the best interest of its principal and received a pecuniary benefit for interfering with the principal's contract")

In addition, an officer is only immune from liability for tortious interference with a contract where "he is acting in good faith as an officer" and do not commit "independent torts or predatory acts directed at another."  <u>Murtha v Yonkers Child Care Assn.</u>, 45 N.Y.2d 913, 915 (1978), <u>Levinson v Primedia, Inc.</u>, No. 02-CIV-2222 (DAR), 2007 U.S. Dist. LEXIS 58518, at *36 (S.D.N.Y. Aug. 9, 2007) (applying <u>Murtha</u>); <u>Cespuglio v Ward</u>, No. 03-8603 (SAS), 2004 U.S. Dist. LEXIS 8586, at *23 (S.D.N.Y. May 12, 2004) (Allegations that the defendant was 'malicious,' and 'motivated by animosity" sufficient to hold corporate officer liable); <u>see also,</u>

---

[8] While Carter argues (Mtn. at 14, Dkt. 124) that Iconix must make a 2-part showing (i.e., acting outside of authority + fraud, malice or illegality), no court has imposed such a requirement and a finding on the threshold issue of authority is dispositive and ends the inquiry, rendering the "economic interest" defense inapplicable.  <u>Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.</u>, 887 F. Supp. 2d 459, 484 (E.D.N.Y. 2012) ("[T]he defense . . . only applies when the alleged interfering parties have acted to protect their interest in the breaching party's business . . . not their own.")  Indeed the "two" parts collapse into one where, as here, an "independent tort" is committed which simultaneously satisfies the personal-over-corporate and "illegality" prongs.

Albert v Loksen, 239 F.3d 256, 275 (2d Cir 2001) (the 'independent tort' exception "is also consistent with the rule that a corporate officer can be held liable for interfering with an employee's relationship with the corporation if he or she commits independent torts in the process.")

The SAC alleges "Carter's malicious actions were outside the scope of any authority Carter had as a member of RNAG, RNLLC, or RAG, and were performed to benefit Carter personally, as detailed herein."  (SAC ¶ 547)  These 'details,' alleged throughout the SAC and incorporated-by-reference into the claim (id. ¶ 536), include: (i) causing RNAG to violate the License Agreement by commingling the ROC Nation Mark with Carter's own Paper Plane Logo on Paper Plane Caps and Roc Nation Apparel (id. at ¶¶ 118-124, 151-218); (ii) completely shutting down RNAG after this case was filed and diverting all ROC NATION customers from RNAG's Roc Nation Website to the Paper Plane Website where additional apparel utilizing the Paper Plane Logo, owned by Carter, not RNAG, was sold (id. at ¶ 117); (iii) causing RNAG/RNLLC to develop and license the New Era Caps, to buttress Carter's sports management image in violation of the License Agreement; and  (id. ¶ 549); (iv) linking the Paper Plane Website and Roc Nation Website, selling Roc Nation Apparel and Paper Plane Caps to Carter's sports and music website, not owned or controlled by RNAG, and in violation of the License Agreement. (Id. ¶¶ 195-97)

The foregoing activities – such as shutting one the business down to benefit another (and Carter personally) – were not "good faith" acts committed by Carter within his duties as officer of RNAG/RAG/RNLLC but instead were committed to benefit Carter's personal interests completely outside of his officer role.  (Id. at ¶¶ 202-207, 209-211)  While Carter cherry-picks references in the SAC to Carter acting in the corporate interests, the allegations of alternative non-corporate motivations for Mr. Carter's actions are sufficient to defeat dismissal on the affirmative defense of "economic interest."  Balance Point Divorce Funding, LLC v Scrantom, 978 F. Supp. 2d 341,

350 (S.D.N.Y .2013) (denying affirmative defense of "economic interest" "[b]ecause the complaint alleges an alternative motivation for [defendant's] actions, it is inappropriate to consider a defense of economic justification at this time."); see also Resource Mine, Inc. v Gravity Microsystem LLC, No. 09-CV-0573 (DRH) (SIL),   2014 U.S. Dist. LEXIS 171742, at *9 (E.D.N.Y. Dec. 11, 2014) (denying motion to dismiss tortious interference claim based on economic interest defense where competing allegations of potential corporate and personal motivations for interfering acts).

In addition, in the process of inducing RNAG's breach of the License Agreement and RNLLC's breach of the Consent Agreement, Carter committed numerous independent torts which are detailed throughout the pleadings.  (SAC ¶¶ 124, see also Claims I-IV, VI, VIII -XII)  These independent torts committed against Iconix in the course of the breach render Carter personally liable for tortious interference whether or not he is officer, and constitute 'illegality' barring application of the economic interest doctrine. Murtha, 45 N.Y.2d at 915; Is. Two LLC v Is. One, Inc., 13-CIV-02121 (LGS) 2013 U.S. Dist. LEXIS 138963, at *11 (Sept. 26, 2013).

Therefore, Carter cannot avoid liability for tortious interference with a contract by virtue of his role as an officer or owner of RNAG, RNLLC or RAG.

## POINT IV.

### THE COMPLAINT STATES A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS (COUNT XV)

The elements of tortious interference with business relations include: (1) business relationship with a third party ; (2) defendant knew of that relationship and intentionally interfered with it; (3) defendant acted solely out of malice, or used dishonest, unfair, improper or other "wrongful means;" and (4) defendant's interference caused injury to the relationship.  Kirch v.

Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006). "Wrongful means" includes fraud, misrepresentations, and independent torts. Carvel Corp. v Noonan, 3 N.Y.3d 182, 190, n. 1 (2004).

Carter's sole argument attacking the allegations of "wrongful means" is that the allegations of misrepresentations to New Era do not meet the heightened pleading standard of Fed. R. Civ. Proc. 9(b). But Carter fails to cite a single case applying the heightened pleading standard of Rule 9(b) to a tortious interference with economic relations claim. Those cases cited do not involve tortious interference and are entirely uninstructive. See, e.g., Rombach v Chang, 355 F.3d 164, 177 (2d Cir 2004) (applying 9(b) to securities fraud claim); Fisher v APP Pharms., LLC, 783 F. Supp. 2d 424, 432 (S.D.N.Y. 2011 (applying 9(b) to fraudulent concealment claim in a products liability case). In sharp contrast, this court has specifically held that such claims are subject to Rule 8 notice pleading. PKG Group, LLC v Gamma Croma, S.p.A., 446 F. Supp. 2d 249, 251–52 (S.D.N.Y. 2006).

Iconix alleges Carter interfered with its prospective business relations by misrepresenting to New Era that Carter, RNLLC, Paper Plane Holdings, RAG and/or others had the rights to license Roc Nation for use on (and connection with) the New Era Caps and Paper Plane Caps. (SAC ¶¶ 557, 558) These misrepresentations were made for the purpose of usurping Iconix's prospective business opportunity for a worldwide hat deal with New Era, and actually induced New Era to do a deal with Carter and/or his entities rather than Iconix. Id. at ¶ 558-99.

These allegations are more than sufficient to state a claim for tortious interference with prospective economic relations. Sidney Frank Importing Co. v Beam Inc., 998 F. Supp. 2d 193, 213 (S.D.N.Y. 2014) (denying similar 'particularity' challenges to alleged misrepresentations (for purpose of tortious interference claim), submitted by the same law firm representing Carter here and finding general allegations of misrepresentation sufficient)

Even if these claims were not sufficient, the SAC plausibly alleges multiple "independent torts" committed in connection with Carter's New Era negotiations, including unfair competition and trademark infringement associated with falsely representing the source, nature, ownership, and right-to-use/license of the ROC NATION Mark. (see SAC Claims I-IV, VI, VIII –XII, see also, ¶¶ 557-59)   Unfair competition and trademark infringement are sufficient 'independent torts' constituting wrongful conduct to independently support a claims for tortious interference with prospective economic relations.  Advance Watch Co. v Pennington, No. 13-CIV-8169 (JMF), 2014 U.S. Dist. LEXIS 149919, at *19 (S.D.N.Y. Oct. 22, 2014) (a case with eerily similar facts where this Court found tortious interference with business relations adequately pled through allegations defendant "engaged in unfair competition and misappropriated trade secrets . . . to induce the MLB and NFL to refuse to renew their exclusive licensing"); All R's Consulting, Inc. v Pilgrims Pride Corp., No. 06 Civ. 3601, 2008 U.S. Dist. LEXIS 30626, at *46 (S.D.N.Y. Mar. 28, 2008) (unfair competition sufficient 'independent tort' to state a claim for tortious interference with business relations").

Iconix's claim for tortious interference with business relations is more than sufficient pled and should not be dismissed.

## CONCLUSION

Based on the foregoing, Carter's dismissal motion should be denied in its entirety and the court should grant such other and further relief as it deems just and proper.


Dated: June 20, 2018                    BLANK ROME LLP


                                        By:/s/ Craig M. Flanders
                                            Craig M. Flanders
                                            Samuel D. Levy
                                            The Chrysler Building

405 Lexington Avenue
New York, New York 10174
(212) 885-5000
*Attorneys for Plaintiffs Iconix Brand Group,*
*Inc., Studio IP Holdings, LLC, and Icon DE*
*Holdings, LLC*